**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CITIBANK, N.A.,<br><br>Plaintiff,<br><br>v.<br><br>ARALPA HOLDINGS LIMITED PARTNERSHIP AND RODRIGO LEBOIS MATEOS,<br><br>Defendants. | Case No. 22-cv-08842 (JLR)<br><br>**ORAL ARGUMENT REQUESTED** |

**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF**
**CITIBANK'S MOTION TO SHOW CAUSE FOR PREJUDGMENT ATTACHMENT**

**KOBRE & KIM LLP**

800 Third Avenue
New York, New York 10022
Tel. (212) 488-1200
Fax (212) 488-1220

*Attorneys for Defendants*
*Aralpa Holdings Limited Partnership and*
*Rodrigo Lebois Mateos*

## TABLE OF CONTENTS

**PRELIMINARY STATEMENT** .................................................................................... **1**

**FACTUAL BACKGROUND** ....................................................................................... **4**

I.   Citibank Makes a Loan that Matures in September 2023
     Secured by Commercially Bargained for Collateral ............................................. 4

II.  Citibank Asserts Technical Events of Default and Purports
     to Accelerate the Note Well Before the Maturity Date ........................................ 4

III. Citibank Benefits from the Asset Sales It Protests ............................................... 5

IV.  Citibank Manufactures a Pretense to Seek Prejudgment Attachment
     on a Claim that Will Soon Be Moot ..................................................................... 5

V.   Citibank Races to Foreign Courts for Preventative Measures and
     Discovery It Has Agreed Not to Pursue Here ...................................................... 7

**ARGUMENT** ............................................................................................................ **8**

I.   Citibank Has Not Demonstrated a Need for the "Drastic Action" of Prejudgment
     Attachment ........................................................................................................... 8

   A.   Legal Standard for Prejudgment Attachment .................................................. 8

   B.   Citibank Has Not Demonstrated a Likelihood of Success on the Merits .................... 10
   1.   There Is No Evidentiary Record ................................................................... 11

   2.   The Existing Untested Record Does Not Support
        a Likelihood of Success on the Merits ......................................................... 11

   C.   Citibank Has Not Demonstrated a Significant Risk that
        it Will Not Be Able to Enforce a Future Judgment ....................................... 12
   1.   Third-party Asset Transactions Cannot Support a Risk of Dissipation ..................... 13

   2.   Even if Citibank Could Rely on the Third-Party Asset Transactions,
        They Do Not Establish a Risk of Dissipation ............................................... 14

   D.   The Court Should Use Its Discretion to Deny Citibank's
        Request for More than the Collateral for Which It Bargained .................... 15

   E.   Citibank is Engaged in Transparent Forum Shopping,
        and the Spanish Court Orders Should Be Afforded Deference
        Based on Comity and to Avoid Inconsistent Results ................................... 16

II.  If the Court Orders Attachment, Citibank Should
     Provide a Reasonable Undertaking ..................................................................... 17

**CONCLUSION** ........................................................................................................ **18**

## TABLE OF AUTHORITIES

**Page(s)**

Cases

*245 Park Member LLC v. HNA Group (Int'l) Co.*,
  No. 22-CV-5136 (JGK), 2022 WL 2916577 (S.D.N.Y. July 25, 2022)......................................... 13

*BSH Hausgerate, GmbH v. Kamhi*,
  282 F. Supp. 3d 668 (S.D.N.Y. 2017) ................................................................... 10, 17

*Capital Ventures Int'l v. Republic of Argentina*,
  443 F.3d 214 (2d Cir. 2006) ................................................................................. 10

*Chartwell Therapeutics Licensing LLC v. Citron Pharma LLC*,
  No. 16-CV-3181P, 2018 WL 1402239 (E.D.N.Y. Mar. 4, 2018) ....................................... 9, 13, 14

*DLJ Mortg. Cap., Inc. v. Kontogiannis*,
  594 F. Supp. 2d 308 (E.D.N.Y. 2009) ..................................................................... 8

*Elliott Assoc., L.P. v. Republic of Peru*,
  948 F. Supp. 1203 (S.D.N.Y. 1996) ....................................................................... 9, 12

*Habitations Ltd. v. BKL Realty Sales Corp.*,
  160 A.D.2d 423 (N.Y. App. Div. 1990) ................................................................... 15

*In re Amaranth Natural Gas Commodities Litig.*,
  711 F. Supp. 2d 301 (S.D.N.Y 2010) ..................................................................... 8

*In re Hypnotic Taxi LLC*,
  543 B.R. 365 (Bankr. E.D.N.Y. 2016) ................................................................... 8, 10

*InterDigital Commc'ns, Inc. v. Huawei Inv. & Holding Co.*,
  166 F. Supp. 3d 463 (S.D.N.Y. 2016) ..................................................................... 15

*Iraq Telecom Ltd. v. IBL Bank S.A.L.*,
  43 F.4th 263 (2d Cir. 2022) ................................................................................. 10, 15

*ITC Ent., Ltd. v. Nelson Film Partners*,
  714 F.2d 217 (2d Cir. 1983) ................................................................................. 15

*JSC VTB Bank v. Mavlyanov*,
  154 A.D.3d 560 (N.Y. App. Div. 2017) ................................................................... 17

*Man Wei Shiu v. New Peking Taste, Inc.*,
  No. 11 CV 1175, 2013 WL 2351370 (E.D.N.Y. May 28, 2013) .................................... 10

*Serenity Alpha, LLC v. Northway Mining, LLC*,
   531 F. Supp. 3d 512 (N.D.N.Y. 2021) ............................................................................. 8

*Sylmark Holdings Ltd. v. Silicone Zone Int'l Ltd.*,
   783 N.Y.S.2d 758 (Sup. Ct. 2004) ............................................................................. 9, 15

*VisionChina Media Inc. v. S'holder Representative Servs., LLC*,
   967 N.Y.S.2d 338 (N.Y. App. Div. 2013) ................................................................... 9, 12

Rules

CPLR § 6201 ............................................................................................................................ 8

CPLR § 6201(1) ...................................................................................................................... 9

CPLR § 6212 ............................................................................................................................ 8

Aralpa Holdings Limited Partnership ("Aralpa") and Rodrigo Lebois Mateos (collectively, "Defendants") submit this Opposition to Citibank N.A.'s ("Citibank") motion for an order of prejudgment attachment (ECF 34) (the "Motion"), together with the declaration of Rodrigo Lebois Mateos (the "Lebois Declaration") in support of this Opposition.

## PRELIMINARY STATEMENT

In this action, Citibank seeks to accelerate a $35 million loan to Aralpa guaranteed by Mr. Lebois that does not mature until September 30, 2023, based on alleged technical events of default. Defendants have denied each and every alleged default and asserted affirmative defenses, including that Citibank has waived its rights to assert the technical event of defaults alleged in the Complaint or should be estopped from doing so.

Apparently frustrated that it has not yet succeeded on its meritless claims, and rather than continue attempts to resolve how to address the loan at maturity, Citibank appealed to this and two foreign courts a little over two months before maturity to request prejudgment attachment on claims that will soon become moot. This reveals an attempt to use the Court to tie up assets not agreed as collateral, and obtain some perceived leverage without a legal justification, particularly after one foreign court denied the request. Citibank's gamesmanship is also evident in its attempt to take discovery in recently filed proceedings in Canada, even as it agreed to forego discovery here in the hopes of an early resolution on its claims. The Motion should be denied for at least several reasons.

*First*, Citibank has not proven a likelihood of success on the merits. Almost immediately after filing its complaint, Citibank moved for judgment on the pleadings arguing that there are technical events of default under the loan agreement, including that the agreed collateral of Unifin shares (the "Collateral") is deficient. That motion is pending and, for the same reasons argued there, Citibank has not shown a likelihood of success on the merits. Citibank cannot now sidestep

1

both its burden to prove its case and its bargain with Defendants by obtaining prejudgment attachment, effectively replacing the agreed upon Collateral—before Citibank even proves its claims.

*Second,* Citibank has woefully failed to prove that Defendants' financial position or conduct present a real risk of enforcement of a future judgment. Citibank props up its argument that there is a risk of enforcement by citing transactions *that it admits involve third party assets.* But Citibank has not demonstrated that *Defendants'* financial position or *Defendants'* conduct present a risk of collection, especially where the parties have agreed on Collateral for the loan. In fact, third parties affiliated with Defendants have sold some assets and used proceeds to pay off Citibank loans that are not the subject of this litigation. Thus, if anything, Citibank has benefitted from the very transactions it protests.

*Third,* the Court should use its discretion to deny the request. Where, as here, the parties have reached a commercial bargain for agreed collateral, the Court should not sanction one party's attempt to avoid that bargain to gain commercial leverage.

The Motion appears to be a pretense to re-argue the motion for judgment on the pleadings, manufactured by a demand for assets not pledged as collateral that are held by non-obligor entities. Counsel to Citibank contacted Defendants' counsel on July 13, 2023, stating that the sale of a yacht had "just come" to their attention, and demanding that Defendants apply the proceeds to the Note. ECF 36-1. Counsel for Defendants promptly responded asking the basis for the demand, as Citibank admitted the sale was by an entity other than Defendants and involved an asset that was not pledged as Collateral or restricted under the loan documents. And, as explained below, the yacht was sold before Citibank ever filed suit. Rather than explain its demand, Citibank ran to this Court for an attachment.

Citibank has sought to obtain leverage through foreign courts as well.  It previously sought and lost an *ex parte* bid to obtain interim measures in Spain.  ECF 43.  The Spanish court of first instance ruled against Citibank on January 24, 2023, although Citibank did not inform the Court of that in its Motion filed July 17, 2023, or at any time prior to that date.  *Id*. at 12.  Citibank later disclosed to this Court that it had filed an *ex parte* application and that the Spanish appellate court had upheld denial of the request on July 19, 2023.[1]  *Id*.

Citibank asserts that the Spanish appellate court's denial of its application "creates further risk that Citibank will be unable to collect on an eventual judgment in this action."  *Id*. at 1.  To the contrary, the Spanish Court decision held that: "in no case is there proof that [Mr. Lebois] was at risk of insolvency or that he had defaulted his payment obligations," *id*. at 14, and that the Court "cannot infer a well-founded risk of loss and concealment of [Mr. Lebois'] assets – *whether they are located in Spain or abroad*," *id.* at 15.  The Spanish Court's ruling supports denial of Citibank's Motion and is entitled to deference.  Citibank also recently commenced an action in Canada seeking the appointment of a receiver over non-obligor entities affiliated with Mr. Lebois and examination of witnesses.

Citibank's complaints about asset dissipation are particularly ironic, given this scorched earth campaign requiring Defendants to allocate resources to defending baseless and misguided applications in multiple jurisdictions.  This Court should deny the Motion and reject Citibank's attempt to tie up assets to seek leverage on a loan that has yet to mature and claims that will soon become moot.

---

[1] This was the first time counsel of record in this action became aware of the Spanish proceedings.

## FACTUAL BACKGROUND

I.    **Citibank Makes a Loan that Matures in September 2023 Secured by Commercially Bargained for Collateral**

Citibank made a $35 million loan to borrower Aralpa under a Multi-Draw Term Note, dated November 30, 2021 (Fourth Amended and Restated) (the "Note"). ECF 1 ("Compl.") ¶¶ 1, 13; ECF 21 ("Answer") ¶¶ 1, 13. The Note does not mature until September 30, 2023. Compl. ¶ 13; Answer ¶ 13. Lebois personally guaranteed the obligations under the Loan pursuant to a Guaranty Agreement dated November 30, 2021 (as amended) (the "Guaranty"). Compl. ¶¶ 2, 86; Answer ¶¶ 2, 86. Under the commercial bargain reached between the parties, Lebois pledged, as the sole collateral, shares in Unifin, made through Spanish holding company Promexcap Spain, S.L. ("Promexcap"), which is also an obligor under the Note. Compl. ¶ 15; Answer ¶ 15.

The Note includes a provision for a "Personal Financial Statement," which shall include certain "personal and other" income and information. ECF 1-1 (Note) at 5 and § 11(r). Any listed assets (other than Unifin shares) are not Collateral, and there are no restrictions on disposition of such assets under the applicable loan documents.

II.    **Citibank Asserts Technical Events of Default and Purports to Accelerate the Note Well Before the Maturity Date**

In Summer of 2022, as the market value of the Unifin shares admittedly declined, Defendants worked with Citibank to address certain alleged events of default under the Note. On May 11 and August 2, 2022, Citibank executed waivers for certain events of default including a collateral deficiency, with retroactive effect from March 31, 2022 to October 15, 2022 ("Express Waiver Period"). Complaint ¶¶ 22-24; Answer ¶ 22-24.

Immediately after the Express Waiver Period ended, on October 17, 2022, Citibank filed this action asserting breach of contract under the Note and Guaranty. ECF 1. Quickly after filing suit and before the taking of any discovery, on December 27, 2022, Citibank moved for judgment

4

on the pleadings based on five alleged events of default under the Note and Guaranty.  ECF 22.

Defendants have opposed and the motion remains pending.  ECF 27 (Defendants' Opposition to

Motion for Judgment on the Pleadings), ECF 33 (Sur-Reply).

### III.    Citibank Benefits from the Asset Sales It Protests

Prior to and during this litigation, non-obligor entities affiliated with Defendants have sold

assets and paid down Citibank loans not subject to this litigation.  Thus, Citibank has benefitted

from the very asset sales it protests:

*Vail Colorado Property*.  Before Citibank filed suit, in May 2022, non-obligor Colorado

limited liability company Solaris 7A, LLC sold a property in Vail, Colorado for approximately

$8.65 million and used the proceeds to pay off a mortgage owed to Citibank under a separate loan

agreement that is not the subject of this litigation.  ECF 39 ("Plotnicki Decl.") ¶¶ 11-13.

*Fisher Island Property*.  In February 2023, non-obligor Aralpa Miami Investments LLC

sold real estate in Florida for approximately $8.9 million.  *Id*. ¶¶ 15-18.  The proceeds of that sale

were used to pay off a mortgage Citibank had on that property under a separate loan agreement

that is not the subject of this litigation.  *Id.* ¶ 19.

The remaining property Citibank cites, other than the yacht discussed below, has not been

sold at all.  Citibank refers to a condominium located in Manhattan owned by non-obligor entity

ONE57 36B LLC, which Citibank alleges Mr. Lebois "sought to monetize through a rental listing."

*Id*. ¶ 20.  As Citibank asserts, the condominium was recently listed for rent at $32,500 per month.

*Id*.  There is no suggestion of a sale.

### IV.    Citibank Manufactures a Pretense to Seek Prejudgment Attachment on a Claim that Will Soon Be Moot

Just two months from the Note maturity date, which will moot Citibank's claims for

technical defaults, Citibank manufactured a pretense to seek to tie up assets beyond those pledged

as Collateral, and presumably to gain leverage in the commercial dispute.  On Thursday, July 13, 2023 at or around 6:15 p.m. Eastern time, Citibank wrote to counsel that it had just learned of the sale of the Botti yacht, and demanded the proceeds be applied to the Note.  ECF 36-1.  Citibank further demanded that counsel confirm by 10:00 a.m. *the following day* (*i.e.*, in less than 16 hours) that proceeds from the sale would be used to pay down the outstanding balance of the loan.  *Id.*

Although the demand was baseless on its face, counsel for Defendants responded approximately an hour later—at or around 7:19 p.m. Eastern time—that counsel would look into the request and asked the reason for Citibank's urgency.  *Id*.  Counsel also asked Citibank the basis under the Note for its demand to apply sale proceeds to the loan.  *Id*.  Rather than respond to counsel's email or engage in further discussions, Citibank informed counsel three days later, on Sunday, July 16, 2023, that it would be filing an order to show cause seeking a prejudgment attachment.  ECF 36-2.  The following day, and before making any attempt to meet and confer with Defendants, Citibank raced to the Court with its Motion and claimed that it required "immediate relief."  ECF 35 (Memorandum of Law in Support of Prejudgment Attachment ("MOL")) at 1.

Citibank's failure to support its demand is not surprising, given the various errors in counsel's statement.  First, as Citibank separately admits, the yacht was sold by an "affiliate" entity, not Lebois, Aralpa, or any obligor under the Note.  Plotnicki Decl. ¶ 24.  Second, the yacht was not pledged as Collateral to Citibank, Compl. ¶ 15, and Citibank has not identified any provision of the Note, Guaranty, or other Credit Document (as defined in the Note) that obligates Defendants to use proceeds from the yacht sale to pay down the loan, which has not yet matured.  And critically, rather than confirm the details of the yacht sale with Defendants, Citibank incorrectly asserts that that the yacht was sold "in or around April 2023" based on an internet article.  Plotnicki Decl. ¶

24-25.  In fact, the yacht was contracted to be sold on September 30, 2022, *before* Citibank ever filed suit.  *See* Lebois Decl. Ex. 1 (Purchase and Sale Agreement).

**V.      Citibank Races to Foreign Courts for Preventative Measures and Discovery It Has Agreed Not to Pursue Here**

Citibank did not only race to this Court for additional leverage.  It has been forum-shopping and arbitraging other court processes.  After filing this Motion, it ran the next day to Canada to seek a receivership over two entities affiliated with Mr. Lebois: Araterra Inversiones, S.L. and Terralpa Investments Fund I Limited Partnership.  ECF 43 (Rubin Letter to Court attaching Notice of Application before the Ontario Court).  Since filing and before any response has been filed, Citibank has issued summonses in the Canadian proceeding for the examination of Mr. Lebois and three other individuals not even party to that action, including Mr. Lebois' daughter.  *See* Lebois Decl. ¶¶ 5-8, Exs. 4-7.

Citibank also raced to Spain months ago.  As disclosed on July 20, 2023, Citibank failed in its *ex parte* attempt to secure prejudgment attachment in a Spanish court before proceeding with its Motion in this Court.  ECF 43.  The Spanish Court of First Instance denied the request for interim measures on January 24, 2023, finding Citibank had failed "to justify the reasons of urgency" for interim measures "beyond a generic mention of the deprivation of assets of the debtor."  *Id.* at 13 (Appellate Court recounting First Instance Court).  Citibank failed to disclose the January order to the Court in its motion for prejudgment attachment filed July 17, 2023.

The Spanish appellate court subsequently upheld the Court of First Instance, finding:

> we cannot infer a well-founded risk of loss and concealment of his assets – *whether they were located in Spain or abroad* – while the aforementioned procedure in New York . . . could be definitely resolved.

*Id*. at 15 ("Spanish Appellate Order").  The Spanish appellate court found "not the slightest proof" of "a clear risk of the assets located in Spain being sold," or "a risk of the concealment of assets in third-party countries."  *Id*.

Despite Citibank's scorched earth efforts, Defendants continue to attempt to reach agreement.  Defendants' counsel provided a term sheet and asked Citibank if it would agree to a standstill of the pending matters so that the parties could focus on commercial negotiations, rather than devote resources to requests for prejudgment attachment and examination in multiple jurisdictions.  Citibank has responded with a counteroffer but not agreed to pause these proceedings, though they have not raised dissipation of assets as a reason.

## ARGUMENT

I.    **Citibank Has Not Demonstrated a Need for the "Drastic Action" of Prejudgment Attachment**

### A.  Legal Standard for Prejudgment Attachment

To succeed on a motion for prejudgment attachment, a plaintiff must show: "(1) that there is a cause of action; (2) that it is probable that plaintiff will succeed on the merits; (3) that one or more grounds for attachment provided in [CPLR] § 6201 exist; and (4) that the amount demanded from the defendant exceeds all counterclaims known to the plaintiff."  *Serenity Alpha, LLC v. Northway Mining, LLC*, 531 F. Supp. 3d 512, 519 (N.D.N.Y. 2021); CPLR § 6212.  "Because attachment is a harsh remedy, these statutory factors must be strictly construed in favor of those against whom attachment is sought."  *DLJ Mortg. Cap., Inc. v. Kontogiannis*, 594 F. Supp. 2d 308, 319 (E.D.N.Y. 2009) (quotations and citations omitted).  To establish probability of success on the merits, a plaintiff must show that "it is more likely than not that it will succeed on the merits of its claim," which requires "proof stronger than that required to establish a prima facie case."  *In re*

*Hypnotic Taxi LLC*, 543 B.R. 365, 372-73 (Bankr. E.D.N.Y. 2016) (quotations and citations omitted).

As a ground for attachment, Citibank relies on CPLR § 6201(1): "the defendant is a nondomiciliary residing without the state, or is a foreign corporation not qualified to do business in the state." CPLR § 6201(1). Where such a foreign defendant consents to jurisdiction, as here, a plaintiff is not entitled to the "***drastic action***" of prejudgment attachment unless it shows, as Citibank agrees, "that something, such as ***the defendant's precarious financial situation or past or present conduct, poses a significant risk*** that the party seeking attachment will not be able to enforce a future judgment." *Chartwell Therapeutics Licensing LLC v. Citron Pharma LLC*, No. 16-CV-3181P, 2018 WL 1402239, at *4 (E.D.N.Y. Mar. 4, 2018), report and recommendation adopted, No. 16-cv-3181, 2018 WL 1401321 (E.D.N.Y. Mar. 20, 2018) (emphasis added) (citing *In re Amaranth Natural Gas Commodities Litig.,* 711 F. Supp. 2d 301, 305 & n.27 (S.D.N.Y 2010)).

To meet this high standard, there "must be more than a showing that the attachment would, in essence, be 'helpful.'" *VisionChina Media Inc. v. S'holder Representative Servs., LLC,* 967 N.Y.S.2d 338, 346 (N.Y. App. Div. 2013). The drastic remedy frequently is reserved for situations where, for example, "the creditor suspects that the debtor is secreting property or removing it from New York." *Id*. Courts have denied attachment under section 6201(1) where plaintiffs failed to "present evidence that defendants would conceal or convert any of their assets were it not for an attachment order." *Sylmark Holdings Ltd. v. Silicone Zone Int'l Ltd.*, 783 N.Y.S.2d 758, 773 (Sup. Ct. 2004). And where, as here, there is bargained for collateral, that bargain should be considered. *See e.g.*, *Elliott Assoc., L.P. v. Republic of Peru,* 948 F. Supp. 1203, 1211 & n.2 (S.D.N.Y. 1996) (exercising discretion to deny prejudgment attachment, in part, because of the "significant

concerns about the consequences of an attachment" to the defendant's pending debt restructuring agreement with other creditors and related collateral arrangements).

The Second Circuit recently ruled that, ultimately, the granting of a prejudgment attachment "rests within the discretion of the court," and that includes the "discretion to weigh extraordinary circumstances *even where the statutory requirements for attachment are satisfied*." *Iraq Telecom Ltd. v. IBL Bank S.A.L.*, 43 F.4th 263, 272 (2d Cir. 2022). That case reflected the existing authorities and settled the question whether the Court may consider non-statutory factors left open by *Capital Ventures Int'l v. Republic of Argentina*, 443 F.3d 214 (2d Cir. 2006), on which Citibank relies. *See* MOL at 10; *see also Man Wei Shiu v. New Peking Taste, Inc.*, No. 11 CV 1175, 2013 WL 2351370, at *16 (E.D.N.Y. May 28, 2013) ("Because attachment is a harsh remedy ... attachment may be denied even where all four prerequisites have been met.") (citing *Capital Ventures Int'l*, 443 F.3d at 222).

Finally, plaintiff must also provide a sufficient undertaking as security for any damages defendant may suffer from the attachment. *See BSH Hausgerate, GmbH v. Kamhi*, 282 F. Supp. 3d 668, 670-72 n.2 (S.D.N.Y. 2017).

Here the first two requirements are not at issue—a cause of action is pending and Defendants have not brought counterclaims. Citibank utterly fails to satisfy the remaining two requirements and, even if they were satisfied, prejudgment attachment is not warranted.

### B. Citibank Has Not Demonstrated a Likelihood of Success on the Merits

Citibank has not demonstrated that "it is more likely than not that it will succeed on the merits of its claim." *In re Hypnotic Taxi LLC*, 543 B.R. at 372. Citibank simply re-argues its motion for judgment on the pleadings—and includes allegations of Unifin's insolvency that Citibank *has not even pled in its Complaint*. The arguments fare no better styled as a motion for prejudgment attachment.

### 1.   There Is No Evidentiary Record

Citibank relies on "the record" before the Court.  MOL at 11.  But there is no evidentiary record.  Instead, because Citibank elected almost immediately after filing its claim to move for judgment on the pleadings, the only "record" before the Court is the complaint and answer, and Citibank's extraneous and untested "evidence."  ECF 27 at 7-13.  Citibank cannot short circuit discovery with a motion for judgment on the pleadings and then refer back to this truncated "record" in support of prejudgment attachment.

Defendants objected to reliance on a declaration and the attached extraneous evidence in their opposition to the motion for judgment on the pleadings and reiterates those arguments here. *Id*.  For example, Defendants objected to Citibank's numerous requests to take judicial notice of Unifin press releases and other documents, such as a Yahoo! Finance stock price chart, to establish essential facts of its case.  ECF 27 at 9, 12.  The dangers of Citibank's attempts to prove critical elements through untested evidence is underscored by the erroneous factual allegations made in this Motion regarding the Botti yacht (which was sold in September 2022 rather than April 2023, as Citibank claims), that are based on a news article found on the internet.  *See* Plotnicki Decl. ¶¶ 24-25, Ex. I.

### 2.   The Existing Untested Record Does Not Support a Likelihood of Success on the Merits

Irrespective of the evidentiary issues raised in the prior opposition, the static record on the merits, which remains unchanged since Citibank's premature motion for judgment on the pleadings, does not establish a likelihood of success on the merits.  Citibank has not proven that

any technical events of default occurred, *see* ECF 27 at 14-23, including any Collateral Deficiency Event of Default after the Express Waiver Period, *see id.* at 18-21.

In addition to Citibank's failure of proof, Defendants have asserted affirmative defenses that are legally sufficient to defeat Citibank's breach of contract claims, including the defenses of waiver and estoppel. *Id*. at 4-7. These are fact-intensive defenses that Defendants should be allowed to develop through discovery before any judgment is rendered. *Id*.; ECF 33 at 1-3. It is far too early to find that Citibank is entitled to tie up Defendants' assets when not a single document has been produced by the parties and the evidentiary record has not been established. *See Elliott Assocs., L.P.*, 948 F. Supp. at 1214 (exercising discretion to deny prejudgment attachment where "ultimate success on the merits is hardly a foregone conclusion" and defendants were "entitled to discovery upon their allegations of champerty which may require a factual hearing upon a full record.").

Citibank disingenuously claims that Defendants have merely raised procedural arguments in an attempt to delay. *See* MOL at 12. But Defendants have identified a myriad of genuine issues of material fact that remain unresolved regarding each of the alleged technical events of default and acceleration of the loan. ECF 27 at 14-24. Fundamental facts are at issue that are required for Citibank to succeed on its breach of contract claims against Defendants. Citibank's motion for prejudgment attachment is just as defective, deficient, and unsupported as its motion for judgment on the pleadings.

### C. Citibank Has Not Demonstrated a Significant Risk that it Will Not Be Able to Enforce a Future Judgment

Even if it could demonstrate a likelihood of success on the merits (which it cannot), Citibank has not demonstrated that Defendants are "secreting property or removing it from New York", *see VisionChina Media Inc.,* 967 N.Y.S.2d at 346, or that Defendants' "precarious financial

situation or past or present conduct, poses a significant risk that [Citibank] will not be able to enforce a future judgment." *Chartwell Therapeutics Licensing LLC*, 2018 WL 1402239, at *4.

### 1.  Third-party Asset Transactions Cannot Support a Risk of Dissipation

In addition to the sale of the yacht, Citibank relies on purported assets that it admits do not belong to the Defendants—sale of a private residence in Florida owned by non-obligor Aralpa Miami Investments LLC, *see* Plotnicki Decl. ¶ 16, and rental of a private residence in mid-town Manhattan "owned by a Lebois-controlled entity," *id*. at ¶ 21.  Such third-party assets do not support the "drastic action" of prejudgment attachment over a defendant's assets.

The one authority Citibank relies on in support is easily distinguished.  *See 245 Park Member LLC v. HNA Group (Int'l) Co.*, No. 22-CV-5136 (JGK), 2022 WL 2916577 (S.D.N.Y. July 25, 2022).  First, and critically, *245 Park Member* makes no mention of the existence of bargained-for collateral securing the loan at issue that the plaintiff could look to for recovery, as is the case here.  In addition, in considering the financial position of the debtor, the court took into account bankruptcy proceedings of the debtor's affiliates including the very entity that owned the property that gave rise to the guaranty claim.  *Id*. at *3.  Citibank does not contend that the third-party affiliates it mentions have anything to do with the Note or Guaranty.  Finally, the court appeared primarily troubled by a "glaring lack of evidence from the respondent concerning its assets and business operation." *Id.* at *4.

By contrast, here Citibank itself acknowledges that Aralpa has delivered account statements and Lebois' Personal Financial Statement.  Compl. ¶ 29.  Citibank further acknowledges that the financial information Aralpa delivered included, among other things, a "summary of bank accounts," *id*. at ¶ 31, and that Citibank was having "discussions" with Mr. Lebois regarding bank accounts, *id*. at ¶ 32.  Even the financial statement Citibank attaches to its

Motion lists investments that are financially strong (though, other than Unifin shares, these assets are not part of the Collateral or restricted). *See* Plotnicki Decl. ¶ 20 & Exhibit F.

Defendants *never* admitted that they failed to "comply with . . . contractual obligations" to provide financial information, as Citibank disingenuously asserts. MOL at 15. Rather, Defendants maintain that there has been no event of default for failure to provide bank and/or brokerage information, Answer ¶ 43, and the financial information that has been provided to Citibank complies with the provisions of the Note as well as the parties' historical course of dealing, as will be proven through discovery. *See* ECF 27 at 16-17.

### 2. Even if Citibank Could Rely on the Third-Party Asset Transactions, They Do Not Establish a Risk of Dissipation

Even if Citibank could rely on the third-party asset transactions it cites (which it cannot), those transactions do not establish a risk of enforcement. The mere sale of assets does not establish an inability to satisfy a potential judgment. *See e.g.*, *Chartwell Therapeutics Licensing LLC,* 2018 WL 1402239 at *5 (denying motion for prejudgment attachment even following sale resulting in at least $270 million in cash to defendant).

The two sales Citibank cites do not evince an intention to frustrate future enforcement. The yacht Botti was contracted to be sold *before Citibank filed suit*, in September 2022, Lebois Decl. Ex. 1, 2 (Contract of Sale and Addendum), thus cannot be viewed as evasion. The Botti yacht was encumbered by a mortgage to a separate lender that was paid off in connection with the sale. Lebois Decl. Ex. 3 (Seller Payoff Statement). And when the private residence in Florida was sold, as Citibank admits, the proceeds of that sale paid off a separate Citibank mortgage. MOL at 8 n.3; Plotnicki Decl. ¶ 19. Citibank acknowledges a third sale, of the Vail property, that paid off another Citibank mortgage of US $8.7 million. Plotnicki Decl. ¶ 12-13. These sales demonstrate Defendants' affiliates' history of paying creditors, and specifically Citibank—a factor Citibank

14

itself urges the Court to consider. *See* MOL at 13 (noting "a court may consider, among other things, defendant's history of paying creditors" and citing *Habitations Ltd. v. BKL Realty Sales Corp.*, 160 A.D.2d 423, 424 (N.Y. App. Div. 1990)).

The remaining property Citibank cites in New York has *not* been sold at all but has simply been listed to rent. Citibank's argument that this listing somehow suggests asset dissipation or financial distress is utterly illogical. If anything, the rental income from that property will only enhance the entity's financial situation. In any event, contrary to Citibank's suggestion, the issue is not whether Defendants have any assets within New York. *See ITC Ent., Ltd. v. Nelson Film Partners*, 714 F.2d 217, 221 (2d Cir. 1983) (considering assets in New York "in interpreting § 6201(1)'s requirement that the defendant 'reside without the state,'" not whether there is a risk of enforcement).

Citibank has simply "failed to demonstrate a real identifiable risk that the defendants will be unable to satisfy any judgments" or "present[ed] evidence that [Defendants] would conceal or convert any of their assets were it not for an attachment order." *Sylmark Holdings Ltd.,* 783 N.Y.S.2d at 773. Especially where, as here, the parties bargained for the agreed Collateral (precisely to provide security in the event of non-payment), Citibank has not established the requirements for attachment.

### D. The Court Should Use Its Discretion to Deny Citibank's Request for More than the Collateral for Which It Bargained

In essence, Citibank's Motion is an attempt to tie up more assets than the Collateral for which it bargained. The Court should reject this request. *See Iraq Telecom Ltd.,* 43 F.4th at 272 (holding court has discretion to consider non-statutory factors). That would set a dangerous precedent that would give lenders wide leeway to grab assets not part of the contractual bargain.

Indeed, this Motion appears to be Citibank's reaction to learning of the yacht sale—as the Motion was filed days after it demanded the proceeds. But the yacht, by Citibank's own admission, belonged to a third party and was encumbered by a mortgage to a separate lender. The sale, before suit was ever filed, of an asset not owned by the obligors, does not evince an intention to evade a future judgment, or an inability to satisfy a future judgment. This Court should deny Citibank's attempt to obtain any security beyond the commercially agreed Collateral.

### E. Citibank is Engaged in Transparent Forum Shopping, and the Spanish Court Orders Should Be Afforded Deference Based on Comity and to Avoid Inconsistent Results

As explained above, the Spanish appellate court found no concealment of assets in Spain *or abroad*:

> we cannot infer a well-founded risk of loss and concealment of his assets – *whether they were located in Spain or abroad* – while the aforementioned procedure in New York . . . could be definitely resolved.

Spanish Appellate Order (ECF 43 at 15).

This Court should afford deference to the Spanish appellate court, which has considered and resolved this issue in favor of Defendants, to avoid the possibility of inconsistent results. *Cf. InterDigital Commc'ns, Inc. v. Huawei Inv. & Holding Co.*, 166 F. Supp. 3d 463, 473 (S.D.N.Y. 2016) (staying enforcement proceeding pending Paris Court's decision on vacatur).

The Spanish Appellate Order makes clear that prejudgment attachment is unwarranted both in Spain and New York. Any new "developments" that Citibank may argue the Spanish appellate court did not consider based on the sale of Florida real estate or the Botti yacht—both of which occurred *prior* to the issuance of the Spanish Appellate Order—are of no import because they do not involve actions taken by Defendants or the agreed Collateral. In any event, Citibank could

have simply re-applied to the Spanish court with this additional information, and has not provided any reason for failing to do so.

Citibank's gamesmanship is further evidenced by its attempt to seek discovery in the Canadian proceedings after forgoing it here. Despite filing an early dispositive motion and agreeing that neither party could conduct discovery until that motion is decided, Citibank now seeks asset discovery through the newly filed Canadian proceedings. This forum shopping and gamesmanship should not be tolerated, and this Court should give deference to the Spanish appellate court's ruling based on principles of international comity.[2]

## II.    If the Court Orders Attachment, Citibank Should Provide a Reasonable Undertaking

Citibank's request for an undertaking of the minimum of $500 exposes the illegitimacy of its position. An undertaking is required as security for damages that a defendant may suffer from an improper attachment, and as Citibank admits it must be "rationally related" to potential damages. *JSC VTB Bank v. Mavlyanov,* 154 A.D.3d 560, 563 (N.Y. App. Div. 2017). Even the case Citibank cites acknowledged an undertaking of a much higher percentage of the anticipated judgment. *See BSH Hausgerate*, 282 F. Supp. 3d at 670 n.2 (acknowledging undertaking of $15,000, equivalent to .006% of the approximately $2,500,000 award).

Citibank's request is another indication of its motivation here—rather than reach commercial resolution of the Note coming due in just two months, it seeks to require Defendants to expend substantial efforts and resources in this and two other jurisdictions while preserving its

---

[2] In a letter motion dated July 20, 2023, Citibank requested the Spanish Appellate Order be included in the record and stated that "Citibank will further discuss [the order] in its reply brief." ECF 43. Given that Citibank did not even advise the Court of the pending Spanish *ex-parte* proceeding in its Motion, it is improper for Citibank to address the order for the first time on reply, and Defendants reserve the right to request leave to file a sur-reply to address any new arguments in Citibank's reply related to the Spanish Appellate Order.

own resources.  If an attachment is ordered restraining Defendants' assets up to $35 million, which could substantially damage their interests and business, the undertaking should correspond to those potential damages.  Defendants submit that an undertaking in at least the amount of at least $10 million would be warranted if the Court decides to grant a prejudgment attachment.

\* \* \*

Citibank has utterly failed to meet its burden to support the drastic action of prejudgment attachment on claims that will become moot in less than two months.  Citibank has not shown a likelihood of success on the merits, nor a significant risk of future enforcement.  And even if it could meet that standard, the Court should use its discretion to deny the request.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Motion be denied.


Dated: August 7, 2023

/s/  Daniel J. Saval
Daniel J. Saval

**KOBRE & KIM LLP**
Daniel J. Saval
John G. Conte
800 Third Avenue
New York, New York 10022
Tel: +1 212 488 1200
Fax: +1 212 488 1220
Daniel.Saval@kobrekim.com
John.Conte@kobrekim.com

*Attorneys for Defendants*
*Aralpa Holdings Limited*
*Partnership and Rodrigo Lebois*
*Mateos*

<u>**CERTIFICATE OF SERVICE**</u>

I HEREBY CERTIFY that on August 7, 2023 a true and correct copy of the foregoing

Answer was electronically filed with the Clerk of the Court using the CM/ECF system which will

send a notice of electronic filing on all counsel or parties of record on the service list.

/s/  Daniel J. Saval
Daniel J. Saval

**KOBRE & KIM LLP**
Daniel J. Saval
John G. Conte
800 Third Avenue
New York, New York 10022
Tel: +1 212 488 1200
Fax: +1 212 488 1220
Daniel.Saval@kobrekim.com
John.Conte@kobrekim.com

*Attorneys for Defendants*
*Aralpa Holdings Limited*
*Partnership and Rodrigo Lebois*
*Mateos*

19