## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

CITIBANK, N.A.,

                Plaintiff,

     v.

ARALPA HOLDINGS LIMITED
PARTNERSHIP AND RODRIGO LEBOIS
MATEOS,

                Defendants.

No. 22-cv-08842 (JLR)

**ORAL ARGUMENT REQUESTED**

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF CITIBANK, N.A.'S MOTION FOR THE ISSUANCE OF A WRIT OF EXECUTION AND TURNOVER ORDER TO ENFORCE JUDGMENT AGAINST ONE57 36B, LLC AND ARALPA MIAMI INVESTMENTS LLC, FOR PREJUDGMENT ATTAHCMENT, AND TO COMPEL RESPONSES TO INFORMATION SUBPOENA**

**KAUFF LATON MILLER LLP**

950 Third Avenue, 15th Floor
New York, New York 10022
Tel. (212) 906-3441
Fax (212) 656-1456

**GOODWIN PROCTER LLP**

The New York Times Building
620 Eighth Avenue
New York, New York 10018
Tel. (212) 813-8800
Fax (212) 355-3333

*Attorneys for Plaintiff Citibank, N.A.*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT………………………………………………………….... 1

FACTUAL BACKGROUND………………………………………………………………3

    A.  One57 and Aralpa Miami…………………………………………………….....3

        1.  One57………………………………………………………………………3

        2.  Aralpa Miami……………………………………………………………4

    B.  The Aralpa Miami Credit Facility…………………………………………….6

    C.  Lebois' Personal Financial Statements…………………………..................... 7

    D.  Aralpa Holdings' Default On The Note………………………………….....8

    E.  Lebois' Information Subpoena Response……………………………....…… 11

ARGUMENT…………………………………………………………………….........12

    I.  Citibank Is Entitled To A Writ Of Execution And A Turnover
       Order With Respect To The Assets Of One57 And Aralpa Miami…………… 12

        A.  Lebois Dominated and Controlled One57 and Aralpa Miami…………… 14

        B.  Lebois Used His Control of One57 to Defraud
            Citibank and Cause It Injury…………………………………………..….. 18

    II.  The Court Should Order Prejudgment Attachment And Issue a Temporary
       Restraining Order Against The Assets Of One57 And Aralpa Miami…...…..... 20

        A.  Citibank is Entitled to an Order of Attachment………………..…….. 21

        B.  Citibank is Entitled to a Temporary Restraining Order Preventing One57
            And Aralpa Miami From Transferring Their Assets………………..….. 22

        C.  Citibank Should Be Required to Post a Minimal Undertaking………..…...23

    III.  Lebois Should Be Compelled To Provide Information Concerning The
        Assets He Identified In His Personal Financial Statements………………….24

CONCLUSION……………………………………………………………………..25

**CASES**

*138-77 Queens Blvd. LLC v. Silver*,
    No. 22-cv-5155 (KAM) (MMH), 2023 WL 4564796 (E.D.N.Y. July 17, 2023)…….14, 15

*AMEV Capital Corp. v. Kirk*,
    180 A.D.2d 775 (2d Dep't 1992)………………………………………………...…19
.

*Anhul Konka Green Lighting Co. v. Green Logic LED Electrical Supply, Inc.*,
    No. 18-cv-12255 (MKV) (KHP), 2021 WL 621205 (S.D.N.Y. Feb. 17, 2021)………….19

*Bollenbach v. Haynes*,
    No. 18-cv-997, 2018 WL 4278347 (S.D.N.Y. May 29, 2018)…………………….…..20
.

*BSH Hausgeräte, GmbH v. Kamhi*,
    282 F. Supp. 3d 668 (S.D.N.Y. 2017)…………………………………………………..23

*Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.*,
    98 F.3d 13 (2d Cir. 1996)………………………………………………………….….3

*Capital Ventures Int'l v. Republic of Argentina*,
    443 F.3d 214 (2d Cir. 2006)………………………………………………………...…..20

*CBF Industria de Gusa S/A. v. AMCI Holdings, Inc.*,
    316 F. Supp. 3d 635 (S.D.N.Y. 2018)………………………………………….……...14

*CSX Transportation, Inc. v. Island Rail Terminal, Inc.*,
    879 F.3d 462 (2d Cir. 2018)…………………….………………………….......…13

*D. Klein & Son, Inc. v. Good Decision, Inc.*,
    147 Fed. Appx. 195 (2d Cir. 2005)……………………………………………...13, 18

*DER Travel Services, Inc. v. Dream Tours & Adventures, Inc.*,
    No. 99 Civ. 2231 (HBP), 2005 WL 2848939 (S.D.N.Y. Oct. 28, 2005)…………....…18

*Fed Nat. Mortg. Ass'n v. Olympia Mortg. Corp.*,
    724 F. Supp. 2d 308 (E.D.N.Y. 2010)……………………………………………........17

*Freeman v. Complex Computing Co., Inc.*,
    119 F.3d 1044 (2d Cir. 1997)………………………………………………….....passim

# CASES

*General Textile Printing & Processing Corp. v. Expromtorg Int'l Corp.*,
862 F. Supp. 1070 (S.D.N.Y. 1994)……………………………………………….........22

*Gryphon Domestic VI, LLC v. APP Int'l Fin. Co., B.V.*,
41 A.D.3d 25 (1st Dep't 2007)……………………………………………………….....20

*HBS Leasing Corp. v. Frank*,
48 F.3d 623 (2d Cir. 1995)…………………………………………………………...….13

*Hawkins v. Zoegall*,
No. 23-CV-4040 (KAM) (JWM), 2023 WL 4106645 (E.D.N.Y. June 20, 2023)……….23

*Herzi v. Ateliers De La Haute-Daronne*,
No. 15-CV-7702 (RJS), 2015 WL 8479676 (S.D.N.Y. Oct. 13, 2015)………....…......23

*In re Boize*,
Bankr. No. 09-30075, 2009 WL 2232802 (Bankr. E.D. Tenn. July 23, 2009)……...……17

*In re Charnock*,
97 B.R. 619 (Bankr. M.D. Fla. 1989)……………………………….…….…...…..17

*In re Maghazeh*,
310 B.R. 5 (E.D.N.Y. 2004)……………………………………………………….......15

*JSC Foreign Economic Ass'n Technostroyexport v. Int'l Dev. and Trade Services, Inc.*,
306 F. Supp. 2d 482 (S.D.N.Y. 2004)…………………………………………...14, 20, 21

*JSC VTB Bank, etc. v. Mavlyanov*,
154 A.D.3d 560 (1st Dep't 2017)……………………………………...……......24

*Lakah v. UBS AG*,
No. 07-CV-2799 (LAP), 2017 WL 7245365 (S.D.N.Y. Feb. 14, 2017)………...…......17

*LiButti v. U.S.*,
107 F.3d 110 (2d Cir. 1997)……………………………………………….…......15

*Med. Bldgs. Assocs., Inc. v. Abner Props. Co.*,
103 A.D.3d 488 (1st Dep't 2013)………………………………………….....…....23

*Miramax Film Corp. v. Abraham*,
No. 01 CV 5202 (GBD), 2003 WL 22832384 (S.D.N.Y. Nov. 25, 2023)…………........13

# CASES

*Ng v. Adler*,
    518 B.R. 228 (E.D.N.Y. 2014)……………………………………….....……19

*O'Brien-Kreitzberg & Assocs. v. K.P., Inc.*,
    218 A.D.2d 519 (1st Dep't 1995)……………………………………………12

*Onewoo Corp. v. Hampshire Brands, Inc.*,
    No. 16-cv-4623, 2016 WL 11779677 (S.D.N.Y. Nov. 15, 2016)……………………......22

*Prof'l Merch. Advance Capital, LLC v. C Care Services, LLC*,
    No. 13 Civ. 6562 (RJS), 2013 WL 12109397 (S.D.N.Y. Oct. 2, 2013)………………......23

*Provisional Protective Comm. v. Williams*,
    121 A.D.2d 271 (1st Dep't 1986)……………………………………………22

*Stokes v. MilkChocolateNYC, LLC*,
    No. 22 Civ. 6786 (PAE) (RWL), 2023 WL 4447073 (S.D.N.Y. July 11, 2023)…….........13

*Trust v. Kummerfeld*,
    53 Fed. Appx. 761 (2d Cir.2005)……………………………………………......…....12

*U.S. v. Katholos*,
    No. 17-CV-531 (JLS) (HKS), 2022 WL 3328223 (W.D.N.Y. Aug. 10, 2022)…………..25

*U.S. v. J.R. LaPointe & Sons, Inc.*,
    950 F. Supp. 21 (D. Me. 1996)……………………………………………......17

*Yong Xiong He v. China New Star Rest., Inc.*,
    No. 19-CV-5907(PKC)(CLP), 2020 WL 6202423 (E.D.N.Y. Oct. 22, 2020)…………13

*Williams v. Regus Mgmt. Grp., LLC*,
    No. 10 Civ. 8987 (JMF), 2012 WL 1890384 (S.D.N.Y. May 15, 2012)………...……....17

# STATUTES

CPLR 301…………………………………………………………………….......13
CPLR 302…………………………………………………………………………13
CPLR 2308…………………………………………………………………………24
CPLR 5224…………………………………………………………………………24
CPLR 5225…………………………………………………………………………12
CPLR 5230……………………………………………………………… …...……13
CPLR 6201…………………………………………………………………………20
CPLR 6210……………………………………………………………………...............22

Page

**CASES**

CPLR 6211…………………………………………………………………………23
CPLR 6212…………………………………………………………………………20
Fed. R. Evid. 408……………………………………………….....................17
Fed. R. Civ. P. 69…………………………………………………...………….......12

**MISCELLANEOUS**

Black's Law Dictionary (11th ed. 2019)……………………...……………………………….25

Plaintiff Citibank, N.A. ("Plaintiff" or "Citibank") respectfully submits this memorandum of law in support of its motion for the issuance of a writ of execution and turnover order to enforce the Court's Judgment, dated September 15, 2023, against One57 36B, LLC ("One57") and Aralpa Miami Investments LLC ("Aralpa Miami"), for prejudgment attachment and a temporary restraining order against One57 and Aralpa Miami, and to compel Defendant Rodrigo Lebois Mateos ("Lebois") to provide responses to the information subpoena served on him.

## PRELIMINARY STATEMENT

In June 2017, Lebois represented that he had over $200 million in assets to induce Citibank to provide a $20 million credit facility to his entity, Aralpa Holdings Limited Partnership ("Aralpa Holdings" and collectively with Lebois, "Defendants"). From June 2017 through the entry of the judgment in this action, Lebois continued to represent himself as an ultra-high net worth individual with hundreds of millions of dollars in assets to induce Citibank to keep the facility outstanding. In multiple personal financial statements that he provided to Citibank pursuant to the terms of the guaranty he signed in connection with the credit facility, Lebois repeatedly told Citibank that he had in excess of $400 million in total assets, including hundreds of millions of dollars in shares of Unifin Financiera, S.A.B. de C.V. ("Unifin"), which served as collateral for the credit facility, $200 million in "private investments," $70 million in "personal real estate," and $80 million in "personal property, art & jewelry."

Lebois now claims, for the obvious, and singular, purpose of evading collection and enforcement of the Judgment, that this was never true, and that he misrepresented the size of his wealth to Citibank to secure the multi-million dollar credit facility. In his November 16, 2023 sworn response to an information subpoena served on him by Citibank, Lebois lists assets nowhere near the $630 million that he claimed to have owned in a personal financial statement he provided

1

to Citibank just seventeen months ago and relied upon to this Court four months ago while resisting prejudgment attachment. In response to questions asking him to identify his assets, Lebois lists none of the $200 million in "private investments" or the $80 million in "personal property, art & jewelry" that were included on this personal financial statement, and he lists real estate with an estimated value of $4 million, well below the $75 million of "personal real estate" in his personal financial statement and that excludes real estate from Mexico, Spain, and New York that he claimed to own. Lebois also denies having sold or transferred any of his assets.

In other words, now that he owes a $38 million judgment to Citibank, Lebois claims that he never actually owned the assets that he said he did. But the truth is that Lebois is the ultimate beneficial owner of the assets he listed in his June 30, 2022 financial statement, either legally or equitably. Now that it is inconvenient for him to claim ownership, he is seeking to hide behind the corporate shields of the entities that hold direct legal title to the assets.

Citibank brings this application to pierce the corporate veil of two of the entities that Lebois is hiding behind—One57 and Aralpa Miami—to execute on their assets. As set forth below, the evidence of Lebois' complete domination of these entities is overwhelming—not only did he represent that he owned the assets that are technically held by these entities in each and every personal financial statement he submitted to Citibank, but he founded these entities, was their duly appointed manager, had full authority to transact all business on their behalf, guaranteed their debts, and paid their debts with his personal assets. He even offered to provide One57's primary asset, an apartment in New York, as collateral for the credit facility just over three months ago. Further, Lebois used his control of these (and the other entities in his network) to defraud Citibank and cause it to incur a more than $35 million loss by representing that he was the ultimate owner of these entities' assets in order to keep the credit facility outstanding.

The guiding principle courts apply on an application to pierce the corporate veil is that "liability is imposed to reach an equitable result." *Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.*, 98 F.3d 13, 18 (2d Cir. 1996). The only equitable result here is to pierce the corporate veil of One57 and Aralpa Miami and allow Citibank to execute on assets that Lebois previously represented were his and could be used to repay the loan Citibank is now seeking to recover.

In addition, Citibank also requests that the Court (1) issue a prejudgment attachment order and a temporary restraining order against One57 and Aralpa Miami because of Lebois' persistent and continued efforts to thwart Citibank's efforts to collect on its judgment; and (2) compel Lebois to provide responses to an information subpoena in a manner that reflects his interest in the assets listed in his June 30, 2022 personal financial statement.

## FACTUAL BACKGROUND

### A. One57 And Aralpa Miami

One57 and Aralpa Miami are real estate holding companies that have been controlled by Lebois at all relevant times.

#### 1. One57

One57 is a New York limited liability company that was formed on or about September 7, 2016. Declaration of Bruno Plotnicki ("Plotnicki Decl."), Ex. A (One57 Operating Agreement). One57 is solely owned by an entity known as Aralpa Capital SA de CV ("Aralpa Capital"), and is managed by Lebois and his daughter, Almudena Lebois Ocejo ("Almudena").[1] *Id.* § 5, 6. As set forth in its Operating Agreement, and as Lebois and Almudena subsequently represented to

---

[1] According to an organization agreement/resolution of Aralpa Capital executed by Lebois and provided to Citibank in November 2020, Lebois is the President of Aralpa Capital and he had full authority to transact business on its behalf. Plotnicki Decl., Ex. C (Aralpa Capital Organization Agreement/Resolution).

Citibank, Lebois had full authority to transact all business on behalf of One57. *Id.* § 6; Plotnicki Decl., Ex. B (One57 Organization Agreement/Resolution).

One57's primary asset is the property located at 157 West 57th Street, Unit 36B, New York, New York (the "New York Property"). Plotnicki Decl., ¶ 7. To Citibank's knowledge, it does not have an office and does not do any business other than owning the New York Property. *Id.*

In January 2018, One57 obtained a $5.22 million mortgage on the New York Property from Citibank. *Id.*, Ex. D (One57 Mortgage). Lebois also guaranteed repayment of the mortgage, which was a condition of the mortgage. *Id.*, Exs. E (Closing & Disbursement Instructions), F (Consumer Limited Guaranty). Lebois signed the guaranty on behalf of One57 and listed the same address for him and One57. *Id.*, Ex. F (Consumer Limited Guaranty).

In addition to the New York Property, One57 owns a bank account at Citibank. *Id.*, ¶ 11. The account carries a minimal balance and appears to be used solely to pay the mortgage on the New York Property. *Id.* Funds are typically deposited into the account in an amount sufficient to meet any outstanding mortgage payments and then withdrawn from the account to make those payments. *Id.*, Ex. G (One57 account statements). Lebois funded many of the mortgage payments personally. From February 2022 to February 2023, Lebois sent $189,350 from his personal bank account to One57's Citibank account in twelve separate transactions. *Id.*, Ex. H (One57 Wires). As of December 30, 2023, there was $54.58 in the account. *Id.*, ¶12.

2. Aralpa Miami

Aralpa Miami is a Georgia limited liability company that was formed on or about January 24, 2018. *Id.*, Ex. I (Aralpa Miami Operating Agreement). Like One57, Aralpa Miami is solely owned by Aralpa Capital and is managed by Lebois (as officer) and his daughter, Almudena (as secretary). *Id.* at Art. I ("Manager" and "Ownership Interest"). Like One57, Lebois also

represented to Citibank that he had full authority to transact business on behalf of Aralpa Miami. Plotnicki Decl., Ex. J (**Aralpa Miami Organization Agreement/Resolution**).

Aralpa Miami's primary asset was the real property located at 5034 Fisher Island Drive, Unit 5034, Miami Beach, Florida 33109 (the "Miami Property"), which it purchased in April 2018 for $3.5 million. *Id.*, ¶ 18. To Citibank's knowledge, Aralpa Miami does not have an office and does not do any business. *Id.*, ¶ 17. In July 2018, Aralpa obtained a $2.45 million mortgage on the Miami Property from Citibank. *Id.*, Ex. K (Aralpa Miami Mortgage). As with One57's mortgage on the New York property, Lebois also guaranteed Aralpa Miami's mortgage. *Id.* ¶ 20.

Aralpa Miami sold the Miami Property in February 2023 for $8,925,000. *Id.*, ¶ 21. At the time of the sale, Aralpa Miami paid off the outstanding balance on the Citibank mortgage of $2,450,000, leaving it with approximately $6,475,000 in net proceeds from the sale. *Id.* Citibank does not know what Aralpa Miami did with these proceeds; however, through information subpoenas served in this action, it has located a brokerage account in the name of Aralpa Miami at UBS Financial Services, Inc. ("UBS") that had approximately $2,015,486.19 in cash and money market funds as of October 31, 2023. *Id.*, Ex. L (Aralpa Miami UBS account statement).

In addition to the UBS account, Aralpa Miami also owns a bank account at Citibank. *Id.*, ¶ 23. The bank account carries a minimal balance and appears to have been used solely to pay the mortgage and property management services on the Miami Property. *Id.* Prior to February 2023, funds were typically deposited into the account in an amount sufficient to meet these expenses and then withdrawn from the account to pay them. *Id.*, Ex. M (Aralpa Miami account statements). Lebois funded many of Aralpa Miami's expenses personally. From December 2021 to February 2023, Lebois sent $216,815 from his personal bank account to Aralpa Miami's Citibank account

in eight separate transactions.  *Id.*, Ex. N (Aralpa Miami Wires).  As of November 30, 2023, there was $6,128.99 in the Citibank account.  *Id.*, ¶ 24.

Although One57 and Aralpa Miami were directly owned by Aralpa Capital, Citibank understood that they were ultimately owned by Lebois based on numerous representations Lebois made that the assets owned by these two entities—the New York Property and the Miami Property—were his.

## B.    The Aralpa Holdings Credit Facility

In June 2017, Aralpa Holdings and Citibank established the credit facility that was the subject of this action.  *See* Compl. (ECF No. 1) ¶ 1 n. 2.  As a condition for providing the credit facility, Citibank required Lebois, Aralpa Holdings' principal, to guarantee repayment of the funds borrowed by Aralpa Holdings pursuant to the note, dated June 16, 2017 (the "Note").  *See* Plotnicki Decl., Ex. O (Guaranty) at 1.  The Guaranty Agreement, dated June 16, 2017, (the "Guaranty") required Lebois to represent that he had a net worth of "not less than $200 million" and it required him to furnish "semi-annual personal financial statements."  *Id.* §§ 8(s), 9(c).  Citibank relied on the Guaranty and the representations and covenants made by Lebois when it agreed to the $20 million credit facility.  *Id.*, ¶ 28.

The credit facility initially matured on June 16, 2018; however, the maturity date was subsequently extended through four separate amendments to the Note.  *See* Compl. ¶ 1 n. 2.[2]  The final amendment, dated November 30, 2021, extended the maturity to September 30, 2023.  *See id.*  The Guaranty was also amended three times.[3]  Each time it was amended Lebois agreed to

---

[2] The Note was amended and restated on July 27, 2018, September 30, 2019, April 12, 2021, and November 30, 2021.  *Id.*

[3] The Guaranty was amended and restated on September 30, 2019, April 12, 2021, and November 30, 2021.  *See* Plotnicki Decl., ¶ 29, Ex. Q (Amended Guaranty).

"Maintain at all times (and to be tested at least annually) a Net Worth of not less than $400,000,000" and to provide Citibank with periodic personal financial statements. *See* Plotnicki Decl., Ex. Q (Amended Guaranty) at 6-7 (§§ 9(r), (u)), 20-26. The amended Note also required Aralpa Holdings to cause Lebois to maintain a net worth of at least $400 million and to provide periodic financial statements. *See,* Plotnicki Decl., Ex. R (Amended Note) at 13 (§§ 11(o), (r)).

As it did when it agreed to the initial $20 million credit facility, Citibank relied on the Guaranty and the covenants made by Lebois and Aralpa Holdings when it agreed to amend the Note and Guaranty and to extend the credit facility. Plotnicki Decl., ¶ 31. Citibank also agreed to these amendments because Lebois had been providing periodic financial statements in which he repeatedly represented his net worth to be well in excess of $400 million. *Id.*, ¶ 32.

## C. Lebois' Personal Financial Statements

As required under the terms of the Guaranty, Lebois provided Citibank with personal financial statements annually and semi-annually that listed his assets, his liabilities, his cash flow, and his total net worth. In each of the financial statements he provided, Lebois represented that he owned substantial assets and that his net worth was well in excess of $400 million:

| Date | Total Assets | Total Net Worth | Source |
|------|-------------|----------------|--------|
| 8/30/19 | $631,700,000 | $571,700,000 | Plotnicki Decl., Ex. S |
| 3/31/20 | $581,533.631.57 | $534,843,631.57 | *Id.*, Ex. T |
| 12/31/20 | $767,161,635.55 | $715,471,635.55 | *Id.*, Ex. U |
| 6/30/21 | $810,144,741.02 | $763,454,741.02 | *Id.*, Ex. V |
| 3/31/22 | $705,672,561.16 | $658,982,562.16 | *Id.*, Ex. W |
| 6/30/22 | $631,747,635.91 | $589,077,635.91 | *Id.*, Ex. X |

Each of these personal financial statements grouped Lebois' assets by category, including "Cash", "Public Investments", "Private Investments", "Personal Real Estate", and "Personal Property, Art & Jewelry", and, beginning in 2020, Lebois enumerated specific assets within these

categories.  *Id.*  In each of the five personal financial statements he provided to Citibank from 2020 to 2022, Lebois included in the Personal Real Estate category, an asset described as "NY, NY" and an asset described as "Miami, FL (Fisher Island)."  *Id.*  It was represented by Lebois and understood by Citibank that the "NY, NY" asset referred to New York Property and the "Miami, FL (Fisher Island)" asset referred to the Miami Property.  Plotnicki Decl., ¶ 41.

Although Citibank understood that the New York Property and the Miami Property may have been legally titled in the name of One57 and Aralpa Miami, it believed that the properties were ultimately owned by Lebois based on his inclusion of these assets on his personal financial statements and his control of the entities, and it agreed to extend the credit facility on multiple occasions based on Lebois' representations in his personal financial statements.  *Id.* ¶ 42.

## D.    Aralpa Holdings' Default On The Note

In March 2022, Aralpa Holdings defaulted on the Note, and, on April 13, 2022, Citibank sent Aralpa Holdings and Lebois a Notice of Event of Default and Reservation of Rights.  *See* Declaration of Mario Meza ("Meza Declaration"), ¶¶ 6-7, Ex. A.  Based on representations made by Lebois and the head of Lebois' family office, José Llamas ("Llamas"), on May 11, 2022, Citibank issued a limited waiver as to certain defaults under the Note and Guaranty until July 31, 2022.  Meza Decl., ¶¶ 8-10, Ex. D.  Following that waiver, and in an effort to obtain another waiver of the defaults under the Note, on July 28, 2022, Llamas sent Citibank Lebois' personal financial statement, dated as of June 30, 2022.  *Id.*, ¶ 14, Ex. G.  Consistent with his previous financial statements, the June 30, 2022 personal financial statement lists Lebois' assets as follows:

| ASSETS | |
|---|---|
| Cash | $ 14,835,000.00 |
| **Marketable Securities** (Including Series VRX) | $ 32,678,450.00 |
| **Public Investments** | $223,984,785.91 |
| Unifin *Financiera* | $ 223,984,785.91 |
| **Private Investments** | $200,829,400.00 |
| Caye Chapel *(Four Seasons Hotel in Belize)* | $ 39,545,000.00 |
| LBB Capital SA de CV *(Holding Company of Private Equity Investments)* | $ 41,931,000.00 |
| Marques de Salamanca *(39.29% stake in building for development in Madrid, Spain)* | $ 26,855,900.00 |
| Hyatt Project CDMX/Los Cabos | $ 21,650,000.00 |
| Real Estate Fund in Spain | $ 25,974,000.00 |
| Private Equity Investments in Mexico | $ 44,873,500.00 |
| **Personal Real Estate** | $ 75,800,000.00 |
| Real Estate MX | $ 44,300,000.00 |
| Madrid, Spain *(Includes home in Cadiz)* | $ 17,250,000.00 |
| NY, NY | $ 9,120,000.00 |
| Miami, FL *(Fisher Island)* | $ 4,250,000.00 |
| Houston, TX | $ 880,000.00 |
| **Personal Property, Art & Jewlery** | $ 83,620,000.00 |
| Jewlery | $ 28,950,000.00 |
| Art | $ 32,100,000.00 |
| Boats | $ 18,850,000.00 |
| Others | $ 3,720,000.00 |
| **Total Assets** | **$631,747,635.91** |

*Id.*, Ex. G.

Although Lebois now claims that a substantial portion of these assets are not his, in July 2022, he not only represented to Citibank that these were his assets through this personal financial statement, but he and his representatives made additional representations throughout the summer of 2022 that the assets in the financial statement were his to induce Citibank to continue to waive Aralpa Holdings' defaults under the Note. These representations included that:

- Lebois was the owner of €14,638,970.14 in assets in five bank accounts at Banco Santander, S.A., almost all of which was held in three bank accounts in the name of Aralpa Inversiones SL ("Aralpa Inversiones"). *Id.* ¶¶ 11, 15, Exs. E-G.[4]

- Lebois owned $25.9 million worth of investments in a Spanish real estate fund through Terralpa Investments Fund I Limited Partnership ("Terralpa"), a limited partnership of which he and his daughter Almudena were the controlling investors. *Id.*, ¶¶ 16, 21.

- Lebois owned the "Marques de Salamanca" project in Madrid, from which he would receive tens of millions of dollars and deposit $20 million of the proceeds into Citibank. *Id.*, ¶ 16, Ex. H.

- Lebois owned a Hyatt hotel in Mexico and was expecting to receive over $21 million in proceeds from its sale by September 2022, which funds he would deposit with Citibank. *Id.* ¶¶ 19, 22.

- Lebois would receive $45 million in cash flows between September and December 2022 that he would deposit at Citibank. *Id.* ¶ 20.

- Lebois owned an extensive collection of artwork located in the U.S. and Spain. *Id.* ¶ 23, Ex. K.

During these discussions, and consistent with the personal financial statements that Lebois had been provided to Citibank for years, Lebois and his representatives referred to the assets as "belonging to" Lebois and did not disclose specifically how the ownership of these assets was structured. *Id.* ¶ 25. In reliance on Lebois' June 30, 2022 personal financial statement and other representations made regarding Lebois' assets, on August 2, 2022, Citibank provided another limited waiver of default until October 15, 2022. *Id.* ¶ 17.

Citibank did not agree to provide any more waivers of default and, on October 17, 2022, it commenced this action. On September 15, 2023, the Court entered a judgment against Defendants in the amount of $38,578,670.43 (the "Judgment") (ECF No. 55).

---

[4] €14,638,970.14 is approximately equal to $14,835,000, the amount of cash listed on Lebois' personal financial statement, based on the applicable exchange rate at the time.

## E.     Lebois' Information Subpoena Response

Following entry of the Judgment, Citibank served an information subpoena and restraining notice on Lebois requesting that he identify his assets as well as his role and interest in various entities, including One57.  Plotnicki Decl., Ex. Z.  In his sworn response to the information subpoena, Lebois: (1) stated that he had no role or ownership interest in One57; (2) did not identify any of the $200,829,400 in "Private Investments" that he had listed in his June 30, 2022 personal financial statement; (3) did not include any jewelry, personal property, art, or boats, despite previously stating he had $83,620,000 of such assets as of June 30, 2022; and (4) did not include any of the $75,800,000 in "Personal Real Estate" that he had listed in his June 30, 2022 personal financial statement, except for property in Houston, Texas, which he now valued at $500,000.  *Id.*, Ex. AA.  In total, Lebois listed assets that he collectively valued at less than $30 million, and $17.8 million of those assets consist of shares in Unifin the actual value of which is unclear as it is currently in bankruptcy proceedings.  *Id.*, ¶¶ 46-47, Ex. AA.  Lebois also swore that he had not sold or transferred any property in which he had an interest during the period of August 11, 2022 to the present.  *Id.*, Ex. AA at 21.  In other words, Lebois now claims he has $600 million less in assets than he did just seventeen months ago without having sold or transferred anything.

Not only are the answers to the information subpoena contrary to the representations he made to Citibank prior to the commencement of this action, but they conflict with the representations he made just months ago to the Court and Citibank's counsel.  In their August 7, 2023 opposition to Citibank's motion for prejudgment attachment, Defendants relied on Lebois' June 30, 2022 personal financial statement to argue that attachment was not necessary because Defendants are not in a precarious financial position, stating, "Even the financial statement Citibank attaches to its Motion lists investments that are financially strong."  Defs.' Mem. in Opp.

to Mot. for Prejudgment Attachment (ECF No. 44) at 13-14.  Three weeks later, on August 28, 2023, in the course of settlement negotiations, Defendants' counsel stated that Lebois was offering "the New York apartment" as collateral for the credit facility, that Lebois "previously offered artwork and jewelry," and that he "is also willing to explore alternatives for selling and/or monetizing these assets to pay down the loan."  Plotnicki Decl., Ex. Y.

## ARGUMENT

### I. Citibank Is Entitled To A Writ of Execution And A Turnover Order With Respect To The Assets Of One57 And Aralpa Miami

Pursuant to Federal Rule of Civil Procedure 69, "A money judgment is enforced by a writ of execution, unless the court directs otherwise," and "[t]he procedure on execution—and in proceedings supplementary to and in aid of judgment or execution—must accord with the procedure of the state where the court is located, but a federal statute governs to the extent it applies."  In New York state, the procedures governing the enforcement of money judgments are set forth in CPLR Article 52.

Where, as here, a judgment creditor seeks to pierce the corporate veil to enforce a judgment against a third party, the proper procedure is to seek relief through a supplementary special proceeding pursuant to CPLR Article 52.  *See Trust v. Kummerfeld*, 153 Fed. Appx. 761, 762-63 (2d Cir. 2005) ("In New York, veil-piercing actions may be initiated as supplementary special proceedings under New York Civil Practice Law and Rules (CPLR) § 5225(b), rather than as plenary actions."); *O'Brien-Kreitzberg & Assocs. v. K.P., Inc.*, 218 A.D.2d 519, 520 (1st Dep't 1995) ("The relief sought by plaintiff [either to pierce the corporate veil or set aside a fraudulent conveyance] is more appropriately obtained in a supplementary special proceeding pursuant to CPLR article 52 . . . .").  Because federal courts do not have "special proceedings," such applications can be brought by motion in the underlying action if the court has personal jurisdiction

over the third parties.  *See CSX Transportation, Inc. v. Island Rail Terminal, Inc.*, 879 F.3d 462, 468-69 (2d Cir. 2018) ("[A] party seeking a money judgment against a non-party garnishee may proceed by motion and need not commence a special proceeding, as long as the court has personal jurisdiction over the garnishee.").[5]

CPLR 5225(b) authorizes a special proceeding by judgment creditors to recover from third parties "money or other personal property in which the judgment debtor has an interest."  Thus, Citibank seeks a turnover order pursuant to CPLR 5225(b) directing One57 and Aralpa Miami to turn over to Citibank the money in their identified bank and brokerage accounts.  Further, because CPLR 5225(b) does not explicitly apply to real property, *see HBS Leasing Corp. v. Frank*, 48 F.3d 623, 633 n.7 (2d Cir. 1995), Citibank also requests a writ of execution pursuant to CPLR 5230 to enforce the Judgment against the New York Property.

Piercing the corporate veil under New York law requires a showing that: "(1) the owner exercised such control that the corporation has become a mere instrumentality of the owner, which is the real actor; (2) such control has been used to a commit a fraud or other wrong; and (3) the fraud or wrong results in an unjust loss or injury to plaintiff."  *Freeman v. Complex Computing Co., Inc.*, 119 F.3d 1044, 1052 (2d Cir. 1997).

Although traditional veil piercing is used to hold individuals liable for the actions of corporations they control, New York courts recognize "reverse" veil piercing to hold corporations

---

[5] Jurisdiction exists over One57 because it is a New York limited liability company that owns real property in New York.  *See* CPLR 301, 302; *see also Stokes v. MilkChocolateNYC, LLC*, No. 22 Civ. 6786 (PAE) (RWL), 2023 WL 4447073, at *5 (S.D.N.Y. July 11, 2023).  Jurisdiction exists over Aralpa Miami because, among other reasons and as discussed below, it is Lebois' alter ego.  *See Miramax Film Corp. v. Abraham*, No. 01 CV 5202 (GBD), 2003 WL 22832384, at *6 (S.D.N.Y. Nov. 25, 2023) ("Where personal jurisdiction over an individual or corporation is proper, such jurisdiction may be extended in order to obtain jurisdiction over a foreign corporation, having no contacts with New York, if the latter is deemed the alter ego of the former."); *see also D. Klein & Son, Inc. v. Good Decision, Inc.*, 147 Fed. Appx. 195, 196-97 (2d Cir. 2005).

liable for the actions of individuals. *See JSC Foreign Economic Ass'n Technostroyexport v. International Development and Trade Services, Inc.*, 306 F. Supp. 2d 482, 485 (S.D.N.Y. 2004) (same elements for traditional veil piercing claims apply to reverse veil piercing claims).

Further, New York courts also recognize the doctrine of equitable ownership and will pierce the veil of an entity for the actions of someone who does not have a legal interest in the entity where that individual exercises such control over the entity that he or she may be deemed an "equitable owner." *See Freeman*, 119 F.3d at 1051.

Thus, regardless of whether Lebois directly owned One57 and Aralpa Miami, Citibank is entitled to pierce their veils and enforce the Judgment against their assets because Lebois completely dominated both entities and used that domination to repeatedly defraud Citibank about the true extent of his assets.

## A.     <u>Lebois Dominated and Controlled One57 and Aralpa Miami</u>

In considering whether complete control exists under the veil piercing test, courts consider a variety of factors, including: "(1) disregard of corporate formalities; (2) inadequate capitalization; (3) intermingling of funds; (4) overlap in ownership, officers, directors, and personnel; (5) common office space, address and telephone numbers of corporate entities; (6) the degree of discretion shown by the allegedly dominated corporation; (7) whether the dealings between the entities are at arms length; (8) whether the corporations are treated as independent profit centers; (9) payment or guarantee of the corporation's debts by the dominating entity, and (10) intermingling of property between the entities." *Freeman*, 119 F.3d at 1053.

"There is no set rule regarding how many factors must weigh in favor of piercing the corporate veil for control to be found." *CBF Industria de Gusa S/A. v. AMCI Holdings, Inc.*, 316 F. Supp. 3d 635, 646-47 (S.D.N.Y. 2018); *see also 138-77 Queens Blvd. LLC v. Silver*, No. 22-cv-

5155 (KAM) (MMH), 2023 WL 4564796, at *5 (E.D.N.Y. July 17, 2023) (noting that the ten factors "often concern the relationship of a parent to its subsidiary" and therefore are "neither exhaustive nor universally relevant"). Determining whether the alleged dominator exercised complete control "is highly case-specific and must be made in view of the totality of the facts." *138-77 Queens Blvd.*, 2023 WL 4564796, at *5. Further, "the general principle followed by the courts has been that liability is imposed when doing so would achieve an equitable result." *CBF Industria de Gusa S/A*, 316 F. Supp. 3d at 647.

Here, the *Freeman* factors militate in favor of piercing the corporate veil. Lebois was a manager of both entities, he had full authority to make decisions on its behalf, and there is no evidence that One57 or Aralpa Miami had any discretion independent of Lebois. Plotnicki Decl., Exs. A (One57 Operating Agreement), B (One57 Organization Resolution/Agreement), I (Aralpa Miami Operating Agreement), J (Aralpa Miami Organization Resolution/Agreement). To the contrary, the evidence demonstrates that the other manager of these entities, Lebois' daughter Almudena, was fully complicit with Lebois' control over these and other entities, and his use of them to inflate his assets to Citibank. Meza Decl., ¶¶ 16, 20-23, Ex. K. *See, e.g.*, *In re Maghazeh*, 310 B.R. 5, 18-19 (E.D.N.Y. 2004) (noting that "evidence of dominance and control could be found where the child of the defendant, who was the nominal owner of the [entity], engaged in transactions at the behest of the defendant, and appeared to be subject to the defendant's 'insidious domination'" and finding that debtor was true owner of entity at issue "because every step taken by [the entity] was taken by him directly or taken by his son at his request.") (citing *LiButti v. U.S.*, 107 F.3d 110, 119-20 (2d Cir. 1997)).

One57 and Aralpa had no real office or operations and used Lebois' personal address as their address. Plotnicki Decl., ¶¶ 7, 10, 17.

One57 and Aralpa Miami were undercapitalized as they had no sources of income to pay their ongoing liabilities, and they relied on Lebois to pay those liabilities—namely, the multi-million dollar mortgages that the entities obtained from Citibank to purchase their primary asset. Plotnicki Decl., ¶¶ 13, 25; Exs. H (One57 Wires), N (Aralpa Miami wires); *see 138-77 Queens Blvd. LLC*, 2023 WL 4564796, at *5-6 (plaintiff pled complete control over entity where defendant made $165,000 in wire transfers over thirteen months to cover entity's operating deficits, was intimately involved with entity, and defendant's son, the nominal principal and sole member of entity, sought direction from and deferred to defendant on business matters). Lebois also guaranteed those mortgages. Plotnicki Decl., ¶¶ 9, 20.

Lebois' complete domination of these entities is also demonstrated by his repeated representations that the properties owned by One57 and Aralpa Miami are his assets. In at least five personal financial statements he submitted to Citibank, Lebois represented that he is, in fact, the owner of the New York Property and the Miami Property. Plotnicki Decl., ¶¶ 36-41; Exs. T-X (Personal Financial Statements). There is nothing equivocal about these representations. The terms of the Note and Guaranty plainly required Lebois to maintain a net worth of at least $400 million and to provide his personal financial statements to Citibank. The only conclusion that can be drawn by Lebois' submission of the personal financial statements is that he claimed to be the owner of the assets listed on it, including the New York Property and the Miami Property.

In addition to the personal financial statements, Lebois and his representatives had multiple discussions with Citibank during the summer of 2022, after Aralpa Holdings had defaulted on the Note, in which they continued to represent Lebois as the owner of the assets listed in his financial statements. Meza Decl., ¶¶ 6-26. At no point during these discussions did Lebois or any of his representatives, including his daughter Almudena, clarify that Lebois did not ultimately own the

New York Property, the Miami Property, or any of the other assets listed on his personal financial statements. *Id.* ¶ 26. Rather, Lebois and his daughter repeatedly represented that Lebois is the owner of the assets listed in his personal financial statements to induce Citi not to foreclose on the credit facility.

Finally, Lebois represented that he controlled One57 and the New York Property just months ago when, in an email sent by his counsel on August 28, 2023, he offered to provide the New York apartment as additional collateral for the credit facility. (Plotnicki Decl., Ex. Y.)[6]

Lebois' representations of ownership alone warrant a finding that he completely controls One57 and Aralpa Miami. *See In re Charnock*, 97 B.R. 619, 627-29 (Bankr. M.D. Fla. 1989), *cited in Freeman*, 119 F.3d at 1051 (piercing corporate veil of two entities ultimately owned by debtor's wife where debtor "repeatedly and consistently held out to the public at large that the assets are in fact owned by him and he is in the sole control of these two entities."); *Fed Nat. Mortg. Ass'n v. Olympia Mortg. Corp.*, 724 F. Supp. 2d 308 (E.D.N.Y. 2010) (defendant's use of entity's name and address in connection with some of his personal real estate transactions, his failure to distinguish between his personal business and those of entity, and his use of entity for his own business purposes when it was convenient supported piercing corporate veil); *In re Boize*,

---

[6] This statement is admissible because it is being offered in connection with Citibank's veil piercing claim against One57 and Aralpa Miami to show Lebois' control over One57 and other assets, not to prove the validity or amount of the underlying claim against Defendants in which the statement was made or for impeachment. *See* Fed. R. Evid. 408(a); *Williams v. Regus Mgmt. Grp., LLC*, No. 10 Civ. 8987 (JMF), 2012 WL 1890384, at *3 (S.D.N.Y. May 15, 2012) ("[I]t is well established that Rule 408 only bars the use of compromise evidence to prove the validity or invalidity of the claim that was the subject of the compromise, not some other claim."); *Lakah v. UBS AG*, No. 07-CV-2799 (LAP), 2017 WL 7245365, at *9 (S.D.N.Y. Feb. 14, 2017) (settlement protocol admissible under Rule 408 where it was offered to "bolster [respondents'] veil piercing argument, not to prove the validity or amount of" the disputed claim at issue); *see also U.S. v. J.R. LaPointe & Sons, Inc.*, 950 F. Supp. 21, 23 (D. Me. 1996) ("compromise evidence can be admitted to prove . . . agency, ownership or control . . . .").

Bankr. No. 09-30075, 2009 WL 2232802, at *4 (Bankr. E.D. Tenn. July 23, 2009) (piercing corporate veil of two entities where, among other things, debtor interchangeably used his name individually on applications and other documents as owner of assets titled to those entities).

In sum, the evidence shows that Lebois established One57 and Aralpa Miami, as well as the other entities in his network, to hold his assets. He controlled the entities, he supported them financially, and, regardless of how the entities may be legally titled, he viewed them as his assets, he used them as if they were his assets, and he represented to Citibank that they were his assets. These facts establish that Lebois completely controlled One57 and Aralpa Miami for purposes of piercing their corporate veils.

**B.      Lebois Used His Control of One57 and Aralpa Miami to Defraud Citibank and Cause It Injury**

The second part of the veil piercing test requires Citibank to demonstrate that Lebois used his control to commit a fraud or wrong that caused Citibank injury. *See Freeman*, 119 F.3d at 1052. Actual fraud is not required. *See DER Travel Services, Inc. v. Dream Tours & Adventures, Inc.*, No. 99 Civ. 2231 (HBP), 2005 WL 2848939, at *9 (S.D.N.Y. Oct. 28, 2005). Rather, a violation of a positive legal duty or a dishonest or unjust act in contravention of the plaintiff's legal rights is also sufficient. *D. Klein & Son*, 147 Fed. Appx. at 198. This prong of the veil piercing test is plainly satisfied here.

*First*, Lebois used his control of One57 and Aralpa Miami, and other entities he created, to commit a fraud or wrong against Citibank when he represented to Citibank that the assets of these entities were his. To the extent that Lebois is now claiming that the New York Property, the Miami Property, and most of the other assets on his personal financial statements are not actually his, which is the only conclusion that can be reached from his information subpoena response, he not only violated the legal duties he had under the Guaranty to maintain a minimum net worth of at

least $400 million and to provide Citibank with his *personal* financial statement, but he engaged in fraud by falsely representing his assets so that Citibank would provide the credit facility and keep it outstanding. This conduct, which is sufficient to constitute common law fraud, plainly meets the lower burden of "fraud or wrong" under the veil-piercing test. *See e.g.*, *AMEV Capital Corp. v. Kirk*, 180 A.D.2d 775, 776 (2d Dep't 1992) (plaintiff adequately pled common law fraud where defendant's net worth statement misrepresented his ownership of property and lender was induced to make loan by relying on misrepresentation); *Anhul Konka Green Lighting Co. v. Green Logic LED Electrical Supply, Inc.*, No. 18-cv-12255 (MKV) (KHP), 2021 WL 621205, at *4 (S.D.N.Y. Feb. 17, 2021) (making misrepresentations to induce plaintiff to perform under agreement sufficient to establish fraud or wrong under veil piercing test); *Ng v. Adler*, 518 B.R. 228, 237-38 (E.D.N.Y. 2014) (same).

*Second*, Citibank has been injured by Lebois' conduct. Lebois' guaranty, the obligation that he maintain a minimum net worth of $400 million, and the obligation that he provide periodic personal financial statements listing his assets were conditions that Citibank relied on when agreeing to further extend the credit facility past the initial June 16, 2018 maturity date and then issue multiple waivers of default. Plotnicki Decl., ¶ 31. Because of Lebois' conduct, Citibank has suffered a loss of more than $35 million on account of the unpaid amount it loaned to Aralpa Holdings, the costs it has incurred on the loan, and the unpaid interest.

Citibank loaned money to Aralpa Holdings because it believed, based on Lebois' representations, that it would be able to collect the money from him if Aralpa Holdings failed to pay. *Id.*, ¶ 42. Equity requires that Citibank be able to recover its losses by reaching the assets that Lebois represented as his to induce Citibank to provide the loan and keep it outstanding. *See*

*JSC Foreign Economic Ass'n Technostroyexport*, 306 F. Supp. 2d at 485 ("New York courts will pierce the corporate veil wherever necessary to prevent fraud or achieve equity.")

Accordingly, the Court should pierce the corporate veils of One57 and Aralpa Holdings, issue a writ of execution pursuant CPLR 5230 with respect to the New York Property, and issue an order pursuant to CPLR 5225(b) directing One57 to pay to Citibank the assets in its Citibank account numbered xxxxxxxx3775 and directing Aralpa Miami to pay to Citibank the assets in its UBS brokerage accounts numbered xxxx767 and xxxx768 and its Citibank account numbered xxxxxxxx3328.[7]

## II.     The Court Should Order Prejudgment Attachment And Issue A Temporary Restraining Order Against The Assets of One57 And Aralpa Miami

Federal Rule of Civil Procedure 64 "authorizes the attachment of assets to secure the satisfaction of the potential judgment in accord with the available prejudgment remedies of the state in which the district court sits." *Bollenbach v. Haynes*, No. 18-cv-997, 2018 WL 4278347, at *1 (S.D.N.Y. May 29, 2018).

Under New York law, a party may obtain a prejudgment order of attachment by showing that: (1) there is a cause of action; (2) it is probable that the plaintiff will succeed on the merits; (3) one or more grounds for attachment enumerated in Section 6201 exist; and (4) the amount demanded from the defendant exceeds all counterclaims known to the plaintiff. CPLR 6212; *Capital Ventures Int'l v. Republic of Argentina*, 443 F.3d 214, 219 (2d Cir. 2006). Section 6201(3) authorizes attachment where a "defendant with intent to . . . frustrate the enforcement of a judgment that might be rendered in plaintiff's favor, has assigned, disposed of, encumbered or secreted property, or removed it from the state or is about to do any of these acts." CPLR 6201(3).

---

[7] Parties can be directed to turnover assets in their bank accounts regardless of their location. *See Gryphon Domestic VI, LLC v. APP Int'l Fin. Co., B.V.*, 41 A.D.3d 25, 36 (1st Dep't 2007).

Where "a statutory ground for attachment exists and both need and likelihood of success are established, [a district court's] discretion does not permit denial of the remedy for some other reason, at least absent extraordinary circumstances and perhaps even then." *Capital Ventures Int'l*, 443 F.3d at 222. Citibank has satisfied the requirements for prejudgment attachment against One57's and Aralpa Miami's assets, and for a temporary restraining order in aid of attachment preventing One57 and Aralpa Miami from transferring their assets pending this motion.

### A. Citibank Is Entitled to an Order of Attachment

Citibank has established each of the requirements of CPLR 6212.

*First*, Citibank has stated a claim for relief against One57 and Aralpa Miami based on reverse-veil piercing. *See JSC Foreign Economic Ass'n Technostroyexport*, 306 F. Supp. 2d at 485 (granting motion for attachment based on reserve-veil piercing claim).

*Second*, Citibank has demonstrated that it is likely to succeed on its claims against One57 and Aralpa Miami for the reasons set forth in Section I above.

*Third*, One57 and Aralpa Miami have not asserted any counterclaims against Citibank, and Citibank is not aware of any that could be asserted.

*Finally*, a statutory ground for attachment exists because it is likely that One57 and Aralpa Miami will immediately distribute their assets to frustrate the enforcement of any judgment that may be obtained against them. As set forth above, Lebois, who controls both One57 and Aralpa Miami, has refused to pay the Judgment and is now disclaiming ownership of these and other assets so that he can avoid having to do so. Among the over $630 million in assets he told Citibank he owned just seventeen months ago, Lebois now claims to own assets he values at less than $30 million, including none of the $200,829,400 in private investments and none of the $83,620,000 in jewelry, art, and personal property that he reported on his June 2022 personal financial

statement.  Further, since the final waiver of default on the Note, he has been directing the sale of assets he previously claimed to own, including the Miami Property, and transferred the proceeds of those assets to accounts other than those held at Citibank.  Plotnicki Decl., ¶¶ 49-52.

These facts are sufficient to establish that One57 and Aralpa Miami, which are part of a network of mostly foreign entities controlled by Lebois, a Mexican citizen, are likely to dispose of or secret their assets to frustrate the enforcement of the Judgment against them.  *See Onewoo Corp. v. Hampshire Brands, Inc.*, No. 16-cv-4623, 2016 WL 11779677, at *6 (S.D.N.Y. Nov. 15, 2016) (ordering attachment where, absent attachment, any judgment obtained by the plaintiff "will be difficult, if not impossible, to enforce"); *General Textile Printing & Processing Corp. v. Expromtorg Int'l Corp.*, 862 F. Supp. 1070, 1073 (S.D.N.Y. 1994) (attachment for security purposes is "appropriate when plaintiff will have difficulty enforcing a judgment").

Accordingly, Citibank is entitled to prejudgment attachment as to One57 and Aralpa Miami's assets.

**B.  Citibank Is Entitled to a Temporary Restraining Order Preventing One57 and Aralpa Miami From Transferring Their Assets**

The Court should grant a temporary restraining order prohibiting One57 and Aralpa Miami from transferring, selling, encumbering, secreting, or otherwise disposing of their assets pending this motion, except to pay legitimate expenses.  CPLR 6210 expressly authorizes the issuance of a temporary restraining order in aid of prejudgment attachment prohibiting the transfer of assets by a defendant or garnishee.  *See* CPLR 6210; *see also Provisional Protective Comm. v. Williams*, 121 A.D.2d 271, 273 (1st Dep't 1986) (holding that CPLR 6210 authorizes ex parte temporary restraining orders aimed at defendants as well as garnishees).  Citibank has made the requisite showing entitling it to a temporary restraining order in aid of attachment:  it is likely to succeed on the merits of its claims and it would be substantially prejudiced and injured if One57 and Aralpa

Miami are permitted to transfer their assets out of Citibank's reach while the Court is adjudicating this motion. Thus, the Court should issue the requested temporary restraining order to preserve the status quo pending the determination of this motion. *See, e.g.*, *Prof'l Merch. Advance Capital, LLC v. C Care Services, LLC*, No. 13 Civ. 6562 (RJS), 2013 WL 12109397, at *5 (S.D.N.Y. Oct. 2, 2013) ("A temporary restraining order is designed to preserve the status quo."); *Hawkins v. Zoegall*, No. 23-CV-4040 (KAM) (JWM), 2023 WL 4106645 (E.D.N.Y. June 20, 2023) (granting TRO in aid of attachment preventing defendants from disposing of assets and then attachment where defendants were allegedly transferring assets to avoid paying judgment).[8]

### C. Citibank Should Be Required to Post a Minimal Undertaking

CPLR 6212(b) requires a plaintiff seeking an order of attachment "to provide an 'undertaking' as security for (1) costs and damages incurred by the defendant in the event that the court subsequently determines that the plaintiff was not entitled to an attachment or if defendant ultimately recovers judgment; and (2) certain fees incurred by the sheriff." *Herzi v. Ateliers De La Haute-Daronne*, No. 15-CV-7702 (RJS), 2015 WL 8479676, at *3 (S.D.N.Y. Oct. 13, 2015) (citing CPLR 6212(b), 8011). Under New York law, "[t]he amount of the undertaking must be at least $500 but otherwise is within the discretion of the court." *BSH Hausgeräte, GmbH v. Kamhi*, 282 F. Supp. 3d 668, 672 n.2 (S.D.N.Y. 2017) (citing CPLR § 6212(b)). Courts will "frequently set the undertaking as a fraction of a percent of the value of the attachment." *Yong Xiong He v. China New Star Rest., Inc.*, No. 19-CV-5907(PKC)(CLP), 2020 WL 6202423, at *16 (E.D.N.Y. Oct. 22, 2020) (setting undertaking for plaintiff at statutory minimum of $500). Undertakings should be "rationally related to the potential damages in the event the attachment is found to have

---

[8] In the alternative to granting a temporary restraining order in aid of attachment, Citibank requests that the Court grant the order of attachment *ex parte* pursuant to CPLR 6211.

been unwarranted." *JSC VTB Bank, etc. v. Mavlyanov*, 154 A.D.3d 560, 563 (1st Dep't 2017) (citing *Med. Bldgs. Assocs., Inc. v. Abner Props. Co.*, 103 A.D.3d 488, 488 (1st Dep't 2013)).

Here, the statutory minimum of $500 is the appropriate amount of the undertaking because Citibank is highly likely to succeed on its claims, and One57 and Aralpa Miami will incur no damages from the requested temporary restraining order or attachment.

## III. Lebois Should Be Compelled To Provide Information Concerning The Assets He Identified In His Personal Financial Statements

The Court should compel Lebois to fully comply with the information subpoena pursuant to CPLR 5224(a)(3)(iv) and 2308(b) because he failed to provide any information concerning most of the assets identified in his June 30, 2022 personal financial statement. The information subpoena served on Lebois requested that he, among other things, identify "all assets in which [Lebois] or [Aralpa Holdings] have *any* interest." Plotnicki Decl., Ex. Z (emphasis added). In response, Lebois omitted many assets that he listed on his June 2022 financial statement, including:

Private Investments
- Caye Chapel (*Four Seasons Hotel In Belize)*: $39,545,000
- LBB Capital SA de CV (*Holding Company of Private Equity Investments*): $41,931,000
- Marques de Salamanca (39.29% stake in building for development in Madrid, Spain): $26,855,900
- Hyatt Project CDMX/Los Cabos: $21,650,000
- Real Estate Fund in Spain: $25,974,000
- Private Equity Investments in Mexico: $44,873,500

Personal Real Estate
- Real Estate MX: $44,300,000
- Madrid Spain (*includes home in Cadiz*): $17,250,000
- NY, NY: $9,120,000
- Miami, FL (*Fisher Island*): $4,250,000

Personal Property, Art & Jewelry
- Jewelry: $28,950,000
- Art: $32,100,000
- Boats: $18,850,000
- Others: $3,720,000

*Id.*, Ex. X.

As discussed above, based on his representations and control over these assets, Lebois is, at a minimum, an "equitable owner" of these assets. *See Freeman*, 119 F.3d at 1051. As such, Lebois has an "interest" in the assets represented in the June 2022 personal financial statement. *See* Black's Law Dictionary (11th ed. 2019) (defining interest as "a legal share in something; all or part of a legal or *equitable* claim to or right on property") (emphasis added); *see also U.S. v. Katholos*, No. 17-CV-531 (JLS) (HKS), 2022 WL 3328223, at *6 (W.D.N.Y. Aug. 10, 2022) (beneficial or equitable owner of bank account has interest in account even if she did not have legal title). He should, therefore, be compelled to respond to the information subpoena in a manner that reflects his interests in those assets by identifying the location, value, and title information of each such asset, or, if he claims that any such asset has been transferred, the date of the transfer, the transferee, and the sales price or consideration for each such transferred asset. *See* Plotnicki Decl., Ex. Z, Request Nos. 7, 11, 12 (Information Subpoena). With respect to the personal property, art, & jewelry, Lebois should separately enumerate and provide the requested information for each piece of property, artwork, and jewelry, as he did in August 2022 when attempting to prevent Citibank from foreclosing on the credit facility. *See* Meza Decl., Ex. K (Email with spreadsheet of artwork).[9]

## **CONCLUSION**

For the reasons set forth above and based upon the declarations and exhibits submitted in support of this motion, Citibank respectfully requests that the Court grant its motion in its entirety.

Dated: December 11, 2023
New York, New York

---

[9] As noted above, in August 2023, Lebois offered artwork and jewelry as collateral and/or to pay down the credit facility. Plotnicki Decl., Ex. Y.

KAUFF LATON MILLER LLP


By: /s/ Adam M. Kauff
    Adam M. Kauff
    Jonathan Perrelle
950 Third Avenue, 15th Floor
New York, NY 10022
Telephone: (212) 906-3441
Fax: (212) 656-1456
akauff@klmllp.com
jperrelle@klmllp.com


GOODWIN PROCTER LLP
Samuel J. Rubin
Lindsay E. Hoyle
Kathryn M. Baldwin
The New York Times Building
620 Eighth Avenue
New York, New York 10018
Tel. (212) 813-8800
Fax (212) 355-3333
srubin@goodwinlaw.com
lhoyle@goodwinlaw.com
kbaldwin@goodwinlaw.com

*Attorneys for Plaintiff Citibank, N.A.*