# EXHIBIT I

"TRUE COPY OF THE ORIGINAL"

Name of Director: Rodrigo Lebois

Phone #: (917) 257 5775

Signature: [signature]

Date: 04/23/18

# OPERATING AGREEMENT
# OF
# ARALPA MIAMI INVESTMENTS, LLC

THESE SECURITIES HAVE NOT BEEN REGISTERED WITH THE UNITED STATES SECURITIES AND EXCHANGE COMMISSION IN RELIANCE UPON AN EXEMPTION FROM SUCH REGISTRATION SET FORTH IN THE SECURITIES ACT OF 1933 ("1933 ACT") PROVIDED BY SECTION 4(2) THEREOF, NOR HAVE THEY BEEN REGISTERED WITH THE SECURITIES COMMISSION OF CERTAIN STATES IN RELIANCE UPON CERTAIN EXEMPTIONS FROM REGISTRATION. THESE SECURITIES HAVE BEEN ACQUIRED FOR INVESTMENT PURPOSES ONLY AND MAY NOT BE OFFERED FOR SALE, PLEDGED, HYPOTHECATED, SOLD OR TRANSFERRED EXCEPT IN COMPLIANCE WITH THE TERMS AND CONDITIONS OF THIS AGREEMENT AND IN A TRANSACTION WHICH IS EITHER EXEMPT FROM REGISTRATION UNDER SUCH ACTS OR PURSUANT TO AN EFFECTIVE REGISTRATION STATEMENT UNDER SUCH ACTS.

## STATEMENT OF AGREEMENT

The parties hereto, for their mutual convenience, benefit and protection and in consideration of the mutual covenants and benefits herein contained, do hereby enter into this Operating Agreement effective as of January 24, 2018.

## ARTICLE 1

## DEFINITIONS

The following terms used in this Operating Agreement shall have the following meanings (unless otherwise expressly provided herein);

"Agreement." This Operating Agreement as originally executed and as amended from time to time.

"Certificate of Organization" The organizational documents for the Company filed with the Georgia Secretary of State

"Code." The Internal Revenue Code of 1986, as amended from time to time.

"Company" ARALPA MIAMI INVESTMENTS, LLC

"Georgia Act" Shall mean the Limited Liability Companies Act of the State of Georgia.

"Manager." One or more managers designated pursuant to this Agreement. Specifically, Manager shall mean, or any other person(s) that succeed such person in his capacity as Manager. At any time there is more than one Manager of the Company, all references to the Manager in the singular shall be deemed to refer to all Managers. The initial managers are **Rodrigo Lebois (officer) and Almudena Lebois Ocejo (secretary).**

"Member." Each of the Persons who executes a counterpart of this Agreement as a Member and each of the Persons who may hereafter become Members. To the extent a Manager has purchased a Membership Interest in the Company, he will have all the rights of a Member with respect to such Membership Interest, and the term "Member" as used herein shall include a Manager to the extent he has purchased such Membership Interest in the Company. If a Person is a Member immediately prior to the purchase or other acquisition by such Person of a Membership Interest, such Person shall have all the rights of a Member with respect to such purchased or otherwise acquired Membership Interest.

"Membership Interest." A Member's entire interest in the Company including such Member's economic interest and the right to participate in the management of the business and affairs of the Company, including the right to vote on, consent to, or otherwise participate in any decision or action of or by the Members granted pursuant to this Agreement or the Georgia Act.

"Ownership Interest." The respective percentage interests in the Company of the Members as the same may be adjusted from time to time pursuant to this Agreement, or by the unanimous agreement of the Members. The initial Ownership Interests of the Members are as follows:

| Member | Ownership Interest |
|---|---|
| Aralpa Capital, S.A. de C.V., a Mexico company | 100% |
| TOTAL | 100% |

"Person." Any Individual or Entity, and the heirs, executors, administrators, legal representatives, successors, and assigns of such "Person" where the context so permits.

"Reserves." With respect to any fiscal period, funds set aside or amounts allocated during such period to reserves which shall be maintained in amounts deemed sufficient by the Manager for working capital and to pay taxes, insurance, debt service or other costs or expenses incident to the ownership or operation of the Company's business.

"Treasury Regulations" or "Regulations." The Federal Income Tax Regulations promulgated under the Code, as such regulations may be amended from time to time (including corresponding provisions of succeeding regulations).

## ARTICLE 2

## FORMATION OF COMPANY

2.1     Formation. On, January 24, 2018 the Company was formed as a Georgia Limited Liability Company. Marc Schwartz acted as Organizer by executing and delivering a Certificate of Organization to the Secretary of State of Georgia in accordance with the provisions of the Georgia Act. The member acknowledges that Marc Schwartz, apart from serving as registered agent of the Company, has no further interest in the LLC and ratifies all actions of Marc Schwartz including filing of the Certificate of Organization, obtaining an EIN and filing any tax election.

2.2     Name. The name of the Company is Aralpa Miami Investments, LLC

2.3     Principal Place of Business. The principal place of business of the Company is 5909 Peachtree Dunwoody Road, Suite 800 Atlanta, GA 30328. The Company may locate its place of business at any other place or places as the Manager may from time to time deem advisable.

2.4     Registered Office and Registered Agent. The Company's initial registered office is 5909 Peachtree Dunwoody Road, Suite 800 Atlanta, GA 30328. The Company's initial registered agent is Marc Schwartz.

2.5     Term. The term of the Company commenced on the date the Certificate of Organization was filed with the Secretary of State of Georgia and shall continue thereafter until liquidated in accordance with the provisions of this Operating Agreement or the Georgia Act.

ARTICLE 3

BUSINESS OF COMPANY

    3.1    Permitted Businesses.  The business of the Company shall be:

        (a)    Any lawful business permitted to limited liability companies under the Georgia Act;

        (b)    To exercise all powers necessary to or reasonably connected with the Company's business which may be legally exercised by limited liability companies under the Georgia Act; and

        (c)    To engage in all activities necessary, customary, convenient or incident to any of the foregoing.

ARTICLE 4

NAMES AND ADDRESSES OF MEMBERS

The names and addresses of the Members are as follows:

| Name | Address |
|---|---|
| Aralpa Capital, S.A. de C.V. | Masaryk, Chapultepec Morales, Mexico D.F.11570 |

ARTICLE 5

RIGHTS AND DUTIES OF MANAGER

    5.1    Management. The business and affairs of the Company shall be managed by its Manager. A non- member Manager may be appointed by the Members. Except for situations in which the approval of the Members is expressly required by this Agreement or by non-waivable provisions of applicable law, the Manager shall have full and complete authority, power and discretion to manage and control the business, affairs and properties of the Company, to make all decisions regarding those matters and to perform any and all other acts or activities customary or incident to the management of the Company's business. Notwithstanding any provision of the Georgia Act, subject to the provisions of Article 5 hereof, at any time when there is more than one Manager, each Manager shall have one vote with respect to, and the affirmative vote, approval, or consent of a majority of the Managers shall be required to decide, any matter arising in connection with the business and affairs of the Company.  Any one Manager may take any action permitted to be taken by the Managers and authorized by a majority of the Managers.

    5.2    Liability for Certain Acts. No Manager has guaranteed nor shall any Manager have any obligation with respect to the return of a Member's capital contributions or profits from the operation of the Company. Notwithstanding any contrary rule of law or equity, no Manager shall be liable to the Company or to any Member for any loss or damage sustained by the Company or any Member except loss or damage resulting from Manager's act or omission that constitutes a bad faith violation of the implied contractual covenant of good faith and fair dealing or breach of the provisions of this Agreement.  Each Manager shall be entitled to rely on information, opinions, reports or statements, including but not limited to financial statements or other financial data prepared or presented in accordance with the provisions of the Georgia Act.

    5.3    Manager Has No Exclusive Duty to Company.  No Manager shall be required to manage the Company as his sole and exclusive function and he (or any Manager) may have other business interests and

may engage in other activities in addition to those relating to the Company. Neither the Company nor any Member shall have any right, by virtue of this Agreement, to share or participate in such other investments or activities of a Manager or to the income or proceeds derived there from.  No Manager shall incur any liability to the Company or to any of the Members as a result of engaging in any other business or venture.

        5.4        <u>Bank Accounts</u>. The Manager may from time to time open bank accounts in the name of the Company, and the Manager shall be the sole signatory thereon, unless the Manager determines otherwise.  All funds of the Company shall be deposited in its name in an account or accounts as shall be designated from time to time by the Manager. All funds of the Company shall be used solely for the business of the Company. All withdrawals from the Company bank accounts shall be made only upon check signed by the Manager or by such other persons as the Manager may designate from time to time.

        5.5        <u>Indemnity of the Manager, Officers, Employees and Other Agents</u>. To the fullest extent permitted under the Georgia Act, the Company shall indemnify the Manager and Officers and make advances for expenses to them with respect to their duties (including fiduciary duties) and liabilities arising out of or connected with their capacities as Manager or Officers. The Company shall indemnify its employees and other agents who are not Managers (if any) to the fullest extent permitted by law with respect to their duties and liabilities arising out of or connected with their capacities as employees of the Company.

        5.6        <u>Term</u>. The Manager shall serve at the discretion of the Members. Unless otherwise provided by the affirmative vote of Members holding at least a Majority Interest, a Manager's term (subject to removal at the discretion of the Members in accordance with Section 5.08) shall be for the remaining term of the Company or until such Manager's death, incapacity or resignation.

        5.7        <u>Resignation</u>. Any Manager of the Company may resign at any time by giving written notice to the Members of the Company. The resignation of any Manager shall take effect upon receipt of notice thereof or at such later time as shall be specified in such notice; and, unless otherwise specified therein, the acceptance of such resignation shall not be necessary to make it effective. The resignation of a Manager who also is a Member shall not affect the Manager's rights as a Member and shall not constitute a withdrawal of a Member.

        5.8        <u>Removal</u>. All or any lesser number of Managers may be removed at any time, with cause, by the affirmative vote of the Members holding at least a Majority Interest.  The removal of a Manager who also is a Member shall not affect the Manager's rights as a Member and shall not constitute a withdrawal of a Member.

        5.9        <u>Vacancies</u>. Any vacancy occurring for any reason in the number of Managers of the Company may be filled by the affirmative vote of the Members holding at least a Majority Interest. A Manager elected to fill a vacancy shall hold office until the expiration of his term and until his successor shall be elected and shall qualify or until his earlier death, incapacity, resignation or removal. If for any reason at any time there is not at least one Manager, then each of the Members shall automatically become a Manager until such time as the Members, by affirmative vote of the Members holding at least a Majority Interest, have designated one or more Managers.

        5.10       <u>Salaries</u>. The salaries and other compensation (if any) of the Managers shall be fixed from time to time by an affirmative vote of Members holding at least a Majority Interest, and no Manager shall be prevented from receiving such salary by reason of the fact that he also is a Member of the Company.  The Manager shall be entitled to be reimbursed for reasonable out-of-pocket costs and expenses incurred in the course of his service hereunder.

ARTICLE 6

<u>RIGHTS AND OBLIGATIONS OF MEMBERS</u>

        6.1        <u>General Liability of Members</u>.

        (a)        Subject to Section 6.01(b), no Member will have any personal liability whatsoever in its capacity as a Member, whether to the Company, to any of the Members, or to the creditors of the Company, for the debts, liabilities, contracts, or any other obligations of the Company, or for any losses of the Company.

(b) In accordance with the law of the State of Georgia, a Member may, under certain circumstances, be required to return to the Company, for the benefit of Company creditors, amounts, previously distributed to that Member. Notwithstanding the provisions of this Agreement, if any court of competent jurisdiction holds that any Member is obligated to make any such payment, that obligation will be the obligation of that Member and not of the Manager.

(c) The Manager will not have any personal liability to any Member for the repayment of any amounts outstanding in the capital account of a Member, including, but not limited to, capital contributions.

(i) Any such payment will be solely from the assets of the Company.

(ii) The Manager will not be liable to any Member by reason of any change in the federal income tax laws as they apply to the Company and the Members, whether such change occurs through legislative, judicial, or administrative action, so long as the Manager has acted in good faith and in a manner reasonably believed to be in the best interests of the Members.

6.2 Liability for Certain Acts. No Member has guaranteed nor shall any Member have any obligation with respect to the return of a Member's capital contributions or profits from the operation of the Company. Notwithstanding any contrary rule of law or equity, no Member shall be liable to the Company or to any Member for any loss or damage sustained by the Company or any Member. Each Member shall be entitled to rely on information, opinions, reports or statements, including but not limited to financial statements or other financial data prepared or presented in accordance with the provisions of the Georgia Act

6.3 Indemnity of Members. To the fullest extent permitted under the New Georgia Act, the Company shall indemnify the Members and make advances for expenses to them with respect to their duties (including fiduciary duties) and liabilities arising out of or connected with their respective capacities as Members.

6.4 List of Members. Upon written request of any Member, the Manager shall provide a list showing the names, addresses and Membership Interest of all Members and Managers and the other information required by the Georgia Act and maintained pursuant to Section 11.02.

6.5 Priority and Return of Capital. Except as may be expressly provided herein, no Member shall have priority over any other Member, either as to the return of capital contributions or as to net profits, net losses or distributions. This Section shall not apply to loans (as distinguished from capital contributions), which a Member has made to the Company.

6.6 Members Have No Exclusive Duty to Company. The Members may have other business interests and may engage in other activities in addition to those relating to the Company. Neither the Company nor any Member shall have any right, by virtue of this Agreement, to share or participate in such other investments or activities of the Member or to the income or proceeds derived therefrom. The Member shall incur no liability to the Company or to any

or the Members as a result of engaging in any other business or venture.

ARTICLE 7

MEETINGS OF MEMBERS

7.1 No Annual or Other Meetings Required. No annual or other meetings of the Members shall be required, but the Members may meet from time to time as they desire in accordance with such procedures (if any) as the Manager may from time to time prescribe. Meetings of the Members for any purpose or purposes, may be called by any Manager or by any Member.

7.2 No Requirements of Minutes. Although the Company may maintain books of minutes or other records of proceedings of the Company, neither the Manager, the Members nor the Company shall be required to

maintain minutes of the Company or other records of its proceedings.

## ARTICLE 8

### CONTRIBUTIONS TO THE COMPANY AND CAPITAL ACCOUNTS

8.01     Members' Capital Contributions.  The capital contributions to be made by the Members are set forth below:

| Member | Total Contributions |
|---|---|
| Aralpa Capital, S.A. de C.V. | As deemed necessary by Aralpa Capital, S.A. de C.V. |

## ARTICLE 9

### DISTRIBUTIONS TO MEMBERS

9.1     Distribution: Any Distributable Cash available shall be distributed to the Members as determined by the Manager, pro rata, in proportion to their respective Ownership Interests.

9.2     Limitation Upon Distributions. No distribution shall be made to Members, if prohibited by the Georgia Act.

9.3     Interest on and Return of Capital Contributions. No Member shall be entitled to interest on its Capital Contribution or to return of its Capital Contribution, except as otherwise specifically provided for herein.

9.4     Loans to Company.  No Member shall be required to make any loans to the Company.  To the extent approved by the Manager, from time to time the Members may be permitted to make loans to the Company if and to the extent they so desire and if the Manager determines that loan proceeds are necessary or appropriate in connection with the conduct of the Company's business (including without limitation, expansion or diversification).  In such event, the Members shall have the opportunity (but not the obligation) to participate in such Member loans on a pro rata basis in accordance with their Ownership Interests and the security (if any) for such Member loans shall be as nearly equal as possible among the lending Members based upon the respective amounts lent by each Member.

The making of any loan by a Member shall not create any additional fiduciary duty as between the Member and the Company and shall not otherwise restrict the right to foreclose, or restrict any other legal remedies which may be exercised by the Member as may be provided to a third-party creditor under law.

## ARTICLE 10

### NET PROFIT, NET LOSS; DISTRIBUTIVE SHARES OF TAX ITEMS

10.01     General Allocations.     All items of net profit and loss and all distributions shall be made to the Members in accordance with their ownership interests.

## ARTICLE 11

### BOOKS AND RECORDS

11.1     Accounting Period.  The Company's accounting period shall be the calendar year.

11.2 <u>Books of Account and Records</u>. Proper and complete records and books of account shall be kept or shall be caused to be kept by the Manager in which shall be entered fully and accurately all transactions and other matters relating to the Company's business in such detail and completeness as is customary and usual for businesses of the type engaged in by the Company. The books and records shall at all times be maintained at the principal executive office of the Company and shall be open to the reasonable inspection and examination of the Members or their duly authorized representatives during reasonable business hours.

11.3 <u>Records, Audits and Reports</u>. At the expense of the Company, the Manager shall maintain records and accounts of all operations and expenditures of the Company. The Company shall keep at its principal place of business the following records:

(a) A current list of the full name and last known address of each Member and Manager;

(b) Copies of records to enable a Member to determine the relative voting rights, if any;

(c) A copy of the Certificate of Formation of the Company and all amendments thereto;

(d) Copies of the Company's federal, state and local income tax returns and reports, if any, for the three most recent years;

(e) Copies of this Agreement, together with any amendments thereto; and

(f) Copies of any financial statements of the Company for the three most recent years.

11.4 <u>Tax Returns and Accountant</u>. The Manager shall cause the preparation and timely filing of all tax returns required to be filed by the Company pursuant to the Code and all other tax returns deemed necessary and required in each jurisdiction in which the Company does business. Copies of such returns, or pertinent information therefrom, shall be furnished to the Members within a reasonable time after the end of the Company's Fiscal Year. The Manager shall choose an accounting firm(s) for the Company. Such firms will generate quarterly unaudited financial statements and prepare the tax returns.

ARTICLE 12

DISSOLUTION AND TERMINATION

12.1 <u>Dissociation</u>. Notwithstanding anything to the contrary contained in the Georgia Act, a Member shall cease to be a member of the Company only upon the occurrence of one of the following events:

(a) the Member assigns all of his or her Membership Interest in accordance with Article 12 herein; or

(b) all of the Member's Membership Interest of the Company are purchased or redeemed by the Company.

12.2 (a) To the extent permitted by law and notwithstanding anything to the contrary contained in Georgia Act or any other law, the Company shall only be dissolved upon the occurrence of any of the following events:

(i) there is an administrative or judicial decree of dissolution; or

(ii) by the written agreement of the Members;

(iii) at the request of either Member upon 60 days notice

12.3 <u>Effect of Dissolution</u>. Upon dissolution, the Company shall cease to carry on its business, except as permitted by the Georgia Act. Upon dissolution, the Manager shall deliver a certificate of cancellation to the Secretary of State pursuant to the Georgia Act.

12.4 <u>Winding Up, Liquidation and Distribution of Assets</u>.

(a) Upon dissolution, an accounting shall be made by the Company's independent accountants of the accounts of the Company and of the Company's assets, liabilities and operations, from the date of the last previous accounting until the date of dissolution. The Manager or, if there is no Manager, the remaining Members shall immediately proceed to wind up the affairs of the Company.

(b) If the Company is dissolved and its affairs are to be wound up, the Manager shall:

(i) Sell or otherwise liquidate all of the Company's assets as promptly as practicable (except to the extent the Manager may determine to distribute any assets to the Members in kind),

(ii) Allocate any profit or losses resulting from such sales to the Members in accordance with Article 10 hereof,

(iii) Discharge all debts, liabilities and obligations of the Company, including any liabilities to Members who are creditors, to the extent otherwise permitted by law, other than liabilities to Members for distributions, and establish such Reserves as may be reasonably necessary to provide for contingencies or liabilities of the Company,

Distribute the remaining assets in the following order:

(i) If any assets of the Company are to be distributed in kind, the net fair market value of such assets as of the date of dissolution shall be determined by independent appraisal or by agreement of the Members. Such assets shall be deemed to have been sold as of the date of dissolution for their fair market value, and the capital accounts of the Members shall be adjusted, pursuant to the provisions of this Agreement to reflect such deemed sale.

(ii) The remaining assets shall be distributed to the Members, either in cash or in kind, as determined by the Manager, in proportion to the positive balance (if any) of each Member's capital account (as determined after taking into account all capital account adjustments for the Company's taxable year during which the liquidation occurs), with any assets distributed in kind being valued for this purpose at their net fair market value.

(c) Notwithstanding anything in this Agreement to the contrary, upon a liquidation, if any Member has a deficit capital account (after giving effect to all contributions, distributions, allocations and other capital account adjustments for all taxable years, including the year during which such liquidation occurs), such Member shall have no obligation to make any capital contribution, and the negative balance of such Member's capital account shall not be considered a debt owed by such Member to the Company or to any other Person for any purpose whatsoever.

(d) The Manager shall comply with all applicable requirements of applicable law pertaining to the winding up of the affairs of the Company and the final distribution of its assets.

12.5 <u>Certificate of Dissolution.</u> When all debts, liabilities and obligations have been paid and discharged or adequate provisions have been made therefore and all of the remaining property and assets have been distributed to the Members, a Certificate of Dissolution shall be executed and filed with the Secretary of State of Georgia in accordance with the Georgia Act.

12.6 <u>Return of Contribution Nonrecourse to Other Members</u>. Except as provided by law or expressly provided in this Agreement upon dissolution, each Member shall look solely to the assets of the Company for the return of his or her Capital Contribution. If the Company property remaining after the payment or discharge of the debts and liabilities of the Company is insufficient to return the cash contribution of one or more Members, such Member or Members shall have no recourse against any other Member.

## ARTICLE 13

### SECURITIES REPRESENTATIONS

The undersigned Members acknowledge that their Membership Interests are securities and, further, acknowledge that the Company is relying on the undersigned's representations and warranties set forth in this Article 13, in part, as the basis for exemptions from the registration requirements of federal and state securities laws that are applicable to the Membership Interests.

13.1     Investment Intent. Each of the undersigned Members is acquiring the Membership Interests for investment for his or her own account with no present intent to directly or indirectly resell, transfer, distribute or participate in a distribution of the Membership Interests or any portion thereof.

13.2     No Representations from Company.  No Member is acquiring the Membership Interests based upon any representation, oral or written, by the Company or any representative of the Company with respect to the future value of, income from, or tax consequences relating to the Membership Interests but rather upon an independent examination and judgment as to the prospects of the Company. Further, each of the undersigned Members acknowledges that no federal or state administrative entity responsible for securities registration or enforcement has made any recommendation or endorsement of the Membership Interests or any findings as to the fairness of an investment in the Membership Interests.

13.3     Knowledge and Experience. To the extent that the undersigned believe necessary, each of the undersigned Members has been represented by a purchaser representative (who has been selected by such Member and who is not affiliated with or compensated by the Company or any of its affiliates) concerning such Member's investment in the Company. The undersigned and/or the undersigned's purchaser representative have sufficient knowledge and experience in business and financial matters to evaluate the Company, to evaluate the risk of an investment in the Company, to make an informed investment decision with respect thereto, and to protect the undersigned's interest in connection with the undersigned's acquisition of his or her Membership Interest.

13.4     Access to Information. Each of the undersigned Members and/or the undersigned's purchaser representatives has received and reviewed such financial information and records of the Company as the undersigned and/or the undersigned's purchaser representatives deemed necessary, and the Company has made available to the undersigned and/or the undersigned's purchaser representatives the opportunity to ask questions of, and to receive answers from, representatives of the Company and to obtain additional information relative to the Company and the undersigned's investment therein to the extent the Company possesses such information or could acquire it without unreasonable effort or expense. All such materials and information requested by the undersigned and/or the undersigned's purchaser representatives have been made available and examined by the undersigned and/or the undersigned's purchaser representatives.

13.5     Membership Interests Not Registered.  The undersigned Members understand and acknowledge that the Membership Interests have not been registered for sale under the 1933 Act, as amended (the "1933 Act"), or any other state securities laws (collectively, the "state securities acts") and that the Membership Interests are being issued and sold by the Company in reliance upon exemptions from the registration requirements of such acts. The undersigned Members understand and agree that the Company may refuse to permit any proposed sale, transfer, pledge or other disposition of the Membership Interests except pursuant to an effective registration statement under the 1933 Act and any applicable state securities acts or upon the issuance to the Company of an opinion of counsel, or the submission to the Company of such other evidence, satisfactory to the Company that such proposed sale, transfer, pledge or other disposition of the Membership Interests will not be in violation of the 1933 Act and any applicable state securities acts.

13.6     Ability to Bear Risk. Each of the undersigned Members can bear the economic risk of losing his or her entire investment in the Membership Interests.  Each Member's proposed investment in the Membership Interests is not disproportionate to his or her net worth. Each Member has adequate means of providing for his or her current needs and possible contingencies without regard to his or her investment in the Membership Interests, and no Member has any need for liquidity in his or her investment in the Membership Interests.

ARTICLE 14

MISCELLANEOUS PROVISIONS

14.1     Application of Law.  This Agreement, and the application or interpretation hereof, shall be governed exclusively by its terms and by the laws of the State of Georgia, and specifically the Georgia Act.

14.2     No Action for Partition.  No Member has any right to maintain any action for partition with respect to the property of the Company.

14.3     Execution of Additional Instruments.  Each Member hereby agrees to execute such other and further statements of interest and holdings, designations, powers of attorney and other instruments necessary to comply with any laws, rules or regulations.

14.4     Construction.  Whenever the singular number is used in this Agreement and when required by the context, the same shall include the plural and vice versa, and the masculine gender shall include the feminine and neuter genders and vice versa.

14.5     Headings.  The headings in this Agreement are inserted for convenience only and are in no way intended to describe, interpret, define, or limit the scope, extent or intent of this Agreement or any provision hereof.

14.6     Waivers.  The failure of any party to seek redress for violation of or to insist upon the strict performance of any covenant or condition of this Agreement shall not prevent a subsequent act which would have originally constituted a violation, from having the effect of an original violation.

14.7     Rights and Remedies Cumulative.   Except as otherwise expressly provided herein, the rights and remedies provided by this Agreement are cumulative and the use of any one right or remedy by any party shall not preclude or waive the right to use any or all other remedies.  Except as otherwise expressly provided herein, such rights and remedies are given in addition to any other rights and remedies the parties may have by law, statute, ordinance or otherwise.

14.8     Severability.  If any provision of this Agreement or the application thereof to any person or circumstances shall be invalid, illegal or unenforceable to any extent, the remainder of this Agreement and the application thereof shall not be affected and shall be enforceable to the fullest extent permitted by law.

14.9     Heirs, Successors and Assigns.  Each and all of the covenants, terms, provisions and agreements herein contained shall be binding upon and inure to the benefit of the parties hereto and, to the extent permitted by this Agreement, their respective heirs, legal representatives, successors and assigns.

14.10    Creditors.  None of the provisions of this Agreement shall be for the benefit of or enforceable by any creditor of the Company.

14.11    Counterparts.  This Agreement may be executed in counterparts, each of which shall be deemed an original but all of which shall constitute one and the same instrument.

14.12    Federal Income Tax Election.  All elections required or permitted to be made by the Company under the Code shall be made by the Manager as determined in his sole discretion.

14.13    Notices.  Any and all notices, offers, demands or elections required or permitted to be made under this Agreement ("Notices") shall be in writing, signed by the party giving such Notice, and shall be deemed given and effective (i) when hand-delivered (either in person by the party giving such notice, or by its designated

agent, (ii) on the second (2nd) business day following deposit within commercial courier), (iii) upon evidence of confirmed receipt by facsimile or (iv) on the third (3rd) business day (which term means a day when the United States Postal Service, or its legal successor ("Postal Service") is making regular deliveries of mail on all of its regularly appointed weekday rounds) following the day (as evidenced by proof of mailing) upon which such Notice is deposited, postage prepaid, certified mail, return receipt requested, with the Postal Service, and addressed to the other party at such party's respective address as set forth below, or at such other address as the other party may hereafter designate by Notice.

14.14   <u>Amendment</u>. Any amendment to this Agreement shall be made in writing and signed by all Members.

14.15   <u>Invalidity</u>.  The invalidity or unenforceability of any particular provision of this Agreement shall not affect the other provisions hereof, and the Agreement shall be construed in all respects as if such invalid or unenforceable provision were omitted.

14.16   <u>Captions</u>. Titles and captions are inserted for convenience only, and in no way define, limit, extend or describe the scope or intent of this Agreement or any of its provisions and in no way are to be construed to affect the meaning or construction of this Agreement or any of its provisions.

14.17   <u>Determination of Matters Not Provided for In This Agreement</u>. The Manager shall decide any questions arising with respect to the Company and this Agreement, which are not specifically or expressly provided for in this Agreement.

14.18   <u>Further Assurances.</u> The Members each agree to cooperate, and to execute and deliver in a timely fashion any and all additional documents necessary to effectuate the purposes of the Company and this Agreement.

14.19   <u>Transferability.</u> The original Member, Aralpa Capital, S.A. de C.V., can transfer its interest in the Company.  Any newly admitted Member can transfer its interest with the consent of 75% of the Members.

IN WITNESS WHEREOF, this Agreement is executed by the undersigned as of the 24th day of January 2018.

**MEMBER:**

**Aralpa Capital, S.A. de C.V.**

_____
Rodrigo Lebois (Officer)

11