# EXHIBIT O

citi
EXECUTION COPY

## GUARANTY AGREEMENT

This Guaranty Agreement (as amended, amended and restated, supplemented or otherwise modified from time to time, this "Agreement"), is made as of June 16, 2017, by Rodrigo Lebois Mateos, an individual with a principal residence at Castillo de Chapultepec 115, Col Lomas Reforma 11930, Mexico ("Guarantor"), in favor of Citibank, N.A. ("Lender") for the benefit of Lender and any of its Affiliates to which Obligations are owed.

**RECITALS**

WHEREAS, Aralpa Holdings Limited Partnership, a New Brunswick limited partnership ("Borrower"), has executed in favor of Lender that certain Note dated as of the date hereof (as amended, amended and restated, supplemented or otherwise modified from time to time, the "Note"), pursuant to which Lender has agreed to make certain financial accommodations available to Borrower as described in the Note;

WHEREAS, Guarantor will benefit directly and indirectly from the financial accommodations made available by Lender to Borrower under the Note;

WHEREAS, Lender has required that Guarantor execute and deliver this Agreement, as a condition, among others, to making the financial accommodations described in the Note available to Borrower; and

WHEREAS, Guarantor intends, by executing this Agreement, to provide a guaranty to Lender in respect of the financial accommodations made available by Lender to Borrower and certain other amounts.

NOW, THEREFORE, for and in consideration of the foregoing, Guarantor and Lender hereby agree as follows:

**1. DEFINITIONS.**

Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Note. All schedules referred to herein are incorporated herein by reference as though set forth herein in full. As used in this Agreement, the following terms have the meanings set forth below:

"Adjusted Net Worth" means, for any Person, the gross fair market value of total assets less total liabilities, including, but not limited to, taxes on asset appreciation and any reserve or offsets against assets.

"Country" means the United Mexican States.

"Debt Service Coverage Ratio" means, with respect to any Person, the ratio of (a) Personal Cash Flow Available for Debt Service to (b) the sum of debt service (including principal and interest).

"Expenses" means all fees, costs and expenses (including, without limitation, all court costs and all fees, costs and expenses of legal counsel) paid or incurred by Lender in: (a) endeavoring to collect all or any part of the Obligations from, or in prosecuting any action against, Guarantor; (b) taking any action with respect to any security or Collateral securing the obligations of Guarantor under this Agreement; (c) preserving, protecting or defending the enforceability of this Agreement or any other Credit Document or its rights hereunder or thereunder; and (d) enforcing any rights under this Agreement or other Credit Document, contract causes of action and indemnities, whether primary, secondary, direct or indirect, absolute or contingent, fixed or otherwise (including monetary obligations incurred during the pendency of any bankruptcy, insolvency, receivership or other similar proceeding, regardless of whether allowed or allowable in such proceeding).

"Guaranteed Obligations" means the full and prompt payment, when due, whether upon demand, maturity, by required prepayment, acceleration or otherwise, and at all times thereafter, of all of the Obligations (including interest accruing during the pendency of any bankruptcy, insolvency, receivership or other similar proceeding, regardless of whether allowed or allowable in such proceeding) and Expenses which may now be or may hereafter become due and owing, and the full and prompt performance of all obligations to be kept and performed by any Obligor in respect of this Agreement and the other Credit Documents; provided, that the definition of Guaranteed Obligations shall not create any guarantee by any Obligor or any other Person to support, as applicable, any Excluded Derivative Obligations of any Obligor or such Person for purposes of determining any obligations of such Obligor or such Person.

"Liquid Assets" means assets which are (a) not the subject of any lien, pledge, security interest or other arrangement with any creditor, (b) held solely in the name of Guarantor, (c) cash or marketable securities (which are convertible into cash within 5 days) and (d) otherwise acceptable to Lender in its sole discretion.

"Net Income" means, with respect to any Person, net income after applicable Taxes (excluding extraordinary gains and extraordinary losses).

"Personal Cash Flow Available for Debt Service" means, Net Income, directly or indirectly, attributable to Guarantor for the immediately preceding year minus Guarantor's personal expenses.

**2. GUARANTY.**

(a) Guarantor hereby absolutely, unconditionally and irrevocably guarantees, as primary obligor and not merely as surety, to Lender and its respective successors and assigns the Guaranteed Obligations. Guarantor hereby further agrees that if Borrower shall fail to pay in full when due (whether upon demand, at stated maturity, by required prepayment, by acceleration or otherwise) any of the Guaranteed Obligations, Guarantor will promptly pay the same, without any demand or notice whatsoever. Guarantor hereby further agrees that in the case of any extension of time of payment or renewals of any of the Guaranteed Obligations, the same will be promptly paid in full when due (whether upon demand, at extended maturity, by required prepayment, by acceleration or otherwise) in accordance with the terms of such extension or renewal. Guarantor hereby agrees that this is an absolute guarantee of payment and performance and is not a guarantee of collection. If there are multiple Guarantors under this Agreement, such Guarantors are jointly and severally liable in accordance with Section 18.

(b) Notwithstanding anything contained herein to the contrary, Guarantor's liability with respect to the payment of the Guaranteed Obligations shall include all Expenses.

(c) Guarantor and, by its acceptance of this Agreement, Lender, hereby confirm that it is the intention of

Guarantor and Lender that this Agreement and the obligations of Guarantor hereunder not constitute a fraudulent transfer or conveyance for purposes of any bankruptcy, insolvency or similar proceeding. To effectuate the foregoing intention, Lender and Guarantor hereby irrevocably agree that the obligations of Guarantor under this Agreement at any time shall be limited to the maximum amount as will result in the obligations of Guarantor under this Agreement not constituting a fraudulent transfer or conveyance.

**3.    PAYMENT OF OBLIGATIONS.**

(a)    At any time, and from time to time, Guarantor shall pay to Lender on demand and in immediately available funds, all Guaranteed Obligations then due and outstanding. Guarantor guarantees that the Guaranteed Obligations will be paid strictly in accordance with the terms of the Credit Documents, regardless of any law, regulation or order now or hereafter in effect in any jurisdiction affecting any of such terms or rights of Lender with respect thereto.

(b)    Guarantor will make each payment hereunder in the currency contemplated for the relevant Guaranteed Obligation in the Credit Documents and at such place as Lender specifies to Guarantor.

**4.    OBLIGATIONS UNCONDITIONAL; WAIVERS AND ACKNOWLEDGEMENTS.**

(a)    The Obligations of Guarantor hereunder are independent of the Obligations of any other Obligor under any Credit Document. A separate action may be brought against Guarantor to enforce this Agreement, whether or not any action is brought against Borrower or any other Obligor or whether or not Borrower or any other Obligor is joined in any such action. Guarantor hereby agrees that its obligations under this Agreement shall be irrevocable, absolute and unconditional, irrespective of, and Guarantor hereby irrevocably waives any defenses Guarantor may now have or hereafter acquire in any way relating to any or all of the following:

(i)    the legality, validity or enforceability, avoidance or subordination of any of the Guaranteed Obligations;

(ii)    the value, genuineness, validity, regularity or enforceability of any agreement or instrument under which any Guaranteed Obligations have been incurred, including the Credit Documents or any agreement or instrument relating thereto;

(iii)    any change in the time, place or manner of payment of, or in any other term of, the Guaranteed Obligations or any other obligation of any Obligor under any Credit Document, or any rescission, waiver, amendment or other modification of any Credit Document or any other agreement, including any increase in the Guaranteed Obligations resulting from any extension of additional credit or otherwise;

(iv)    any taking, exchange, substitution, release, impairment or non-perfection of any Collateral, or any taking, release, impairment, amendment, waiver or other modification of any guaranty, for the Guaranteed Obligations;

(v)    the absence of any attempt by, or on behalf of, Lender to collect, or take any other action to enforce, all or any part of the Guaranteed Obligations from Borrower, any other Obligor or any other Person;

(vi)    the election of any remedy by, or on behalf of, Lender with respect to all or any part of the Guaranteed Obligations, including the manner of sale, disposition or application of proceeds of any Collateral or other assets to all or part of the Guaranteed Obligations;

(vii)    any default, failure or delay, willful or otherwise, in the performance of the Guaranteed Obligations;

(viii)    the waiver, consent, extension, forbearance or granting of any indulgence by, or on behalf of, Lender or any of its Affiliates with respect to any provision of the Credit Documents;

(ix)    any change, restructuring or termination of the corporate structure, ownership or existence of any Obligor or any of its Subsidiaries;

(x)    the election by, or on behalf of, Lender, in any proceeding instituted under the United States Bankruptcy Code (the "Bankruptcy Code") of the application of Section 1111 (b)(2) of the Bankruptcy Code or any similar provision under a bankruptcy code of another country or territory, including under the Mexican Bankruptcy Law (*Ley de Concursos Mercantiles*);

(xi)    any borrowing by Borrower or grant of a security interest by Guarantor, as debtor-in-possession, under Section 364 of the Bankruptcy Code, or the disallowance under Section 502 of the Bankruptcy Code of all or any portion of the claims of Lender for repayment of all or any part of the Guaranteed Obligations or any similar provision under a bankruptcy code of another country or territory, including under the Mexican Bankruptcy Law (*Ley de Concursos Mercantiles*);

(xii)    the death or legal incapacity of any Obligor that is an individual (including Guarantor), the dissolution, liquidation or termination of operations of any Obligor, if such Obligor is an entity, or the revocation of a revocable trust, if such Obligor is a revocable trust (as applicable);

(xiii)    any failure of Lender to disclose to Guarantor any information relating to the condition (financial or otherwise), operations, properties, assets, nature of assets, liabilities or prospects of any Obligor now or hereafter known to Lender (Guarantor waiving any duty of Lender to disclose such information);

(xiv)    the failure of any other Person to execute or deliver this Agreement or any other guaranty or agreement or the release or reduction of liability of any Guarantor or other guarantor or surety with respect to the Guaranteed Obligations;

(xv)    any defense, set-off or counterclaim (other than a defense of payment or performance) that may at any time be available to, or be asserted by, any other Obligor against Lender;

(xvi)    any law, regulation, decree or order of any jurisdiction, or any other event, affecting any term of any Guaranteed Obligation or Lender's rights with respect thereto, including, without limitation: (A) the application of any such law, regulation, decree or order, including any prior approval, that would prevent the exchange of any currency for the currency in which payments are owed to Lender under the Credit Documents or the remittance of funds outside of an Obligor's jurisdiction or the unavailability of the currency in which payments are owed to Lender in any legal exchange market in any Obligor's jurisdiction in accordance with normal commercial practice; (B) a declaration of banking moratorium or any suspension of payments by banks in any Obligor's jurisdiction or the imposition by such jurisdiction or any Governmental Authority thereof of any moratorium on,

required rescheduling or restructuring of, or required approval of payments on, any indebtedness in such jurisdiction; (C) any expropriation, confiscation, nationalization or requisition by such country or any Governmental Authority that directly or indirectly deprives Borrower of any assets or their use or of the ability to operate its business or a material part thereof; or (D) any war (whether or not declared), insurrection, revolution, hostile act, civil strife or similar events occurring in any Obligor's jurisdiction that have an effect similar to that of an event described in clause (A), (B) or (C) above; or

(xvii) other than payment in full of the Guaranteed Obligations, any other circumstance (including, without limitation, any statute of limitations) or manner of administering the Advance(s) or any existence of, or reliance on, any representation by Lender that might vary the risk of any guarantor or otherwise might constitute a legal or equitable discharge or defense of a surety or guarantor.

(b) Guarantor hereby unconditionally and irrevocably waives any requirement of promptness, diligence, presentment, demand of payment, filing of claims with a court in the event of receivership or bankruptcy of any other Obligor, notice of non-performance, default, acceleration, protest or dishonor and any notice whatsoever with respect to all or any part of the Guaranteed Obligations, the benefit of any statutes of limitation and all demands whatsoever (and Guarantor shall not require that the same be made on any other Obligor as a condition precedent to any of Guarantor's obligations hereunder), and any requirement that Lender exhaust any right, power or remedy or proceed against any other Obligor or any other Person under any Credit Document and any requirement that Lender protect, secure, perfect or insure any lien or any property subject thereto, and covenants that this Agreement will not be discharged, except by full and complete payment of the Guaranteed Obligations.

(c) Guarantor hereby unconditionally and irrevocably waives any right to revoke this Agreement and acknowledges that this Agreement is continuing in nature and applies to all presently existing and future Guaranteed Obligations.

(d) Guarantor hereby unconditionally and irrevocably waives any defense based on any right of set-off, recoupment or counterclaim against, or in respect of, the Guaranteed Obligations of Guarantor.

(e) Guarantor, to the fullest extent permitted by law, hereby irrevocably waives any defense arising by reason of: (i) any disability or other defense of any other Obligor or any other Person, including but not limited to the insolvency or bankruptcy of any other Obligor or any other Person, or any stay in connection with any such insolvency or bankruptcy proceedings; (ii) the cessation from any cause whatsoever, other than payment in full or other satisfaction, of the Guaranteed Obligations; (iii) the application by Borrower of the proceeds of any Guaranteed Obligation for purposes other than the purposes represented by Borrower to Lender or intended or understood by Lender or Guarantor; or (iv) any act or omission by Lender which directly or indirectly results in or aids the discharge or release of any other Obligor, any other Person, or any Guaranteed Obligation, or any Collateral, by operation of law or otherwise. Guarantor, to the fullest extent permitted by law, waives all rights which it may have under: (A) any law which may limit the amount of a deficiency judgment based on any Guaranteed Obligation; (B) any bar to deficiency judgments; (C) any requirement of law that Lender exhaust any rights against any other Obligor or any security for the Guaranteed Obligations before proceeding against Guarantor; (D) any law which may prohibit Lender from enforcing its rights and remedies against any other Obligor by both a private sale and an action in court; or (E) any law which requires that a court action to enforce Lender's rights be an action to foreclose any security instrument securing the Guaranteed Obligations.

(f) Guarantor acknowledges that Lender may, at its election and without notice to or demand upon Guarantor, foreclose on any Collateral held by Lender by one or more judicial or non-judicial sale(s), accept an assignment of any such Collateral in lieu of foreclosure, compromise or adjust any part of the Guaranteed Obligations, make any other accommodation with any other Obligor or any other guarantor or exercise any other right or remedy available to it against any other Obligor or any other guarantor, without affecting or impairing in any way the liability of Guarantor except to the extent the Guaranteed Obligations (other than contingent or unliquidated obligations or liabilities) have been paid in full in cash or cash collateralized in full. Guarantor hereby waives any defense arising out of such election even though such election operates, pursuant to applicable law, to impair or to extinguish any right of subrogation, reimbursement, exoneration, contribution or indemnification or other right or remedy of Guarantor against any other Obligor, any other guarantor or any Collateral.

(g) Guarantor unconditionally and irrevocably waives, the benefits of order (*orden*), exhaustion (*excusión*) and division (*división*) set forth in Articles 2814, 2815, 2816, 2817, 2818, 2819, 2820, 2821, 2822, 2823, 2827, 2836, 2837, 2839, 2840, 2842 and 2844 of the Federal Civil Code (*Código Civil Federal*) and the corresponding provisions of the Civil Codes of the States of Mexico and the City of Mexico (formerly known as Federal District).

**5.    PAYMENT; REINSTATEMENT.**

Upon any other Obligor's failure to make payment of any of the Guaranteed Obligations when due whether upon demand, maturity, by required prepayment, acceleration or otherwise, Lender may proceed directly and at once, without further notice, against Guarantor to obtain performance of and to collect and recover the full amount, or any portion, of the Guaranteed Obligations without Lender first proceeding against any other Obligor, any other Person or any security or Collateral for all or any part thereof. Payments and credits, if any, from Guarantor or any other Person on account of the Guaranteed Obligations shall be applied to the Guaranteed Obligations, and none of Guarantor, any other Obligor or any other Person shall have any further liability with respect to any such payments and credits if such payments and credits have been made as provided herein; provided, that if such payments or credits, or any part thereof, are subsequently invalidated, declared to be fraudulent or preferential, set aside and/or required to be repaid to Guarantor, any other Obligor or any other Person, or their respective estates, trustees, *síndico*, *conciliador*, *liquidador*, receivers or any other party under any bankruptcy law, state or federal law, common law or equitable cause, then, to the extent of such payment or credit, the Guaranteed Obligations or any part thereof which has been paid, reduced or satisfied by such amount shall be reinstated and shall continue in full force and effect as of the time immediately preceding the time such initial payment, credit, reduction or satisfaction occurred.

**6.    INABILITY TO COLLECT.**

Guarantor agrees that, notwithstanding anything set forth in this Agreement to the contrary, if for whatever reason, Lender is

prevented by applicable law or the terms of any subordination agreement from exercising any of its rights to receive payment from any other Obligor of all or any part of the Guaranteed Obligations, to collect interest on all or any part of the Guaranteed Obligations, to enforce or exercise any other right or remedy with respect to all or any part of the Guaranteed Obligations, or is prevented from taking any action to realize on all or any part of Collateral securing the Guaranteed Obligations (if any), Guarantor shall pay to Lender, on demand therefor and in immediately available funds, the amount that would otherwise have been due and payable had such rights and remedies been permitted to be exercised by Lender. Without limiting the generality of the foregoing, Guarantor agrees that its liability hereunder shall extend to all amounts that constitute part of the Guaranteed Obligations and would be owed by any other Obligor to Lender under or in respect of the Credit Documents but for the fact that they are unenforceable or not allowable due to the existence of a bankruptcy, reorganization or similar proceeding involving such other Obligor.

7. **LENDER'S ACTIONS.**

(a) Lender is hereby authorized, without notice or demand and without affecting the liability of Guarantor hereunder, from time to time, to: (i) renew, extend, substitute, accelerate or otherwise change the time for payment of, or other terms relating to, all or any part of the Guaranteed Obligations, or to otherwise modify, amend or change the terms of the Credit Documents including, without limitation, increasing the amounts of available credit or extending additional credit thereunder; (ii) accept partial payments on all or any part of the Guaranteed Obligations; (iii) take and hold security or Collateral for the payment of all or any part of the Guaranteed Obligations, this Agreement, or any other guaranties of all or any part of the Guaranteed Obligations or other liabilities of any other Obligor; (iv) exchange, enforce, waive and release any such security or Collateral; (v) to release any other guarantor; and (vi) settle, release, compromise, collect or otherwise liquidate all or any part of the Guaranteed Obligations and exchange, enforce, release or waive any security or Collateral for all or any part of the Guaranteed Obligations, and any of the foregoing may be done in any manner, without affecting or impairing all or any part of the obligations of Guarantor hereunder.

(b) Subject to the provisions of the Credit Documents, at any time after all or any part of the Guaranteed Obligations have become due and payable, until all of such Guaranteed Obligations have been paid in full, Lender may, in its sole discretion, without notice to Guarantor and regardless of the acceptance of any security or Collateral for the payment hereof, appropriate and apply toward the payment of all or any part of such Guaranteed Obligations: (i) any indebtedness due or to become due from Lender or any of its Affiliates to Guarantor; and (ii) any monies, credits or other property belonging to Guarantor, at any time held by or coming into the possession of Lender, Lender's Affiliates or any of their respective custodians or nominees.

(c) Guarantor hereby assumes responsibility for keeping informed of the financial condition of Borrower and any and all endorsers and/or other Obligors, and of all other circumstances bearing upon the risk of nonpayment of the Guaranteed Obligations, or any part thereof, or the value or condition of any Collateral, if any, for the Guaranteed Obligations, that diligent inquiry would reveal, and Guarantor hereby agrees that Lender shall not have any duty to advise Guarantor of information known to it regarding such condition or any such circumstances. Guarantor hereby acknowledges that it has been furnished copies of the Credit Documents and has had the opportunity to review any documents relating thereto or financial information relevant thereto. Guarantor further acknowledges and agrees that in the event Lender, in its sole discretion, undertakes at any time or from time to time to provide any such information to Guarantor, then the party providing such information shall be under no obligation: (i) to undertake any investigation not a part of its regular business routine; (ii) to disclose any information which, pursuant to accepted or reasonable banking or commercial finance practices, such party wishes to maintain confidential; or (iii) to make any other or future disclosures of such information or any other information to Guarantor.

(d) Guarantor consents and agrees that Lender, or any Person acting for or on behalf of Lender, shall not be under any obligation to marshal any assets in favor of Guarantor or against or in payment of all or any part of the Guaranteed Obligations.

8. **REPRESENTATIONS AND WARRANTIES.**

To induce Lender to make the financial accommodations under the Note, Guarantor represents and warrants as follows on the date hereof (which representations and warranties shall be deemed to be repeated on the date of such financial accommodations made under the Note if after the date hereof):

(a) Guarantor has the legal capacity to own, lease and operate its properties and carry on its business as now conducted and as proposed to be conducted;

(b) Guarantor (i) is an adult individual and is sui juris, (ii) is not under any restraint or is not in any respect incompetent to execute and deliver, and to perform its obligations under, this Agreement and (iii) does not require the express written consent and authority from his spouse to exercise, deliver and perform his obligations under this Agreement in accordance with the laws of the Country;

(c) the execution, delivery and performance by Guarantor of this Agreement (i) does not contravene any law, rule, regulation, court decree or order or contractual restriction binding on or affecting Guarantor or any of Guarantor's property, (ii) will not result in a breach of, or entitle any party to terminate or call a default under, or result in the acceleration or required prepayment of any loan agreement, indenture, mortgage, note, lease or other agreement binding on or otherwise affecting Guarantor or any of its properties, and (iii) will not result in or require the creation of any lien, security interest or other encumbrance on any properties, revenues or assets of Guarantor other than pursuant to this Agreement;

(d) no consent, authorization or approval or other action by, and no notice to or registration or filing with, any Governmental Authority or other Person is required for Guarantor's due execution, delivery and performance of this Agreement;

(e) this Agreement has been duly executed and delivered by Guarantor, and are Guarantor's legal, valid and binding obligations, enforceable against Guarantor in accordance with their respective terms;

(f) except as disclosed in writing to Lender prior to the date hereof, there is no (i) to Guarantor's knowledge after due inquiry, unsatisfied order, judgment or other proceeding affecting Guarantor, (ii) pending tax assessment affecting Guarantor, (iii) lien (including tax liens) or other security interest affecting any property of Guarantor or (iv) pending or, to Guarantor's knowledge, threatened, investigation, litigation or proceeding affecting Guarantor that, in each case, (A) could be reasonably expected to have a Material Adverse

Effect or (B) purports to affect the legality, validity or enforceability of this Agreement or the consummation of the transactions contemplated hereby or the performance hereunder;

(g)  Guarantor, and to the best of its knowledge and belief, each other Obligor and each of their respective Affiliates, Subsidiaries, directors and officers, (i) is not a Person whose property or interest in property is blocked or subject to blocking pursuant to Section 1 of Executive Order 13224 of September 23, 2001 Blocking Property and Prohibiting Transactions With Persons Who Commit, Threaten to Commit, or Support Terrorism (66 Fed. Reg. 49079 (2001)), (ii) is not a Person who engages in any dealings or transactions prohibited by Section 2 of such executive order, or, to Guarantor's knowledge, is otherwise associated with any such Person in any manner violative of Section 2 of such executive order or any other applicable law, rule, regulation or order of any Governmental Authority, (iii) is not a Person on the list of countries, territories, individuals and/or entities prohibited pursuant to any law, regulation, or executive order administered by OFAC or the Mexican Ministry of Finance and Public Credit (*Secretaría de Hacienda y Crédito Público*), including the List of Specially Designated Nationals and Blocked Persons administered by OFAC, (iv) is not a Person who is otherwise a target of the economic sanctions, laws, regulations, embargoes or restrictive measures administered or enforced by the United States government, including, without limitation, OFAC and the United States Department of State, (v) if an entity, is not, and does not provide services to, a prohibited "shell bank" as defined in Section 313 of the Patriot Act and (vi) has operated under policies, procedures and practices, if any, that are in compliance with the Patriot Act and available to Lender for Lender's review and inspection during normal business hours and upon reasonable prior notice;

(h)  all tax returns required to be filed by Guarantor in any jurisdiction have been filed timely, and all Taxes upon Guarantor, or upon any of Guarantor's property or income, which are shown to be due and payable on such returns have been paid, except for those which are being contested in good faith by appropriate proceedings diligently conducted and for which adequate reserves have been established.  To the best of his knowledge after due inquiry, Guarantor is not aware of any proposed additional tax assessment or Tax to be assessed against or applicable to Guarantor;

(i)  Guarantor is Solvent and the execution, delivery and performance of its obligations under this Agreement will not render Guarantor Insolvent;

(j)  Guarantor has disclosed to Lender all agreements, instruments and corporate or other restrictions to which it is subject, and all other matters known to it, that, individually or in the aggregate, could reasonably be expected to result in a Material Adverse Effect. None of the reports, financial statements, certificates or other information furnished by or on behalf of Guarantor to Lender in connection with this Agreement and the other Credit Documents or delivered hereunder or thereunder (as modified or supplemented by other information so furnished) contains any material misstatement of fact or omits to state any material fact necessary to make the statements therein, in the light of the circumstances under which they were made, not misleading;

(k)  this Agreement is in proper legal form under the laws of the Country to be valid, legal, effective, enforceable or admissible into evidence in the courts of the Country except for (i) any official or certified translation into the national language of the Country that may be required or (ii) any other procedural steps that have been taken or that can be taken at any time without significant expense or delay and without prejudice to any rights or remedies Lender may have under this Agreement;

(l)  it is not necessary that this Agreement or any other document be filed, registered or recorded with, or executed or notarized before, any court, public office or other authority in the Country or that any registration charge or stamp or similar tax be paid on or in respect of this Agreement or any other document in order to ensure the legality, validity, effectiveness, enforceability, priority or admissibility in evidence of this Agreement;

(m)  Guarantor has executed and delivered this Agreement and the other Credit Documents to which it is a party outside the State of Florida;

(n)  Guarantor is in compliance in all material respects with all laws, rules, regulations and orders of any Governmental Authority applicable to it or its property, including, without limitation, foreign exchange laws, rules and regulations;

(o)  Guarantor is in compliance and not in default of any obligation for borrowed money, any purchase money obligation or any material lease, commitment, contract, instrument or other obligation, except as disclosed to Lender in writing;

(p)  in any proceeding in the Country to enforce this Agreement governed by New York law, the choice of New York law as the governing law of this Agreement will be recognized and applied, the irrevocable submission of it to the non-exclusive jurisdiction of the courts of the State of New York or of the United States of America for the Southern District of New York will be valid, legal, binding and enforceable, and any judgment obtained in such a court will be recognized and enforceable in the Country without reconsideration as to the merits of such judgment, *provided*, *inter alia*, that: (i) such judgment is obtained in compliance with the legal requirements of the jurisdiction of the court rendering such judgment and in compliance with all legal requirements of this Agreement and the other Credit Documents; (ii) such judgment is strictly for the payment of a certain sum of money and has been rendered in an *in personam* action (as opposed to an *in rem* action); (iii) service of process in the action has been served personally on the defendant (service by mail does not constitute personal service in Country); (iv) such judgment does not contravene Mexican law, the public policy of Mexico, international treaties or agreements binding upon Mexico or generally accepted principles of international law; (v) the applicable procedures under the laws of Mexico with respect to the enforcement of foreign judgments (including the issuance of a letter rogatory by the competent authority of such jurisdiction requesting enforcement of such judgment and the certification of such judgment as authentic by the corresponding authorities of such jurisdiction in accordance with the laws thereof) are complied with; (vi) the action in respect of which such judgment is rendered is not the subject matter of a lawsuit among the same parties pending before a Mexican court; (vii) such judgment does not contravene a final judgment of a Mexican court on the same subject between the parties thereto; (viii) the courts of such jurisdiction recognize the principles of reciprocity in connection with the enforcement of Mexican judgments in such jurisdiction; and (ix) such judgment is final in the jurisdiction where obtained;

(q)  neither Guarantor nor, to the knowledge of Guarantor, any agent or other Person acting on behalf of Guarantor, has (i) directly or indirectly, used any corporate funds for unlawful contributions, gifts, entertainment or other unlawful expenses related to foreign or domestic political activity, (ii) made any unlawful

payment to foreign or domestic government officials or employees to any domestic or foreign political parties or campaigns from corporate funds, (iii) failed to disclose fully any contribution made by Guarantor (or made by any Person acting on its behalf of which Guarantor is aware) which is in violation of law, or (iv) violated in any material respect any provision of the Foreign Corrupt Practices Act;

(r) Guarantor has the ability to lawfully pay solely and exclusively in Dollars the total amount which is, or may become, payable by it to Lender under this Agreement and it has complied with any reporting obligations to the applicable Governmental Authority of the Country with respect to exchange controls;

(s) as of the Effective Date, Guarantor has an Adjusted Net Worth of not less than $200 million;

(t) as of the Effective Date, Guarantor has Liquid Assets with an aggregate market value of not less than 100% of the Credit Limit; and

(u) as of the Effective Date, Guarantor has a Debt Service Coverage Ratio of at least 1.25 to 1.00.

## 9. COVENANTS.

So long as any of the Guaranteed Obligations shall remain outstanding and unpaid, Guarantor shall, unless Lender otherwise consents in writing:

(a) Comply in all material respects with all applicable laws, rules, regulations and orders, such compliance to include, without limitation, paying before the same become delinquent all taxes, assessments and governmental charges imposed upon Guarantor or Guarantor's property, except to the extent contested in good faith and by appropriate proceedings and for which appropriate reserves have been established;

(b) Not (i) be or become subject at any time to any law, regulation, or list of any government agency (including, without limitation, the U.S. Office of Foreign Asset Control List or the Mexican Ministry of Finance and Public Credit (*Secretaría de Hacienda y Crédito Público*)) that prohibits or limits Lender from making any advance or extension of credit to Guarantor or from otherwise conducting business with Guarantor, or (ii) fail to provide documentary and other evidence of Guarantor's identity as may be requested by Lender at any time to enable Lender to verify Guarantor's identity or to comply with any applicable law or regulation, including, without limitation, Section 326 of the Patriot Act;

(c) Furnish to Lender from time to time, such other information, including semi-annual personal financial statements (including an income statement, a cash flow statement and a balance sheet which either contains or has a separate statement of liabilities as well as details of all contingent debt), tax returns, investment statements and other information, as Lender may reasonably request;

(d) Reserved;

(e) Notify Lender immediately in the event Guarantor receives any notice that any Obligor or Material Person becomes listed on Section 1 of Executive Order 13224 of September 23, 2001 Blocking Property and Prohibiting Transactions With Persons Who Commit, Threaten to Commit, or Support Terrorism (66 Fed. Reg. 49079 (2001)), or any other list promulgated under the Patriot Act or is indicted, arraigned, or custodially detained on charges involving money laundering or predicate crimes to money laundering;

(f) Reserved;

(g) Deliver to Lender a statement of, or on behalf of, Guarantor, as soon as possible and in any event within five days after the occurrence of each Default (relating to Guarantor) continuing on the date of such statement, setting forth details of such Event of Default and the action that Guarantor has taken and proposes to take with respect thereto;

(h) Provide notice to Lender promptly after the commencement of all actions and proceedings before any court, Governmental Authority or arbitrator affecting Guarantor or any Obligor;

(i) Cause any agent or other Person acting on behalf of Guarantor to comply with the Foreign Corrupt Practices Act, including maintaining and complying with all policies and procedures to ensure compliance with such Act;

(j) Reserved;

(k) Reserved;

(l) Reserved;

(m) Not, and shall cause each other Obligor to not, permit the Dollar Equivalent market value of the Securities Assets constituting Collateral, as determined in accordance with the closing price of the Securities Assets constituting Collateral as quoted on the Mexican Stock Exchange (*Bolsa Mexicana de Valores, S.A.B. de C.V.*) on the Business Day immediately preceding the date of determination (provided that if the closing price is not available as of such day, the market value shall be determined as of the first preceding Business Day such closing price is available) to be less than the Coverage Level;

(n) Within five (5) Business Days of the occurrence of a Coverage Deficiency, shall and shall cause each other Obligor to, provide Lender sufficient additional Securities Assets in order to remedy such Coverage Deficiency. For the avoidance of doubt, the failure to remedy the Coverage Deficiency within five (5) Business Days of the incurrence of such Coverage Deficiency, as contemplated by the previous sentence, shall constitute an Event of Default pursuant to Section 12(a)(ii) of the Note, and Lender may immediately exercise its rights against the Collateral;

(o) Shall not create or suffer to exist, or permit any other Obligor to create or suffer to exist, any lien on, or with respect to, the Collateral; and

(p) Within 15 Business Days from the date hereof, Guarantor and Grantor shall each have caused to be delivered to Lender a Mexican irrevocable power of attorney for lawsuits and collections granted before a Mexican notary public in favor of the Process Agent, duly apostilled.

## 10. TAXES.

Section 9 of the Note is hereby incorporated, *mutatis mutandis*, by reference as if such section were set forth in full herein and Guarantor agrees to observe and perform each of the terms and conditions set forth in Section 9 of the Note as such Section relates to Guarantor.

## 11. DELAY OF SUBROGATION; SUBORDINATION; NO WAIVERS.

(a) Until the Guaranteed Obligations shall have been paid in full, Guarantor shall not exercise its right of subrogation, exoneration, contribution, reimbursement, indemnity or otherwise arising therefrom against Borrower (or any other Obligor) and Guarantor hereby agrees to postpone any right to enforce any remedy which Guarantor now has or may hereafter have against Borrower,

any endorser or any other Obligor, and Guarantor hereby agrees to postpone any benefit of, and any right to participate in, any security or Collateral given to Lender to secure payment of the Guaranteed Obligations or any other liability of Borrower or any other Obligor to Lender.

(b) Guarantor further hereby agrees that any and all claims of Guarantor against Borrower, any endorser or any other Obligor or against any of their respective properties, whether arising by reason of any payment by Guarantor pursuant to the provisions hereof or otherwise, and all indebtedness of Borrower or any other Obligor to Guarantor, shall be subordinate and subject in right of payment to the prior payment, in full, of all the Guaranteed Obligations.  Guarantor also hereby irrevocably waives all set-offs and counterclaims and all presentments, demands for performance, notices of nonperformance, protests, notices of protest, notices of dishonor, and notices of acceptance of this Agreement by any Person who is at any time an obligee with respect to any of the Guaranteed Obligations.  Guarantor further hereby waives all notices of the existence, creation or incurring of new or additional indebtedness, arising either from additional loans extended to Borrower or otherwise, and also waives all notices that the principal amount, or any portion thereof, and/or any interest with respect to any of the Guaranteed Obligations is due, notices of any and all proceedings to collect from the maker, any endorser, any other Obligor, or any other Person of all or any part of the Guaranteed Obligations, and, to the extent permitted by law, notices of exchange, sale, surrender or other handling of any security or collateral given to Lender to secure payment of all or any part of the Guaranteed Obligations.

(c) Guarantor hereby warrants and agrees that each of the waivers set forth in this Agreement are made with its full knowledge of their significance and consequences, with the understanding that events giving rise to any defense waived may diminish, destroy or otherwise adversely affect rights which Guarantor otherwise may have against Borrower, each other Obligor, Lender or any other Person, or against any collateral, and that under the circumstances existing in connection herewith, the waivers are reasonable and not contrary to public policy or law.  If any of the waivers are determined to be contrary to any applicable law or public policy, such waivers shall be effective to the maximum extent permitted by law.

**12.    RIGHT OF SET-OFF.**

In addition to and not in limitation of all rights of set-off that Lender or any of its Affiliates may have under applicable law, Lender and its Affiliates shall have the right at any time and from time to time, to the fullest extent permitted by law, with or without notice to Guarantor, to place an administrative hold upon or set-off, appropriate and apply to the payment or reduction, either in whole or in part, of the amount of the Guaranteed Obligations now or hereafter existing whether or not Lender has made any demand for payment under this Agreement, all deposits (general or special, time or demand, provisional or final) and other obligations at any time held or owing to Lender or any of its Affiliates by Guarantor and to sell, liquidate, transfer and otherwise apply any assets or securities of Guarantor held by Lender, its Affiliate or a securities intermediary (for the benefit of Lender).

**13.    INDEMNIFICATION.**

Guarantor hereby agrees to indemnify and hold harmless Lender, its Affiliates and each of their partners, directors, officers, employees, agents, trustees, administrators, managers, representatives and advisors (an "Indemnified Party") from and against any and all claims, damages, losses, liabilities, costs and expenses (including, without limitation, fees, charges and disbursements of counsel for any Indemnified Party) which may be incurred by or asserted or awarded against any Indemnified Party in connection with, arising out of or by reason of (including, without limitation, in connection with) any investigation, subpoena, litigation or proceeding or preparation of a defense in connection therewith, (x) the execution or delivery of this Agreement (or any agreement or instrument contemplated hereby), the performance by the parties hereto or thereto of their respective obligations hereunder or thereunder or the consummation of the transactions contemplated hereby or thereby, (y) any Advance or the use or proposed use of proceeds of the Advance(s) or (z) any actual or prospective claim, litigation, investigation or proceeding relating to any of the foregoing, whether based on contract, tort or any other theory, whether brought by a third party or by an Obligor, and regardless of whether any Indemnified Party is a party thereto; provided, that such indemnity shall not, as to any Indemnified Party, be available to the extent that such claims, damages, losses, liabilities, costs or expenses are determined by a court of competent jurisdiction by final and non-appealable judgment to have resulted from the gross negligence or willful misconduct of the Indemnified Party.  To the fullest extent permitted by applicable law, Guarantor also agrees not to assert, and hereby waives, any claim against any Indemnified Party, on any theory of liability, for special, indirect, consequential or punitive damages (as opposed to direct or actual damages) arising out of, in connection with, or otherwise relating to this Agreement or any agreement or instrument contemplated hereby, any of the transactions contemplated herein or therein, any Advance or the use or proposed use of the proceeds of the Advance(s). No Indemnified Party shall be liable for any damages arising from the use by unintended recipients of any information or other materials distributed by it through telecommunications, electronic or other information transmission systems in connection with this Agreement or the transactions contemplated hereby or thereby.

**14.    INFORMATION EXCHANGE.**

Lender may exchange information about this Agreement, the Security Agreement, any other Credit Document and other documents with Lender's Subsidiaries, Affiliates and proposed transferees, which shall, for the avoidance of doubt, be subject to the confidentiality provisions in Section 17 of the Note.

**15.    CONTINUING GUARANTY; ASSIGNMENT; TERMINATION.**

(a) This Agreement is a continuing guaranty. Guarantor may not assign or otherwise transfer any of its rights or obligations under this Agreement without the prior written consent of Lender.

(b) Lender may assign or participate to one or more banks or other entities all or a portion of its rights under the Credit Documents. In the event of an assignment of all of its rights, Lender may transfer this Agreement to the assignee. Guarantor shall cooperate with Lender and any assignee or participant in executing any new documents necessary or desirable to complete such assignment or participation, and any related transfer of Collateral. Lender may, in connection with any assignment or participation or proposed assignment or proposed participation, disclose to the assignee or participant or proposed assignee or proposed participant any information relating to Guarantor furnished to Lender by or on behalf of Guarantor; provided, that, except in connection with a pledge or assignment of a security interest as described below, the assignee or participant or proposed assignee or proposed participant shall agree to preserve the confidentiality of any confidential information related to Guarantor received by it from Lender.

Notwithstanding anything herein to the contrary, Lender may at any time pledge or assign a security interest in all or any portion of its rights under this Agreement to secure obligations of Lender, including any pledge or assignment to secure obligations to a Federal Reserve Bank; provided, that no such pledge or assignment shall release Lender from any of its obligations under this Agreement or substitute any such pledgee or assignee for Lender as a party to this Agreement.

(c)   At such time as the Advance(s) and the other Guaranteed Obligations shall have been paid in full (other than contingent indemnification obligations in which no claim has been made or is reasonably foreseeable), this Agreement and all obligations (other than those expressly stated to survive such termination) of Lender and Guarantor hereunder shall terminate, all without delivery of any instrument or any further action by any party. At the request and sole expense of Guarantor following any such termination, Lender shall execute and deliver to Guarantor such documents as Guarantor shall reasonably request to evidence such termination.

**16.   JUDGMENT.**

If for the purpose of obtaining judgment in any court it is necessary to convert a sum due hereunder in one currency ("the first currency") into another currency ("the second currency"), the rate of exchange which shall be applied shall be that at which Lender could purchase the first currency with the second currency in New York City at 11:00 a.m. (New York City time) on the Business Day preceding that on which final judgment is given. Guarantor's obligation in respect of any such sum due from Guarantor to Lender hereunder shall, notwithstanding any judgment in such other currency, be discharged only to the extent that on the Business Day following receipt by Lender of any sum adjudged to be due hereunder in the second currency, Lender may, in accordance with normal banking procedures, purchase the first currency with the second currency and, if the first currency so purchased is less than the sum originally due to Lender in the first currency, Guarantor agrees, as a separate obligation and notwithstanding any such judgment, to indemnify Lender against such loss.

**17.   WAIVER OF PRESENTMENT.**

Guarantor hereby waives presentment for payment, demand, notice of dishonor and protest of the Note.

**18.   SUCCESSORS AND ASSIGNS.**

Guarantor's obligations under this Agreement will also be binding on its heirs, executors, successors, permitted assigns and legal representatives, as applicable. Guarantor's successors and permitted assigns shall include, without limitation, a receiver, successor trustee or debtor-in-possession for Guarantor.

**19.   NOTICES.**

All notices to be given under this Agreement shall be in writing and sent by certified or registered mail, return receipt requested, by overnight delivery service, with all charges prepaid, by messenger, e-mail or facsimile transmission or by any other method then authorized by Lender in writing. Notices shall be sent to the address for Lender and Guarantor as set forth on Schedule 1 attached hereto or the most recent address of Guarantor shown on Lender's account records. Notice will be deemed received, if to Lender, upon actual receipt, and if to Guarantor, on the fourth Business Day after depositing such notice in the United States Post Office in the case of certified or registered mail, or upon reliable confirmation of delivery if sent by any other means. If Guarantor refuses any such delivery, a notice so refused shall nonetheless be deemed delivered.

**20.   INTERPRETATION.**

For purposes of this Agreement, the words "asset" and "property" shall be construed to have the same meaning and effect and to refer to any and all tangible and intangible assets and properties, including cash, securities, accounts and contract rights. The definitions given for any defined terms in the Note and herein shall apply equally to both the singular and plural forms of the terms defined and, wherever from the context it appears appropriate, pronouns stated in the masculine, feminine or neuter gender shall include the masculine, feminine and neuter genders. Unless the context otherwise requires, references herein to: (a) Sections, Exhibits and Schedules mean the Sections of, and Exhibits and Schedules attached to, this Agreement; (b) an agreement, instrument or other document means such agreement, instrument or other document as amended, amended and restated, supplemented or otherwise modified from time to time to the extent permitted by the provisions thereof; and (c) a statute means such statute as amended from time to time and includes any successor legislation thereto and any regulations promulgated thereunder. This Agreement shall be construed without regard to any presumption or rule requiring construction or interpretation against the party drafting an instrument or causing any instrument to be drafted. The Exhibits and Schedules referred to herein shall be construed with, and as an integral part of, this Agreement to the same extent as if they were set forth verbatim herein.

**21.   HEADINGS.**

The headings in this Agreement are for reference only and shall not affect the interpretation of this Agreement.

**22.   SEVERABILITY.**

In case any term, provision in or obligation under this Agreement or any other Credit Document or any other document related to this Agreement shall be invalid, illegal or unenforceable in any jurisdiction, the validity, legality and enforceability of the remaining terms, provisions or obligations, or of such term provision or obligation in any other jurisdiction, shall not in any way be affected or impaired thereby.

**23.   COUNTERPARTS; ENTIRE AGREEMENT; EXECUTION.**

Any amendments, waivers, consents or supplements hereto may be executed in counterparts (and by different parties hereto in different counterparts), each of which shall constitute an original, but all taken together shall constitute a single contract. This Agreement and the other Credit Documents constitute the entire understanding between the parties hereto with respect to the subject matter hereof and thereof and supersede any prior or contemporaneous agreements, written or oral, with respect thereto. Guarantor may effectively deliver an executed counterpart of a signature page of this Agreement by facsimile or in electronic ("pdf" or "tif") format, however Guarantor shall also deliver to Lender manually-executed originals of this Agreement, but the failure of Guarantor to do so shall not affect the validity, enforceability or binding effect of this Agreement as against Guarantor.

**24.   GOVERNING LAW.**

This Agreement and any claim, controversy, dispute or cause of action (whether in contract or tort or otherwise) based upon, arising out of or relating to this Agreement and the transactions contemplated hereby and thereby shall be governed by, and construed in accordance with, the laws of the State of New York.

**25.   JURISDICTION; WAIVER OF VENUE; SERVICE OF PROCESS.**

(a)   Without limiting the right of Lender to bring any action, litigation, proceeding of any kind whatsoever, whether in law or equity, or whether in contract or tort or otherwise (an "Action")

against Guarantor or against the property of Guarantor arising out of or relating to any obligation of Guarantor under this Agreement in the courts of other jurisdictions, Guarantor hereby irrevocably and unconditionally agrees to submit to the non-exclusive jurisdiction of the Supreme Court of the State of New York sitting in New York County and of the United States District Court of the Southern District of New York, and any appellate court from any thereof, in any Action arising out of or relating to this Agreement, or for recognition or enforcement of any judgment and Guarantor hereby irrevocably and unconditionally agrees that all claims in respect of any such Action may be heard and determined in such New York State court or, to the extent permitted by law, in such Federal court.

(b)     Guarantor hereby irrevocably waives, to the fullest extent it may effectively do so by applicable law, any objection that it may now or hereafter have to the laying of venue of any Action arising out of or relating to this Agreement in any court referred to in paragraph (a) of this Section 25.  Guarantor waives, to the fullest extent permitted by applicable law, the defense of an inconvenient forum to the maintenance of any Action in any such court.

(c)     To the extent required pursuant to the Note, Guarantor hereby irrevocably designates, appoints and empowers CT Corporation System (or any replacement thereof as provided below, the "Process Agent"), with offices at 111 Eight Avenue, 13th Floor, New York, New York 10011, as its designee, appointee and agent to receive, accept and acknowledge for and on its behalf, and in respect of its property, service of any and all legal process, summons, notices and documents which may be served in any Action.  If for any reason such designee, appointee or agent shall cease to be available to act as such, Guarantor agrees to designate a new designee, appointee and agent in New York City on the terms and for the purposes of this provision satisfactory to Lender.  Within 15 Business Days from the date hereof, Guarantor shall have caused to be delivered to Lender a Mexican irrevocable power of attorney for lawsuits and collections granted before a Mexican notary public in favor of the Process Agent, duly apostilled.  Guarantor hereby irrevocably agrees that the summons and complaint or any other process in any Action in any jurisdiction may be served by first-class, registered, certified or overnight mail addressed to any address specified as a notice address for Guarantor hereunder or by hand delivery to an individual Person of suitable age and discretion at any of such addresses. Such service will be complete on the date such process is so mailed or delivered. Guarantor may also be served in any other manner permitted by applicable law.

### 26.    WAIVER OF IMMUNITY.

To the extent that Guarantor may be or become entitled to claim for itself or its property or revenues, any immunity on the ground of sovereignty or the like from suit, court jurisdiction, attachment prior to judgment, attachment in aid of execution of a judgment or execution of a judgment, and to the extent that, in any jurisdiction, there may be attributed such an immunity (whether or not claimed), Guarantor hereby irrevocably agrees not to claim and hereby irrevocably waives such immunity with respect to its obligations under this Agreement and agrees that the waivers set forth in this sentence shall have the fullest scope permitted under the Foreign Sovereign Immunities Act and applicable law and are intended to be irrevocable for purposes of such Act or applicable law.

### 27.    JURY TRIAL WAIVER.

EACH PARTY HERETO HEREBY IRREVOCABLY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM ARISING OUT OF OR RELATING TO THIS AGREEMENT OR THE TRANSACTIONS CONTEMPLATED HEREBY OR THEREBY WHETHER BASED ON CONTRACT, TORT OR ANY OTHER THEORY. EACH PARTY HERETO (A) CERTIFIES THAT NO AGENT, ATTORNEY, REPRESENTATIVE OR ANY OTHER PERSON HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT SUCH OTHER PERSON WOULD NOT SEEK TO ENFORCE THE FOREGOING WAIVER IN THE EVENT OF LITIGATION, AND (B) ACKNOWLEDGES THAT IT AND THE OTHER PARTIES HERETO HAVE BEEN INDUCED TO ENTER INTO THIS AGREEMENT AND THE OTHER CREDIT DOCUMENTS BY, AMONG OTHER THINGS, THE MUTUAL WAIVERS AND CERTIFICATIONS IN THIS SECTION 27.

### 28.    EFFECT OF WAIVERS.

Each waiver of any rights by Guarantor contained herein is given by such Guarantor knowingly and intentionally and unless otherwise expressly provided herein, for all times and forever.

### 29.    NO DEEMED WAIVERS; REMEDIES CUMULATIVE.

No failure or delay by Lender in exercising any right or power hereunder shall operate as a waiver thereof, nor shall any single or partial exercise of any such right or power, or any abandonment or discontinuance of steps to enforce such a right or power, preclude any other or further exercise thereof or the exercise of any other right or power.  The rights and remedies of Lender hereunder are cumulative and are not exclusive of any rights or remedies that it would otherwise have.  Failure by Lender at any time or times hereafter to require strict performance by Borrower, Guarantor or any other Person of any of the provisions, warranties, terms and conditions contained in the Credit Documents shall not waive, affect or diminish any right of Lender at any time or times hereafter to demand strict performance thereof.  Any final determination by a court of competent jurisdiction of the amount of the Guaranteed Obligations, shall be conclusive and binding on Guarantor irrespective of whether Guarantor was party to the suit or action in which such determination was made.  No waiver of any provision of this Agreement or consent to any departure by any Obligor therefrom shall in any event be effective unless the same shall be permitted by Section 30, and then such waiver or consent shall be effective only in the specific instance and for the purpose for which given.  Without limiting the generality of the foregoing, the making of an Advance shall not be construed as a waiver of any breach of this Agreement, regardless of whether Lender may have had notice or knowledge of such breach at the time.

### 30.    AMENDMENTS.

No term or provision of this Agreement may be waived, altered, modified or amended except in writing signed by Guarantor and Lender.

### 31.    SURVIVAL.

All covenants, agreements, representations and warranties made by Guarantor herein (including for the avoidance of doubt, the provisions of Section 8) and in the certificates or other instruments delivered in connection with or pursuant to this Agreement shall be considered to have been relied upon by Lender and shall survive the execution and delivery of this Agreement and the making of any Advance, regardless of any investigation made by Lender or on its behalf and notwithstanding that Lender may have had notice or knowledge of any incorrect representation or warranty at the time any credit is extended under any Credit Document, and shall continue in full force and effect as long as the principal of or any accrued interest on any Advance or any fee or any other amount payable under this Agreement is outstanding and so long as any other Guaranteed Obligations (including for the avoidance of doubt Derivative

Obligations) are outstanding. The provisions of Section 10 and Sections 12 to 14 (inclusive), 15(a), 15(b), 16 to 32 (inclusive) and 34 to 36 (inclusive) shall survive and remain in full force and effect regardless of payment in full of all Advances and other Guaranteed Obligations and the termination of this Agreement or any provision hereof.

### 32.     ENGLISH LANGUAGE.

This Agreement has been negotiated and executed in English. All certificates, reports, notices and other documents and communications given or delivered by any party hereto pursuant to this Agreement shall be in English or, if not in English, accompanied by a certified English translation thereof. The English version of any such document shall control the meaning of the matters set forth herein.

### 33.     CREDIT REPORTS.

Guarantor hereby agrees and authorizes Lender and its Affiliates to obtain credit reports on it from time to time until the Guaranteed Obligations are paid in full.

### 34.     INCONSISTENCY.

In the event of any conflict or inconsistency between the provisions of (a) the Note and this Agreement, the provisions of the Note shall prevail *mutatis mutandis*; and (b) any other Credit Document and this Agreement, the provisions of this Agreement shall prevail *mutatis mutandis*.

### 35.     PATRIOT ACT NOTICE.

Guarantor understands, and shall be responsible for notifying each other Obligor, that pursuant to the requirements of the Patriot Act, Lender is required to obtain, verify and record information that will allow Lender to identify such Obligor in accordance with the Patriot Act. Guarantor shall promptly following a request by Lender from time to time, provide all documentation and other information that Lender requests in order to comply with its ongoing obligations under the Patriot Act.

### 36.     KEEPWELL.

To the extent Guarantor is a Qualified ECP Guarantor (as defined below), such Qualified ECP Guarantor hereby absolutely, unconditionally and irrevocably undertakes to provide such funds or other support as may be needed from time to time by Borrower or any other Person to honor all of its obligations under this Agreement in respect of Specified Derivative Obligations; provided, that such Qualified ECP Guarantor shall only be liable under this Section 36 for the maximum amount of such liability that can be hereby incurred without rendering its obligations under this Section 36, or otherwise under this Agreement, voidable under applicable law relating to fraudulent conveyance or fraudulent transfer, and not for any greater amount, in accordance with Section 2(c). The obligations of such Qualified ECP Guarantor under this Section 36 shall remain in full force and effect until a discharge of the Guaranteed Obligations in accordance with the terms of this Agreement and the other Credit Documents. Such Qualified ECP Guarantor intends that this Section 36 constitute, and this Section 36 shall be deemed to constitute, a "keepwell, support, or other agreement" for the benefit of Borrower and any other Person party to the Credit Documents for all purposes of Section 1a(18)(A)(v)(II) of the Commodity Exchange Act. Guarantor shall be a "Qualified ECP Guarantor" if, in respect of any Specified Derivative Obligation, Guarantor has total assets exceeding $10,000,000 at the time the relevant guarantee or grant of the relevant security interest becomes effective with respect to such Specified Derivative Obligation or such other Person as constitutes an "eligible contract participant" under the Commodity Exchange Act or any regulations promulgated thereunder and can cause another person to qualify as an "eligible contract participant" at such time by entering into a keepwell under Section 1a(18)(A)(v)(II) of the Commodity Exchange Act.

*Signature on the following page.*

IN WITNESS WHEREOF, this Agreement has been duly executed on the day and year first set forth above.

                                          Rodrigo Lebois Mateos

By: _____

**SCHEDULE 1**

**Notice Address:**

**Lender:**

Citibank, N.A.
c/o Citi Private Bank
201 S. Biscayne Blvd. Suite 3300,
Miami, FL, 33131
Attn: Thomas M. Campbell
Email: thomas.m.campbell@citi.com

**with a copy to:**

**Originating Office**

**Guarantor:**

**Rodrigo Lebois Mateos**

**Address**

Av. Presidente Masaryk 111, Piso 5
Col. Polanco V Sección, CP 11560
Ciudad de México, México

**Email:** alo@aralpacapital.mx