UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CITIBANK, N.A.,<br><br>                Plaintiff,<br><br>   -against-<br><br>ARALPA HOLDINGS LIMITED PARTNERSHIP AND RODRIGO LEBOIS MATEOS,<br><br>               Defendants. | Case No. 22-cv-08842 (JLR) |

## DECLARATION OF MARIO MEZA

Pursuant to 28 U.S.C. § 1746, I, Mario Meza, declare as follows:

1.  I am a Director, Senior Credit Officer at Citibank, N.A. ("Citibank").

2.  I submit this declaration in support of Citibank's motion for the issuance of a writ of execution and turnover order against One57 36B LLC ("One57") and Aralpa Miami Investments LLC ("Aralpa Miami"), for prejudgment attachment and a temporary restraining order against One57 and Aralpa Miami, and to compel Rodrigo Lebois Mateos to provide responses to the information subpoena served on him.

3.  I make this declaration based on my personal knowledge, upon my review of the documents described herein and other relevant documents, and upon my conversations with other Citibank personnel involved in the administration and monitoring of the multi-draw term note (the "Note") executed by Aralpa Holdings Limited Partnership. ("Aralpa Holdings") and the related guaranty (the "Guaranty") signed by Rodrigo Lebois Mateos ("Lebois"). During most of the events described herein, I was Mexico Risk Head for Citibank and was based in Mexico City. As described further below, I have been involved in the monitoring and administration of Citibank's loan to Aralpa Holdings and the Guaranty. As such, I have personal knowledge of the

facts set forth herein, unless stated to be on information and belief, in which case I state the source of the information and believe it to be true.

4.  Some of the information and documents described and attached hereto I obtained from Citibank's records kept in relation to the Note and Guaranty.  I also obtained documents from Kathia Sanchez, an Investment Finance Specialist at Citibank who is based in Mexico City and has been involved in Citibank's commercial relationship with Lebois and Aralpa Holdings. Other information that I set out below was provided to me by Maria Ximena Serrano, a Director of Structured Lending at Citibank, who is based in Miami, Florida.

5.  In this declaration, I attach and quote from certain documents that are written in Spanish.  I am a native Spanish speaker and, during the summer of 2022, I participated along with other Citibank personnel in certain Spanish language discussions with Lebois and his representatives described below.

**LEBOIS' REPRESENTATIONS REGARDING HIS ASSETS IN SUMMER OF 2022**

6.  Following certain defaults on the Note on March 31, 2022, Lebois and his representatives made various representations to Citibank in order to obtain waivers of the defaults on the debt, which I describe below.  These included representations about the financial health of Unifin Financiera, SAB de CV SOFOM ENR ("Unifin") (whose shares form part of the collateral supporting the Note), the existence of certain unencumbered cash and Lebois' own extensive personal wealth and portfolio of assets.

7.  On April 13, 2022, Citibank sent Aralpa Holdings and Lebois a Notice of Event of Default and Reservation of Rights as a result of Aralpa Holdings' default on the Note.  A copy of the Notice of Event of Default and Reservation of Rights is attached hereto as Exhibit A.

8.  On April 18, 2022, certain of my colleagues at Citibank, including the bankers with responsibility for the loan to Aralpa Holdings, held a call with José Llamas, the head of Lebois' family office. I understand that Mr. Llamas plays various roles in the management of Lebois' wealth. Mr. Llamas also signed the Note on behalf of Aralpa Holdings in his capacity as Manager of its general partner. During the call, Citibank advised Mr. Llamas that it would require updated financial information for Lebois. In response, Mr. Llamas advised that such updated financials were already being prepared. A copy of Ms. Sanchez's notes from the call is attached hereto as Exhibit B.

9.  Ms. Sanchez advises me that on May 11, 2022, Citibank had another call with Mr. Llamas regarding a collateral coverage breach under the Note and Lebois' request for a waiver of default. On that call, Mr. Llamas advised Citibank that proceeds from the pending sale of certain of Lebois' assets would be deposited with Citibank shortly. He also said that other liquidity events in the future would be used to pay off the indebtedness in full. Mr. Llamas committed on the call to sending updated financial information for Lebois. A copy of Ms. Sanchez's notes from the call is attached hereto as Exhibit C.

10. Ms. Sanchez advises me that on the basis of Mr. Llamas' representations on behalf of Aralpa Holdings and Lebois as well as a compliance certificate Mr. Llamas executed certifying that the aggregate unencumbered liquid assets of Aralpa Holdings and Lebois was 40.65% of the total indebtedness under the Note, on May 11, 2022, Citibank issued a limited waiver in respect of certain identified defaults under the Note and Guaranty until July 31, 2022. A copy of the waiver is attached hereto as Exhibit D.

11. Following the issuance of this limited waiver, Mr. Llamas provided various information about Lebois' assets to Citibank, including cash held by an entity called Aralpa

Inversiones SL ("Aralpa Inversiones").  Attached hereto as Exhibits E and F are copies of a June 16 email from Mr. Llamas to Ms. Sanchez and June 21, 2022 emails between Ms. Sanchez and Mr. Llamas.  In an email on June 21, 2022, after Mr. Llamas sent a document showing bank accounts in the name of Aralpa Inversiones holding over €10 million, Ms. Sanchez asked Mr. Llamas (in Spanish) "please indicate the ownership structure of Aralpa Inversiones SL".  Mr. Llamas responded "*Todas estas son de Rodrigo Lebois*", which means "all of these belong to Rodrigo Lebois".

12. My colleague, Ms. Serrano, became involved in Citibank's discussions with Mr. Lebois in late July 2022, as the expiration of the Citibank's limited waiver approached.  Lebois requested a further waiver of the defaults.  Like Lebois and myself, Ms. Serrano is a native Spanish speaker.  The discussions with Lebois and his representatives in July and August 2022 that I describe below took place largely in Spanish.  I participated in some of these discussions and Ms. Serrano advised me of the content of the discussions I did not participate in personally.

13. Our primary concern during the discussions about an additional waiver was to obtain commitments from Lebois that would give Citibank access to additional liquidity that was independent of the value of the shares of Unifin.  Ms. Serrano advises me that she made this clear in her discussions with Lebois and his representatives.  It was in this context that they provided various information and representations about Lebois' assets through late July and August 2022.

14. On July 28, 2022, Mr. Llamas sent an email to Citibank attaching Lebois' personal financial statement and other financial documents to support Lebois' request for a further waiver of the defaults under the Note and Guaranty.  A copy of the email (in Spanish)

4

along with attachments are attached hereto as Exhibit G. In the email, Mr. Llamas wrote (in Spanish) "*I have attached the updated cash flow [statement] as well as Rodrigo's PFS*".

15. The attachments to Mr. Llamas' email include a personal financial statement of Lebois that purports to list his total personal assets in the amount of $631,747,635.91 as of June 30, 2022. Another attachment to Mr. Llamas' July 28 email is a bank statement from the Spanish bank Santander showing available cash in five bank accounts totaling €14,638,970.14, three of which are in the name of Aralpa Inversiones, not Aralpa Holdings or Lebois. In Mr. Llamas' email and in a compliance certificate (described and attached below), Lebois and his representatives stated or implied that Lebois controlled these funds.

16. On July 29, 2022, I participated on a call with Lebois and his representatives. Ms. Serrano and Ms. Sanchez were also on the call, as was Lebois' daughter, Almudena Lebois Ocejo ("Almudena"), who led a discussion about the extent and sufficiency of Lebois' personal assets. Among other things, Almudena emphasized that Lebois owned substantial investments in Spanish real estate projects, including the "Marques de Salamanca" project in Madrid, which is an asset listed on Lebois' June 30, 2022 personal financial statement that was provided to Citibank. She said that Lebois owned these "via Terralpa", which referred to Terralpa Investments Fund 1 Limited Partnership ("Terralpa"), an entity she described as a Canadian limited partnership where they were the controlling investors. She said that they would receive tens of millions of dollars shortly from such investments, and that $20 million of the proceeds of these investments would be deposited into a liquid portfolio at Citibank. Ms. Sanchez has provided me with her notes from the call, which are attached hereto as Exhibit H.

17. Following our phone call, on August 2, 2022, Mr. Llamas requested a further waiver from Citibank on behalf of Lebois. A copy of an email (in Spanish) from Mr. Llamas

dated August 2, 2022 is attached hereto as Exhibit I. On the basis of the various representations made in the preceding weeks, Citibank agreed to a further limited waiver of the defaults until October 15, 2022.

18.  On August 8, 2022, Aralpa Holdings delivered to Citibank a further compliance certificate signed by Mr. Llamas in his capacity as a director of Aralpa Holdings' general partner. It certifies that the combined unencumbered liquid assets (specifically cash) held by Aralpa Holdings and Lebois totaled $14,835,000 or 42% of the indebtedness under the Note in order to maintain compliance with the Note and Guaranty. A copy of the certificate is attached hereto as Exhibit J.

19.  Ms. Serrano advises me that on August 11, 2022, she participated on a call with various Citibank colleagues and Mr. Llamas, during which Mr. Llamas advised that Lebois was expecting to receive $45 million of cash flow for the period between September and December 2022, including from a real estate investment in Spain. Mr. Llamas also advised Ms. Serrano (including in a subsequent call on the same day) that Lebois would receive by the first week of September $21.5 million from the proceeds of a sale of a Hyatt hotel in Mexico, another asset listed on Lebois' June 30, 2022 personal financial statement, which funds would be deposited in a Citibank account.

20.  On August 12, 2022, I participated along with Ms. Serrano and other Citibank colleagues on a call with Lebois, Almudena, and Mr. Llamas. Lebois told us that his personal finances remained strong and unencumbered by other liabilities. He advised that he would receive $45 million of cash inflows between September and December 2022, which funds would be deposited with Citibank.

21. On August 15, 2022, I participated along with Ms. Serrano and other Citibank colleagues on a call with Almudena and Mr. Llamas. Among other things, Almudena and Mr. Llamas discussed the possibility of transferring the $14 million of cash being held by Aralpa Inversiones at Santander into a Citibank account and pledge it to support the Note. (She subsequently advised that these funds could not be transferred as they were needed to support one of the Spanish projects). On the call, Mr. Llamas promised to provide further details on significant assets of Lebois that were available to satisfy the outstanding debt or pledge in support of it. Among other assets, Almudena described Lebois' interest in Terralpa as a $25.9 million real estate fund in Spain that owns six buildings that were being renovated to be sold. This $25.9 million interest in a Spanish real estate fund is an asset listed on Lebois' June 30, 2022 personal financial statement.

22. Ms. Serrano advises me that on August 17, 2022, she joined a further call with Almudena, who told her that Lebois expected an inflow of various funds related to his real estate investments in Spain between September and December 2022, including $21.7 million from the proceeds of the sale of a Hyatt hotel, $12 million from the sale of the Marques de Salamanca building and $8 million from the sale of some Terralpa fund assets.

23. Ms. Serrano advises me that on August 19, 2022 she had another call with Almudena, who told her that Lebois owned extensive artwork and asked whether the artwork could serve as collateral for the loan. Following the call, on August 22, 2022, Almudena sent Ms. Serrano a list of artwork owned by Lebois with an estimated value of $27,637,175.25, which is nearly equal to the $32.1 million of artwork listed on Lebois' June 30, 2022 personal financial statement. A copy of the August 22, 2022 and the attached list of artwork is attached hereto as Exhibit K.

24. Despite Lebois' various commitments to deposit additional funds with Citibank, he never did.

25. Based on the information that Citibank and its legal counsel have since been able to obtain about Lebois' various interests, Lebois' assets are organized in a very complex and opaque structure, involving multiple levels of corporations and partnerships between Lebois and the ultimate investment assets. I note that during our various discussions in July and August of 2022, Lebois and his representatives did not disclose the complexity of this structure and instead spoke in terms of assets that *belonged to* Mr. Lebois, rather than distant interests mediated through multiple levels of corporate and partnership interest.

26. At no point during the discussions in the summer of 2022 did Lebois, Almudena, or Mr. Llamas ever state that Lebois did not own the assets on the personal financial statement dated June 30, 2022, including the "Personal Real Estate" described as "NY, NY" and "Miami, FL (Fisher Island)." To the contrary, Lebois, Almudena, and Mr. Llamas repeatedly represented that the assets on the personal financial statement belonged to Lebois.

27. I declare under penalty of perjury that the foregoing is true and correct.

Executed on December 11, 2023.

Mario Meza