# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

CITIBANK, N.A.,

                Plaintiff,

           v.

ARALPA HOLDINGS LIMITED PARTNERSHIP AND
RODRIGO LEBOIS MATEOS,

                Defendants.

Case No. 1:22-cv-08842 (JLR)

## MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF CITIBANK, N.A.'S MOTION FOR THE ISSUANCE OF A WRIT OF EXECUTION AND TURNOVER ORDER TO ENFORCE JUDGMENT AGAINST ONE57 36B, LLC AND ARALPA MIAMI INVESTMENTS, LLC, FOR PREJUDGMENT ATTACHMENT, AND TO COMPEL RESPONSES TO INFORMATION SUBPOENA, ON BEHALF OF DEFENDANTS AND ONE57 36B, LLC AND ON BEHALF OF ARALPA MIAMI INVESTMENTS, LLC FOR THE LIMITED PURPOSE OF CONTESTING PERSONAL JURISDICTION

**KOBRE & KIM LLP**

800 Third Avenue
New York, New York 10022
Tel. (212) 488-1200
Fax (212) 488-1220

*Attorneys for Defendants*
*Aralpa Holdings Limited Partnership and*
*Rodrigo Lebois Mateos and Third Party*
*One57 36B, LLC*

*Special appearance for Third Party Aralpa*
*Miami Investments, LLC for the limited*
*purpose of contesting personal jurisdiction*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT .................................................................................... 1

FACTUAL BACKGROUND .................................................................................... 4

I.    Citibank Begins a Private Banking Relationship with Lebois that Includes Lebois Sharing Information About His Personal Assets and Corporate Holding Structures ........ 4

II.   Citibank Makes a Loan Secured by Unifin Shares as the Sole Commercially Bargained for Collateral ............................................................................................................ 4

III.  Lebois Continues to Provide Asset Information to Citibank that Includes Corporate Holdings ............................................................................................................... 5

IV.   During the Same Period Before the Lawsuit, Citibank Deals with and Provides Mortgages to Aralpa Miami and One57 ................................................................. 5

V.    Aralpa Miami and One57 Are Wholly Owned by Aralpa Capital and Independently Managed .............................................................................................................. 6

VI.   Following the Deterioration in Unifin Shares, Citibank Waives Alleged Technical Events of Default and Seeks to Shore Up the Collateral ........................................... 6

VII.  As the Waiver Period Nears an End, Citibank Proposes that the Same Miami and New York Properties It Is Now Pursuing Be Pledged as Collateral in Exchange for Forgoing Suit ....................................................................................................... 7

ARGUMENT ....................................................................................................... 8

I.    Aralpa Miami Is Not Subject to the Jurisdiction of This Court ................................. 8

II.   Citibank Must Overcome the Presumption of Corporate Independence as to Each Relevant Corporate Entity to Obtain Turnover or Attachment ................................. 9

   A.    New York's Choice of Law Rules and Applicable Law ............................. 9

   B.    Presumption of Corporate Independence ............................................... 10

III.  Citibank's Motion Fails Because It Does Not Even Address Reverse Piercing the Corporate Veil of the Third Parties' Sole Owner Aralpa Capital ................................ 11

IV.   Citibank Cannot Reverse Pierce the Corporate Veil of Aralpa Miami Under Applicable Law 12

   A.    Georgia Law Prohibits Reverse Piercing Aralpa Miami's Corporate Veil ............. 12

   B.    If Another Law is Applied, It Should Be Florida Law, and Citibank Cannot Meet That Law's Stringent Requirements to Reverse Pierce the Corporate Veil ............ 14

      1.    Citibank Has Not Demonstrated that Aralpa Miami Was Formed or Used to Secrete Assets to Avoid Preexisting Personal Liability ............................. 15

      2.    Citibank Has Not Demonstrated the Requisite Domination or Control .................. 16

   V.    Whatever Law Is Applied, Citibank Cannot Reverse Pierce the Corporate Veil of One57 or Aralpa Miami ................................................................................. 19

i

    A.    One57's and Aralpa Miami's Formation Before the Judgment and Citibank's Prior Dealings Belie any Allegations of the Requisite Fraud........................................... 20

    B.    Citibank Has Not Demonstrated the Requisite Domination or Control ................... 22

VI.  Citibank Is Not Entitled to Prejudgment Attachment ....................................................... 23

VII. Lebois Should Not Be Compelled to Provide Further Information ................................. 24

**CONCLUSION** ......................................................................................................................... **25**

# TABLE OF AUTHORITIES

**Cases**                                                                      **Page(s)**

*138-77 Queens Blvd LLC v. Silver*,
   2023 WL 4564796 (E.D.N.Y. July 17, 2023)...................................................................... 23

*Acree v. McMahan*,
   276 S.E.2d 873 (Ga. 2003) ..................................................................................................... 13

*Bautista v. ABC Corp.*,
   2023 WL 5917636 (S.D.N.Y. Sept. 11, 2023) ...................................................................... 11

*Braswell v. Ryan Invs., Ltd.*,
   989 So. 2d 38 (Fla. 3d DCA 2008)......................................................................................... 15

*Corrugated Replacements, Inc. v. Johnson*,
   340 S.E.2d 238 (Ga. Ct. App. 2017)................................................................................ 12, 13

*Dania Jai–Alai Palace, Inc. v. Sykes*,
   450 So.2d 1114 (Fla. 1984) .................................................................................................... 16

*David v. Glemby Co.*,
   717 F. Supp. 162 (S.D.N.Y. 1989) ....................................................................................... 20

*Ezra v. Wilton Group Inc.*,
   2020 WL 4016235 (N.Y. Sup. Ct. July 16, 2020) .................................................................. 9

*Fed. Nat'l Mortg. Ass'n v. Olympia Mortg. Corp.*,
   724 F. Supp. 2d 308 (E.D.N.Y. 2010) .................................................................................. 18

*Fletcher v. Atex, Inc.*,
   861 F. Supp. 242 (S.D.N.Y. 1994) ................................................................................... 9, 12

*Freeman v. Complex Computing Co.*,
   119 F.3d 1044 (2d Cir. 1997) ......................................................................................... 10, 22

*Gartner v. Snyder*,
   607 F.2d 582 (2d Cir. 1979) ................................................................................................. 10

*Goldman v. Chapman*,
   844 N.Y.S.2d 126 (NY. App. Div. 2007).......................................................................... 20, 22

*Guptill Holding Corp. v. State of New York*,
   307 N.Y.S.2d 970 (NY. App. Div. 1970).............................................................................. 20

*Highland CDO Opportunity Master Fund, L.P. v. Citibank, N.A.*,
270 F. Supp. 3d 716 (S.D.N.Y. 2017) ...................................................... 22

*In re Charnock*,
97 B.R. 619 (Bankr. M.D. Fla. 1989) ...................................................... 18

*In re Checiek*,
492 B.R. 918 (Bankr. M.D. Fla. 2013) .................................................... 14

*In re Hillsborough Holdings Corp.*,
166 B.R. 461 (Bankr. M.D. Fla.) ............................................................. 17

*In re Knight*,
574 B.R. 800 (Bankr. N.D. Ga. 2017) ..................................................... 13

*In re Maghazeh*,
310 B.R. 5 (Bankr. E.D.N.Y. 2004) ......................................................... 23

*In re Nilhan Fin., LLC*,
652 B.R. 381 (Bankr. M.D. Fla. 2023) ............................ 11, 13, 14, 17

*In re Patel*,
632 B.R. 903 (Bankr. M.D. Fla. 2021) .............................................. 15, 17

*In re Patel*,
2021 WL 3262421 (Bankr. M.D. Fla. July 30, 2021) ............................ 15

*In re Stage Presence, Inc.*,
592 B.R. 292 (Bankr. S.D.N.Y. 2018) .................................................... 10

*In re Webster*,
629 B.R. 654 (Bankr. N.D. Ga. 2021) .................................................. 2, 13

*Johnson Enters. of Jacksonville, Inc. v. FPL Grp., Inc.*,
162 F.3d 1290 (11th Cir. 1998) ............................................................... 17

*Joint Venture Acquisition v. Misra*,
1992 WL 212352 (S.D.N.Y. Aug. 25, 1992)............................................ 9

*JSC Foreign Econ. Ass'n Technostroyexport v. Int'l Dev. & Trade Servs., Inc.*,
295 F. Supp. 2d 366 (S.D.N.Y. 2003) ..................................................... 20

*Kalb, Voorhis & Co. v. Am. Fin. Corp.*,
8 F.3d 130 (2d Cir.1993) ............................................................... 9, 13, 14

*Madison Realty, Inc. v. Neiss*,
    676 N.Y.S.2d 672 (N.Y. App. Div. 1998) ................................................... 14

*Metro. Transp. Auth. v. Triumph Advert. Prods., Inc.*,
    497 N.Y.S.2d 673 (N.Y. App. Div. 1986) ............................................. 12, 22

*Morris v. N.Y, State Dep't of Tax'n & Fin.*,
    82 N.Y.2d 135 (1993) ..................................................................................... 10

*N.Y. State Teamsters Conf. Pension & Ret. Fund v. Hoh*,
    554 F. Supp. 519 (N.D.N.Y. 1982) ................................................................ 21

*Plunket v. Est. of Doyle*,
    2009 WL 73146 (S.D.N.Y. Jan. 12, 2009) ..................................................... 11

*Rashdan v. Sheikh*,
    706 So. 2d 357 (Fla. 4th DCA1998) .............................................................. 16

*Reid v. Morris*,
    845 S.E.2d 590 (Ga. 2020) ............................................................................ 13

*SE Prop. Holdings, LLC v. Phillips*,
    2016 WL 11529614 (N.D. Fla. May 4, 2016) ......................................... 15, 16

*Segal v. Forastero, Inc.*,
    322 So. 3d 159 (Fla. 3d DCA 2021) ............................................................. 17

*Sonora Diamond Corp. v. Superior Ct.*,
    83 Cal. App. 4th 523 (Cal. Ct. App. 2000) ................................................... 11

*Soroof Trading Dev. Co. v. GE Microgen, Inc.*,
    283 F.R.D. 142 (S.D.N.Y. 2012) ................................................................... 11

*Sylmark Holdings Ltd. v. Silicone Zone Int'l Ltd.*,
    783 N.Y.S.2d 758 (Sup. Ct. 2004) ................................................................ 24

*TNS Holdings, Inc. v. MKI Sec. Corp.*,
    92 N.Y.2d 335 (N.Y. 1998) ........................................................................... 12

*Tycoons Worldwide Grp. (Thailand) Pub. Co. v. JBL Supply Inc.*,
    721 F. Supp. 2d 194 (S.D.N.Y. 2010) .......................................................... 23

*United States v. Bestfoods*,
    524 U.S. 51 (1998) ........................................................................................ 10

*USHA Holdings, LLC v. Franchise India Holdings Ltd.*,
   11 F. Supp. 3d 244 (E.D.N.Y. 2014) ................................................................ 9, 19

*Zimnicki v. Krysiak Constr. Corp.*,
   2023 WL 7000849 (E.D.N.Y. Aug. 29, 2023) ........................................................ 21

**Rules**

CPLR § 6201(3) ................................................................................................ 23

CPLR § 6212(a) ............................................................................................... 23

Fed. R. Civ. P. 12(b)(2) ...................................................................................... 1

Fed. R. Civ. P. 44.1 ........................................................................................... 12

Federal Rule of Evidence 408 ............................................................................. 7

Non-parties One57 36B, LLC ("One57") and Aralpa Miami Investments, LLC ("Aralpa Miami," and together with One57,  the "Third Parties"), together with Aralpa Holdings Limited Partnership ("Aralpa") and Rodrigo Lebois Mateos ("Lebois," and together with Aralpa, the "Defendants"), pursuant to the Court's Order dated December 19, 2023 (ECF 87), submit this Opposition to Citibank, N.A.'s ("Citibank") motion for a writ of execution and turnover order, prejudgment attachment, and to compel responses to information subpoena.  ECF 76.[1]

## PRELIMINARY STATEMENT

Citibank is not entitled to attach, collect, or in any other way reach the assets of third-party limited liability companies Aralpa Miami and One57 to satisfy Citibank's judgment, dated September 15, 2023 (the "Judgment"), against individual Defendant Lebois.  Citibank previously attempted to secure these same assets as collateral in the course of commercial discussions with Lebois.  The parties have not agreed that they be pledged as collateral, and Citibank may not now obtain from this Court what it failed to secure through those negotiations.

Veil piercing is an extraordinary remedy that courts apply in only limited cases.  That is because there is a well-established presumption of corporate independence, which serves legitimate business purposes and which courts are reluctant to disturb.  That independence may only be disregarded in extraordinary cases where a creditor meets the high standard to pierce the corporate veil and hold an individual responsible for the debts of a corporation found to be an "alter ego."  But that is not even what Citibank seeks to do here.

---

[1] As explained below, Aralpa Miami is a Georgia Limited Liability Company with no ties to New York.  Aralpa Miami specially appears here solely to contest the Court's exercise of personal jurisdiction over it, and without waiving such defense.  Aralpa Miami's appearance here for this special purpose should be construed and decided as a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2).  It joins in the remainder of the opposition solely to the extent that the Court determines it does have personal jurisdiction over Aralpa Miami.

Here, Citibank seeks to *reverse* pierce the corporate veil to collect assets from third party limited liability companies in satisfaction of a judgment against an individual.  Reverse veil piercing is an *even more extreme* remedy than veil piercing itself, and should be denied here for at least five independent reasons.

*First*, Citibank's claims against Aralpa Miami fail for lack of personal jurisdiction.  Citibank's theory of jurisdiction over Aralpa Miami is not based on any contacts with New York, but instead is premised on this Court finding that Aralpa Miami is an alter ego of Lebois.  Citibank fails to support an alter ego finding, precluding the Court's exercise of personal jurisdiction over Aralpa Miami.

*Second,* the claims against both Third Parties fail because Citibank entirely ignores the first veil it must pierce to reach either entity—Aralpa Capital SA de CV ("Aralpa Capital").  Citibank acknowledges that Aralpa Capital is the sole owner of Aralpa Miami and One57.  ECF 77 ("MOL") at 3, 4.  Yet it offers no evidence or argument in support of piercing Aralpa Capital's corporate veil to reach the Third Parties.  Citibank's resounding failure to even address Aralpa Capital means it has failed to meet its burden to establish a basis for reverse veil piercing the Third Parties, and its motion should be denied on this ground alone.

*Third*, again as to Aralpa Miami, Citibank's requested relief is unavailable entirely.  Aralpa Miami is a Georgia limited liability company governed by the laws of Georgia, which apply to the reverse veil piercing claim under New York's choice of law principles.  With respect to reverse veil piercing, "Georgia recognizes no such claim nor any exception to the bar against it."  *In re Webster*, 629 B.R. 654, 668 (Bankr. N.D. Ga. 2021) (citing and discussing Georgia state cases).  Citibank's attempt to reach the assets of Aralpa Miami must end here.

*Fourth*, even if Citibank could overcome these gating issues (it cannot), Citibank fails to satisfy the elements for reverse veil piercing. To establish its claim, Citibank must show that Lebois used Aralpa Miami and One57 to perpetrate a fraud or injustice, but Citibank offers no competent evidence that Defendants formed or used the entities to defraud it. As Citibank knows, both Third Parties were formed long before the present lawsuit and September 2023 Judgment. Indeed, going back to 2018, Citibank has dealt with the Third Parties as separate entities, including providing mortgage loans to both. It cannot now seriously allege fraud.

*Fifth*, Citibank must also show a unity of interest between Lebois and Aralpa Miami and One57—yet, here too, it offers no competent evidence of the requisite dominance or control as to either Third Party. Instead, Citibank relies on vague assumptions and innuendo about management and capitalization unsupported by established facts. Its primary contention is that Lebois represented assets belonging to the Third Parties as his own. But this is not supported in the record, and Citibank itself previously acknowledged these assets belonged to independent parties—when it proposed them as additional collateral prior to filing this lawsuit. Citibank and Defendants did not reach a commercial bargain for these assets, and Citibank cannot now—through the guise of a reverse veil piercing theory—request these Third Party assets from the Court.

For these same reasons, the Court should deny Citibank's request for prejudgment attachment. Such an attachment is available only if Citibank can show that it will prevail on the merits of its claims. It cannot, for the reasons explained above. Moreover, Citibank fails to establish that any assets have been secreted or removed, another independent requirement for a prejudgment attachment.

*Finally*, the Court should deny the motion to compel, which Citibank brought to the Court without meeting and conferring with Defendants, as required.

## FACTUAL BACKGROUND

I.    **Citibank Begins a Private Banking Relationship with Lebois that Includes Lebois Sharing Information About His Personal Assets and Corporate Holding Structures**

In 2017, Lebois began discussions with representatives of Citi Private Bank, an affiliate of Citibank, about entering a private banking relationship.  In connection with those discussions, Lebois and his representatives provided financial and legal information to Citibank about, among other things, real estate, private investments, and assets not owned by Lebois, but owned by affiliated corporate entities.  Declaration of Almudena Lebois Ocejo ("Ocejo Decl.") ¶ 2.  This included information about Unifin Financiera, S.A.B. de C.V. ("Unifin").  *Id.*

II.    **Citibank Makes a Loan Secured by Unifin Shares as the Sole Commercially Bargained for Collateral**

After these discussions, Citibank made a $35 million loan to borrower Aralpa Holdings under a Multi-Draw Term Note dated November 30, 2021 (Fourth Amended and Restated) (the "Note").  ECF 1-1 (Note); ECF 1 ("Compl.") ¶¶ 1, 13; ECF 21 ("Answer") ¶¶ 1, 13.  The Note was initially issued in 2017 and was amended four times, reflecting paydowns of $15 million in 2020. Ocejo Decl. ¶ 3.  Lebois personally guaranteed the obligations under the Note pursuant to a Guaranty Agreement of the same date (the "Guaranty").  Compl. ¶¶ 2, 86, Ex. 2; Answer ¶¶ 2, 86.

Under the commercial bargain reached between the parties, Lebois pledged as the sole collateral shares in Unifin made through Spanish Holding Company Promexcap Spain S.L. ("Promexcap").  Compl. ¶ 15; Answer ¶ 15.  During the underwriting and term of the Note, Lebois and his representatives provided information about assets owned by Third Parties Aralpa Miami and One57, but those assets were not pledged as collateral.  Ocejo Decl. ¶ 3.

### III.    Lebois Continues to Provide Asset Information to Citibank that Includes Corporate Holdings

Under the Note and Guaranty, Lebois was to provide "Personal Financial Statements" to include "personal and other" income and information.  Note at 5 and § 11(r).  Lebois provided those statements, some of which list assets of "Lebois and Family."  ECF 79 (Declaration of Mario Meza ("Meza Decl.")) Ex. G at 15.  Citibank understood—and in fact complained in this lawsuit—that certain assets listed on Lebois' Personal Financial Statement were held by affiliated entities that were *not* obligated under the Note and which did *not* provide collateral for the loan.  *See, e.g.,* Compl. ¶ 31 (noting Personal Financial Statement included bank accounts held by Aralpa Inversiones SL, which Citibank contends is not an eligible entity for assessing liquidity).

### IV.    During the Same Period Before the Lawsuit, Citibank Deals with and Provides Mortgages to Aralpa Miami and One57

During the same period that Citibank and Lebois were amending the Note based on Lebois' paydowns and Citibank was tracking Lebois' asset statements—and well before this lawsuit or the Judgment—Citibank separately provided mortgage loans to both Aralpa Miami and One57.

Aralpa Miami was formed on January 24, 2018, as a Georgia Limited Liability Company governed by the laws of the State of Georgia.  ECF 78 (Declaration of Bruno Plotnicki ("Plotnicki Decl.")) Ex. I at 2, 10.  As Citibank acknowledges, in July 2018, it provided a $2.45 million mortgage to Aralpa Miami for the purchase of real property located at 5034 Fisher Island Drive, Unit 5034, Miami Beach, Florida (the "Miami Property").  *Id*. Ex. K.  Citibank secured a separate personal guarantee from Lebois for the mortgage.  *Id*. ¶ 20.  The Miami Property was purchased for $3.5 million.  *Id*. ¶ 18.  It was an investment property, and whenever Lebois or his family stayed there, rent was paid to Aralpa Miami**.**  Ocejo Decl. ¶ 4.  In February 2023, Aralpa Miami sold the

Miami Property to a third-party purchaser for $8,925,000 and used the proceeds of the sale to pay off Citibank's mortgage.  Plotnicki Decl. ¶ 21.

One57 was formed on September 7, 2016, as a New York Limited Liability Company governed by the laws of the State of New York.  Plotnicki Decl. Ex. A at 1, 2.  Citibank provided a $5.22 million mortgage to One57 in January 2018 for the purchase of real property located at 157 West 57th Street, Unit 36B, New York, New York (the "New York Property").  *Id*. Ex. D. Citibank also obtained a separate personal guarantee from Lebois for this mortgage.  *Id.* ¶ 9, Ex. F

## V.    Aralpa Miami and One57 Are Wholly Owned by Aralpa Capital and Independently Managed

Both Aralpa Miami and One57 are wholly owned by Aralpa Capital, an entity organized under the laws of Mexico.  Plotnicki Decl. Ex. C.  Although Lebois previously served as President of Aralpa Capital, *id.*, he currently holds no position with the company.  Ocejo Decl. ¶ 5.  Almudena Lebois Ocejo and Gerardo Tietszch are the Managing Directors of Aralpa Capital.  *Id.*

Ms. Ocejo is listed as Manager together with Lebois in the original operating agreements for Aralpa Miami and One57.  Plotnicki Decl. Ex. I at 1, Ex. A at 1.  Ms. Ocejo handles all operational matters and decisions for those companies.  Ocejo Decl. ¶ 6.

None of Aralpa Capital, Aralpa Miami or One57 are obligors under the Note or Guaranty, and none of their assets are pledged as collateral.

## VI.   Following the Deterioration in Unifin Shares, Citibank Waives Alleged Technical Events of Default and Seeks to Shore Up the Collateral

As the market value of the Unifin shares declined, Defendants worked with Citibank to address certain alleged events of default under the Note.  Ocejo Decl. ¶ 7.  During these

negotiations, Citibank focused on shoring up the collateral with Lebois' pledge of additional Unifin shares.

The exhibits to the Declaration of Mario Meza tell the story.[2]  Citibank noticed alleged technical events of default (Meza Decl. Ex. A), then had a series of discussions with Lebois' team (*id.* ¶ 12).  During those discussions, the focus was on the pledge of additional Unifin shares or liquidation of Unifin shares to raise capital.  *See, e.g., id.* Ex. B ("[Lebois] offered to pledge additional Unifin shares"), Ex. C (agreeing to allow "a pledge of up to 15% of the shares outstanding of Unifin"), Ex. H ("[Lebois] is willing to sell a portion of Unifin or all of it if the conditions are right.").  Citibank also proposed that it receive a security interest in the assets of One57, acknowledging the entity was owned by Aralpa Capital.  Ocejo Decl. ¶ 7.  The parties did not agree on this security interest.  *Id.*

In May and August 2022, Citibank executed waivers of certain asserted events of default under the Note and Guaranty until October 15, 2022.  Meza Decl. ¶ 17, Ex. D.

### VII.    As the Waiver Period Nears an End, Citibank Proposes that the Same Miami and New York Properties It Is Now Pursuing Be Pledged as Collateral in Exchange for Forgoing Suit

Later in 2022, as the waiver period neared an end, Citibank pursued—through negotiations—the Third Party assets it now seeks.  Citibank sent Lebois a term sheet dated September 8, 2022 (the "2022 Term Sheet"), attempting to have these assets pledged as additional collateral, while expressly acknowledging Lebois did not own them.[3]  Declaration of Daniel J.

---

[2] Defendants reserve the right to contest Meza's Declaration and exhibits as proper evidence.  He admits that he was not involved in all of the discussions, thus his description is double hearsay, and many of the attached emails are in Spanish with no translation, certified or otherwise.

[3] Although the term sheets were exchanged between the parties for settlement purposes pursuant to Federal Rule of Evidence 408, Citibank has put them at issue by including and referencing in its papers another settlement term sheet, in support of its alter ego arguments.  MOL at 17 & n.6.

Saval ("Saval Decl.") Ex. 1.  In the 2022 Term Sheet, Citibank proposed that, in "addition to all collateral" already pledged, it would obtain a security interest in the following assets, among others:

> "1. That certain real property located at 157 West 57th St., Unit 36B, New York, New York 10019 **owned by One 36B LLC (owned 100% by Aralpa Capital)** ('One57');
>
> 2. That certain real property located at 5034 Fisher Island Drive, Miami Beach, FL 33109, **owned by Aralpa Miami Investments (owned 100% by Aralpa Capital)** ('Fisher Island')."

*Id.*  In other words, shortly before filing its lawsuit, Citibank not only attempted to obtain the Third Party assets as additional collateral, but expressly acknowledged that those assets were owned by the Third Parties, and that the Third Parties were—in turn—owned by Aralpa Capital.

Ultimately, Citibank and Lebois were unable to come to a deal to pledge these assets as additional collateral to secure the Note.  The following month, in October 2022, Citibank brought this action.  Having obtained a Judgment, Citibank has now changed course and is targeting these same assets by arguing that they *are* Lebois' assets.

### ARGUMENT

### I.    Aralpa Miami Is Not Subject to the Jurisdiction of This Court

Aralpa Miami is not subject to the jurisdiction of this Court.  Citibank does not allege any Aralpa Miami contacts with New York, and there are none.  Instead, Citibank makes the circular argument that jurisdiction is proper because Aralpa Miami is Lebois' alter ego.  MOL at 13, n.5. Jurisdiction thus rises or falls on Citibank's alter ego theory, and *fails* for the reasons explained

---

The 2022 Term Sheet is appropriately considered here for the same reason cited by Citibank—the term sheet is not being used on the issue of liability in the underlying lawsuit, but to challenge Citibank's veil piercing claims and to impeach Citibank's evidence and arguments in support of those claims.  *Id.*

below.  The Court should dismiss the claim as to Aralpa Miami on the basis of lack of jurisdiction.

*See USHA Holdings, LLC v. Franchise India Holdings Ltd.*, 11 F. Supp. 3d 244, 266 (E.D.N.Y.

2014) (declining to exercise personal jurisdiction over foreign corporations on alter ego basis

because plaintiffs failed to make requisite showing under alter ego analysis).

II.    **Citibank Must Overcome the Presumption of Corporate Independence as to Each Relevant Corporate Entity to Obtain Turnover or Attachment**

A.  **New York's Choice of Law Rules and Applicable Law**

The law applicable in these post-judgment proceedings is determined by the choice of law

rules of the forum state—New York.  *See Joint Venture Acquisition v. Misra*, No. 87 CIV. 5340

(RWS), 1992 WL 212352, at *1 (S.D.N.Y. Aug. 25, 1992).  With respect to alter ego and reverse

veil piercing claims, New York adheres to the internal affairs doctrine, under which "[t]he law of

the state of incorporation determines when the corporate form will be disregarded and liability will

be imposed on shareholders."  *Fletcher v. Atex, Inc.*, 861 F. Supp. 242, 244 (S.D.N.Y. 1994), aff'd,

68 F.3d 1451 (2d Cir. 1995), *citing  Kalb, Voorhis & Co. v. Am. Fin. Corp.*, 8 F.3d 130, 132 (2d

Cir.1993); *see also Ezra v. Wilton Group Inc.*, No. 655277/2017, 2020 WL 4016235, at *6 (N.Y.

Sup. Ct. July 16, 2020) (applying internal affairs doctrine to reverse veil piercing claim).

Under these choice of law principles, New York law applies to Citibank's claim against

One57, while Georgia law applies to its claim against Aralpa Miami.[4]  One57 is a limited liability

company formed in New York pursuant to the Limited Liability Company Law of the State of New

York, and thus the internal affairs doctrine requires that New York law applies to the veil piercing

claim as to this entity.  Plotnicki Decl. Ex. A at 1.  But Aralpa Miami is a limited liability company

---

[4] Citibank does not address choice of law and blithely makes its alter ego arguments as to both Third Parties under New York law.

formed in Georgia pursuant to the Limited Liability Companies Act of the State of Georgia, and

thus Georgia law governs this claim. *Id.* Ex. I at 2. This is critical—indeed, dispositive—because,

as explained further below, Georgia does *not* recognize a claim for reverse veil piercing.

Further, Aralpa Capital, which owns both Aralpa Miami and One57, is a corporation

organized under the laws of Mexico. Plotnicki Decl. Ex. C at 1. Mexican law presumably governs

any attempt to pierce this corporate veil, but this issue is academic because Citibank entirely

ignores Aralpa Capital in its analysis, which dooms its claims.

### B. Presumption of Corporate Independence

There is a well-established "presumption of corporate independence." *Freeman v.*

*Complex Computing Co.*, 119 F.3d 1044, 1052 (2d Cir. 1997) ("The presumption of corporate

independence and limited shareholder liability serves to encourage business development."); *cf.*

*United States v. Bestfoods*, 524 U.S. 51, 61 (1998) (noting under bedrock corporate law principles

a parent corporation generally is not liable for the acts of its subsidiaries). Indeed, "it is perfectly

legal to incorporate for the express purpose of limiting the liability of the corporate owners. In

fact, the very nature and purpose of conducting business through a corporation is to shield the

owners from direct liability for the debts incurred in connection with that business." *In re Stage*

*Presence, Inc.*, 592 B.R. 292, 302 (Bankr. S.D.N.Y. 2018) (citing *Morris v. N.Y, State Dep't of*

*Tax'n & Fin.*, 82 N.Y.2d 135 (1993)), aff'd, No. 12-10525 (MEW), 2019 WL 2004030 (S.D.N.Y.

May 7, 2019).

Accordingly, the presumption of corporate independence is only disregarded "reluctantly."

*Gartner v. Snyder*, 607 F.2d 582, 586 (2d Cir. 1979). To depart from the general rule of

separateness and afford a veil piercing remedy, courts look to whether the corporate form "has

been used to achieve fraud, or when the corporation has been so dominated by an individual or

another corporation (usually a parent corporation), and its separate identity so disregarded, that it primarily transacted the dominator's business rather than its own and can be called the other's alter ego." *Id.* at 586.   The "theory of reverse veil-piercing is an even more extreme remedy," *In re Nilhan Fin., LLC*, 652 B.R. 381, 389 (Bankr. M.D. Fla. 2023), and is not warranted here.  *See also Sonora Diamond Corp. v. Superior Ct.*, 83 Cal. App. 4th 523, 539 (Cal. Ct. App. 2000) ("Alter ego is an extreme remedy, sparingly used").[5]

### III.    Citibank's Motion Fails Because It Does Not Even Address Reverse Piercing the Corporate Veil of the Third Parties' Sole Owner Aralpa Capital

Citibank acknowledges that the Third Parties are not owned by Lebois, but are owned by Aralpa Capital, a corporation organized under the laws of Mexico.  MOL at 3, 4, 6; Plotnicki Decl. Ex. C, Ex. A at 1, Ex. I at 2.  Thus, Citibank must reverse pierce the corporate veil of Aralpa Capital before it may even attempt to reach the Third Parties.  *Soroof Trading Dev. Co. v. GE Microgen, Inc.*, 283 F.R.D. 142, 151, n.9 (S.D.N.Y. 2012) ("[I]t is necessary to pierce the corporate veil at each level or layer of ownership.").   Yet Citibank utterly ignores this entity in its veil-piercing analysis.   Whether Mexican or any other law is applied, Citibank has offered no evidence or argument upon which to pierce Aralpa Capital's corporate veil and the inquiry must end here.[6]

---

[5] Veil piercing claims against third parties are fact- and resource-intensive and are not authorized under the Court's ancillary enforcement jurisdiction, thus requiring another basis for subject matter jurisdiction.  *See Plunket v. Est. of Doyle*, No. 99 CIV 11006 KMW, 2009 WL 73146, at *2 (S.D.N.Y. Jan. 12, 2009) (holding federal courts lack ancillary "jurisdiction over supplementary proceedings that seek to impose liability on a third-party to the original litigation through alter ego or veil piercing theories.").  The alter ego analysis "require[s] inquiries into the organizational structures, dealings, and relationships between [the debtor and non-parties], which are factually and legally unrelated to the theories of liability on which…" the Judgment is based.  *Bautista v. ABC Corp.*, No. 19-CV-3963-LTS, 2023 WL 5917636, at *4-5 (S.D.N.Y. Sept. 11, 2023).

[6] Should Citibank belatedly seek to invoke Mexican law to reverse pierce the veil of Aralpa Capital, it has failed to provide requisite notice pursuant to Rule 44.1 of the Federal Rules of Civil Procedure.  Fed. R. Civ. P. 44.1 ("A party who intends to raise an issue about a foreign country's law must give notice by a pleading or other writing.").

The only vague reference Citibank makes to Aralpa Capital is that Lebois controlled "other entities in his network," MOL at 18, and that, according to a 2020 document, Lebois is the President and has authority to transact business on its behalf.  MOL n.1, citing Plotnicki Ex. C.  In fact, Lebois currently holds no position with the company.  Ocejo Decl. ¶ 5.

In any event, the allegations come nowhere close to evidence sufficient to pierce the veil of Aralpa Capital, if that is what Citibank suggests without explanation.  MOL at 14.  Someone must transact business for a corporation—such authority is not evidence of an alter ego relationship and Citibank cites no authority that it is.  *See Metro. Transp. Auth. v. Triumph Advert. Prods., Inc.*, 497 N.Y.S.2d 673 (N.Y. App. Div. 1986) (finding insufficient conclusory allegations that president is alter ego of defendant without offering evidence of degree of control).  Citibank must offer some evidence to even trigger an alter ego analysis and it has not done so.  *See TNS Holdings, Inc. v. MKI Sec. Corp.*, 92 N.Y.2d 335, 339 (N.Y. 1998) (noting "heavy burden" of those seeking to pierce the corporate veil).

## IV.    Citibank Cannot Reverse Pierce the Corporate Veil of Aralpa Miami Under Applicable Law

If the Court does look past Aralpa Capital, Citibank cannot reverse pierce the corporate veil of Aralpa Miami.

### A.  Georgia Law Prohibits Reverse Piercing Aralpa Miami's Corporate Veil

Because Aralpa Miami is a Georgia limited liability company, Georgia law applies to the claim to reverse pierce its corporate veil.  *See Fletcher*, 861 F. Supp. at 244.  Georgia law *prohibits* third party creditors such as Citibank from reverse "pierc[ing] the veil in order to reach a corporation's assets to satisfy claims against an individual corporate insider."  *Acree v. McMahan*, 276 S.E.2d 873, 875 (Ga. 2003) (rejecting reverse veil piercing); *see also Corrugated*

*Replacements, Inc. v. Johnson*, 340 S.E.2d 238, 243 (Ga. Ct. App. 2017), *disapproved of by Reid v. Morris on other grounds*, 845 S.E.2d 590 (Ga. 2020) (holding Georgia Supreme Court "firmly closed" the door to any exceptions to its rejection of reverse veil piercing); *In re Knight*, 574 B.R. 800, 814 (Bankr. N.D. Ga. 2017) (reaffirming Georgia Supreme Court's ban on reverse veil piercing).

One Georgia court recently analyzed cases since *Acree* and confirmed the clear prohibition: "any prior confusion that existed as to whether Georgia recognizes a claim for reverse veil-piercing has now been resolved by the Georgia appellate courts.  Georgia recognizes no such claim nor any exception to the bar against it." *In re Webster*, 629 B.R. at 668.  Even courts outside the jurisdiction have recognized this bar, with a Florida court noting "[t]he harsh nature of the [reverse veil piercing] theory is illustrated by the fact that settled case law in Georgia plainly holds that reverse veil-piercing is not a remedy that is recognized under the laws of Georgia." *In re Nilhan Fin., LLC*, 652 B.R. at 389.

Citibank has not even addressed Georgia law and cannot avoid this bar.  The authorities Citibank cites from other jurisdictions are irrelevant (MOL at 18) and do not displace Georgia's superior interest in determining whether and when its protection of corporate assets may be "stripped away." *See Kalb, Voorhis & Co.*, 8 F.3d at 132 ("Because a corporation is a creature of state law whose primary purpose is to insulate shareholders from legal liability, the state of incorporation has the greater interest in determining when and if that insulation is to be stripped away.").  Because Georgia law applies to Citibank's veil piercing claim as to Aralpa Miami, Citibank is prohibited from reverse piercing the veil and enforcing the Judgment against Aralpa Miami.

**B. If Another Law is Applied, It Should Be Florida Law, and Citibank Cannot Meet That Law's Stringent Requirements to Reverse Pierce the Corporate Veil**

Even if the Court looks beyond the state of incorporation (it should not), extrapolating from New York's choice of law paramount interest test dictates that this court should apply "the law of the jurisdiction having the greatest interest in the litigation." *Kalb, Voorhis & Co.*, 8 F.3d at 132. Under that test, after Georgia, Florida has the greatest interest here—and certainly a greater interest than New York, as Citibank has not alleged that Aralpa Miami has any contacts with this State.

As Citibank itself asserts, Aralpa Miami's asset was the real property at 5034 Fisher Island Drive in Miami Beach, which it purchased in April 2018 with the help of a Citibank mortgage that was later paid off when the property was sold. MOL at 5; Plotnicki Decl. ¶ 21, Ex. K. Aralpa Miami's UBS bank account that Citibank describes is also located in Miami. MOL at 5; Plotnicki Decl. Ex. L at 1. Based on these contacts, and absent any described New York contacts, after Georgia, Florida has the greatest interest in whether Aralpa Miami's corporate form should be ignored, resulting in application of Florida law. *See, e.g., Madison Realty, Inc. v. Neiss*, 676 N.Y.S.2d 672, 673 (N.Y. App. Div. 1998) (considering spectrum of significant contacts with transaction at issue and finding Florida had greater interest as situs of property, sale, and receipt of commission).

Although reverse veil piercing is an extreme remedy under both New York and Florida law, certain hallmarks of Florida law categorically preclude this relief here. Under Florida law, the standard for reverse veil piercing is "extremely stringent:" "[p]iercing the corporate veil is an extraordinary remedy, and the theory of reverse veil-piercing is an even more extreme remedy." *In re Nilhan Fin., LLC,* 652 B.R. at 389; *see also In re Checiek*, 492 B.R. 918, 920 (Bankr. M.D. Fla. 2013) ("Florida law would permit 'reverse veil piercing' only under extraordinary

circumstances.").

Florida courts will only reverse veil pierce upon finding that (1) the corporation was dominated and controlled "to such an extent that the corporation's existence[] was in fact nonexistent; (2) the corporate form must have been used fraudulently or for an improper purpose; *and* (3) the fraudulent or improper use of the corporate form caused injury to the claimant." *In re Patel*, 632 B.R. 903, 911–12 (Bankr. M.D. Fla. 2021) (emphasis supplied), *judgment entered*, No. 6:18-BK-00036-KSJ, 2021 WL 3262421 (Bankr. M.D. Fla. July 30, 2021) (noting these three factors determine whether a corporate entity may be held liable for the debts of an individual debtor).

### 1. Citibank Has Not Demonstrated that Aralpa Miami Was Formed or Used to Secrete Assets to Avoid Preexisting Personal Liability

Florida law specifically requires that a plaintiff demonstrate fraudulent or improper purpose by showing that "a controlling shareholder formed or used the corporation to secrete assets and thereby avoid preexisting personal liability." *SE Prop. Holdings, LLC v. Phillips*, No. 3:15CV554/MCR/EMT, 2016 WL 11529614, at *3 (N.D. Fla. May 4, 2016) (citation omitted). Citibank has not established this element.

Indeed, Lebois formed Aralpa Miami in January 2018, well before Citibank filed its lawsuit in 2022, and years before the Court issued its September 2023 Judgment. Plotnicki Decl. Ex. I at 2. This Court could not find that Aralpa Miami was formed to avoid liability for the Judgment because its formation predates the Judgment and this very lawsuit. *See, e.g., Braswell v. Ryan Invs., Ltd.*, 989 So. 2d 38, 39-40 (Fla. 3d DCA 2008) (denying reverse veil piercing where "the act of taking title in the corporate name well preceded the existence of the claims and obligations sued upon").

15

Citibank also offers no evidence or even allegation that Lebois used Aralpa Miami to "secrete" assets.  *SE Prop. Holdings, LLC,* 2016 WL 11529614, at \*3.  To the contrary, Lebois certified in his responses to Citibank's information subpoena that he has not sold or transferred any property in which he had an interest in the two months since the Judgment was entered; Citibank has not challenged this statement.   Plotnicki Decl. Ex. AA at 20.

Finally, Citibank's own dealings with Aralpa Miami as a separate entity also belie any argument that the entity was used to defraud Citibank.  *See Rashdan v. Sheikh*, 706 So. 2d 357, 358 (Fla. 4th DCA1998) (refusing to pierce the corporate veil noting "[t]he mere fact that one or two individuals own and control the stock structure of a corporation does not lead inevitably to the conclusion that the corporate entity is a fraud or that it is necessarily the alter ego of its stockholders.") (citing *Dania Jai–Alai Palace, Inc. v. Sykes*, 450 So.2d 1114, 1120 (Fla. 1984)).  The Court need look no further than the mortgage loan Citibank provided to Aralpa Miami to conclude that Citibank engaged with it as an independent entity.  MOL at 5, Plotnicki Decl. Ex. K.  In July 2018, when it provided a $2.45 million mortgage on the Miami Property to Aralpa Miami, Citibank had information as to the organizational structure and operation of Aralpa Miami, including that it was owned by Aralpa Capital and not Lebois, and separately secured Lebois as guarantor.  Plotnicki Decl. ¶ 20.  In February 2023, Aralpa Miami's mortgage was paid off in full using the proceeds from the sale of the Miami Property that Citibank now inexplicably cites as evidence of an intent to avoid satisfaction of the Judgment.  MOL at 20.

### 2.  Citibank Has Not Demonstrated the Requisite Domination or Control

Citibank's sweeping, conclusory statements regarding Aralpa Miami fall far short of the "copious evidence" of control or domination also required under Florida law to establish a corporation was, in fact, "nonexistent," and to impose the "harsh and rarely used" remedy of

reverse veil piercing.  *See* MOL at 14-18; *In re Nilhan Fin.*, *LLC*, 652 B.R. at 391 (refusing to reverse pierce the corporate veil where evidence presented by claimant did not rise "to the extraordinary level needed").  Citibank's already existing mortgage to Aralpa Miami means Citibank cannot establish, as it must, that Aralpa Miami "was in fact nonexistent."  *In re Patel*, 632 B.R. at 911–12.

If the Court looks beyond this deficiency, Citibank offers no other competent evidence of domination.  First, it insinuates that Lebois' daughter was somehow complicit or acting merely at his behest.  MOL at 15.  Citibank offers no proof and points only to a self-serving declaration that alleges Lebois' daughter participated in communications related to the entities she manages— hardly evidence that she took any decisions at the behest of her father or that such participation is evidence of wrongdoing.  Meza Decl. ¶¶ 16, 20-23; *cf. In re Hillsborough Holdings Corp.*, 166 B.R. 461, 472 (Bankr. M.D. Fla.), aff'd, 176 B.R. 223 (M.D. Fla. 1994) (considering parent/subsidiary relationship and holding "general oversight" of operations is "common and proper" and does not support veil piercing).

Second, Aralpa Miami's purported capitalization and Lebois' payment of the mortgage do not support an alter ego finding.  MOL at 16.  Undercapitalization, if it were the case, is not improper.  *See, e.g., Segal v. Forastero, Inc.,* 322 So. 3d 159, 164 (Fla. 3d DCA 2021) (concluding that undercapitalization did not constitute improper use of the limited liability company for alter ego analysis where the limited liability company previously had a bank account, managed a rental property, and generated revenue).  Nor is funding an affiliate improper, especially where, as here, Lebois was the mortgage guarantor.  *See Johnson Enters. of Jacksonville, Inc. v. FPL Grp., Inc*., 162 F.3d 1290, 1320 (11th Cir. 1998) (finding evidence that parent provided subsidiary with funding "could hardly be labeled wrongful"); *see also In re Hillsborough Corp.*, 166 B.R. at 473

17

(noting "the financing of a subsidiary by a parent is not improper per se. This notion [] has been repeatedly rejected by courts, finding that it is proper for the parent to provide all financing to the subsidiary.").  Having negotiated for Lebois to guarantee the mortgage, Citibank cannot now weaponize those commercial terms as evidence of undercapitalization and misconduct.

Third, Citibank asserts that Lebois has represented that he owns the Aralpa Miami assets, but this is not borne out in the record and is contradicted by Citibank's own statements.  MOL at 16-17.  Citibank relies most heavily on Personal Financial Statements submitted by Lebois (*id.* at 16), but these list assets of Lebois and Family and do not represent that these belong to him.  Meza Decl. Ex. G at 15.  This fact distinguishes this case from those that Citibank cites in which the debtors did expressly claim ownership of assets or use corporate assets to advance their personal interests.  *See, e.g., In re Charnock*, 97 B.R. 619, 628 (Bankr. M.D. Fla. 1989) (finding alter ego relationship where debtor "stated that he owns the warehouse or the option to sell the warehouse" as part of negotiations); *Fed. Nat'l Mortg. Ass'n v. Olympia Mortg. Corp.*, 724 F. Supp. 2d 308, 319 (E.D.N.Y. 2010) (finding alter ego relationship where "Defendant took funds out of the corporation for personal use on a regular basis … to support a remarkable number of relatives who did little or no work for the corporation and to provide extraordinarily high 'interest payments' to himself and his friends and family.").

Moreover, Citibank has not offered any evidence that Lebois attempted to or did **induce** Citibank to extend the credit facility *based on* any representations of ownership.  MOL at 18-19.  In support of its inducement argument, Citibank merely cites the self-serving Plotnicki Declaration.  *See* Plotnicki Decl. ¶ 42.  But even that declaration does not contend that the inclusion of the two properties at issue here—totaling merely $13 million of the $630 million in assets included on the list—is what induced Citibank to extend the loan.

18

Citibank also submits the untested Meza Declaration, implying that Citibank waived alleged events of default based on certain representations. Meza Decl. ¶ 10. But the underlying record reflects that the focus of the forbearance discussions was on the deteriorating Unifin shares. *See id*. Ex. B ("[Lebois] offered to pledge additional Unifin shares"), Ex. C (agreeing to allow "a pledge of up to 15% of the shares outstanding of Unifin"), Ex. H ("[Lebois] is willing to sell a portion of Unifin or all of it if the conditions are right."). Citibank has offered no competent evidence that it relied on representations concerning Aralpa Miami to extend the Note, amend the Note, or waive alleged defaults on the Note. Any claim that could remain is eviscerated by Citibank's 2022 Term Sheet proposing as collateral the Miami Property—which was not listed as owned by Lebois, but rather as "owned by Aralpa Miami Investments (owned 100% by Aralpa Capital)." Saval Decl. Ex. 1.

For these reasons, Citibank has not met its heavy burden to support a finding that Aralpa Miami is Lebois' alter ego. Because Citibank relies on alter ego for both jurisdiction and a writ of execution, the Court should deny the claim as to Aralpa Miami for lack of jurisdiction and on the merits. *See USHA Holdings, LLC*, 11 F. Supp. 3d at 266.

## V. Whatever Law Is Applied, Citibank Cannot Reverse Pierce the Corporate Veil of One57 or Aralpa Miami

Citibank's claims fare no better under New York law when applied to One57 or if applied to Aralpa Miami (though, again, Citibank has proffered no basis for the application of New York law to Aralpa Miami). The standard requires the same essential elements of domination and fraud: "(1) that the owner exercised complete domination over the corporation with respect to the transaction at issue; and (2) that such domination was used to commit a fraud or wrong that injured the party seeking to pierce the veil." *JSC Foreign Econ. Ass'n Technostroyexport v. Int'l Dev. &*

*Trade Servs., Inc.*, 295 F. Supp. 2d 366, 379 (S.D.N.Y. 2003).  The corporate form should be disregarded only when "such control has been used by the parent to . . . violate [a] legal duty, or has been used to do an act tainted by dishonesty or unjust conduct violating the plaintiff's rights or under circumstances giving rise to an estoppel."  *David v. Glemby Co.*, 717 F. Supp. 162, 166 (S.D.N.Y. 1989) (citation omitted).  "The mere claim that the corporation was completely dominated by the owners, or conclusory assertions that the corporation acted as their 'alter ego,' without more, will not suffice to support the equitable relief of piercing the corporate veil."  *Goldman v. Chapman*, 844 N.Y.S.2d 126, 127 (NY. App. Div. 2007).

### A. One57's and Aralpa Miami's Formation Before the Judgment and Citibank's Prior Dealings Belie any Allegations of the Requisite Fraud

One57 was formed in September 2016.  Plotnicki Decl. Ex. A.  Thus, both One57 and Aralpa Miami were formed years before Citibank filed its lawsuit in 2022, and well before the Court issued its September 2023 Judgment.  Neither could have been formed to avoid liability for the Judgment because their formation predates the Judgment and this very lawsuit.  *See Guptill Holding Corp. v. State of New York*, 307 N.Y.S.2d 970, 973 (NY. App. Div. 1970), aff'd, 31 N.Y.2d 897, 292 N.E.2d 782 (N.Y. 1972) (finding no showing of fraud or illegality because alleged alter ego was formed well before the condemnation at issue, negating any inference that it was formed as a shell to avoid tax liability for the subsequent condemnation award).

Citibank's dealings with One57, like its dealings with Aralpa Miami, belie any argument that the Third Parties were used to defraud Citibank.  Just as it did with Aralpa Miami, Citibank provided a mortgage to One57 in January 2018—this one for $5.22 million.  Plotnicki Decl. Ex. D.  Citibank was provided information about One57, including that it was owned by Aralpa Capital, not Lebois, and also secured Lebois as sole guarantor.  *Id.* ¶ 9.

To the extent Citibank relies on alleged representations about assets for this prong, its blanket assertions that Lebois deceptively inflated his net worth to induce Citibank to provide the credit facility (MOL at 18-19) also do not support a finding of fraud or wrong under New York law. *Zimnicki v. Krysiak Constr. Corp.*, No. 21-CV-4634-RPK-JRC, 2023 WL 7000849, at *9 (E.D.N.Y. Aug. 29, 2023) (finding conclusory allegations that defendant misused the corporate form to perpetrate a fraud insufficient). Moreover, Citibank cites no authority for the proposition that veil piercing requires a lesser showing than common law fraud. *See* MOL at 19. Rather, Citibank must prove by a preponderance of the evidence that Lebois perpetrated a fraud through his alleged domination or control of the Third Parties. *N.Y. State Teamsters Conf. Pension & Ret. Fund v. Hoh*, 554 F. Supp. 519, 525 (N.D.N.Y. 1982) (holding "for a viable claim to exist, sufficient allegations of fraud must be present to justify piercing the corporate veil"). As explained above, the self-serving statements in the Plotnicki and Meza Declarations are untested and do not even allege that Citibank was induced by the inclusion of approximately $13 million in property in the context of $630 million in assets.

In fact, it was Citibank that included the One57 and Aralpa Miami assets as proposed collateral in its 2022 Term Sheet. And defense counsel's August 28, 2023, communication for settlement purposes a year later, which Citibank attaches, *disclaims* any ownership in the Third Party assets. The communication states that "Mr. Lebois has offered the New York apartment, *held by a non-loan party, that Citibank would not be able to look to as recourse under the loan*." Plotnicki Ex. Y. This communication undermines any claim that Lebois misrepresented these assets as his own to satisfy the fraud or control elements of the alter ego analysis. *AMEV Cap. Corp. v. Kirk,* N.Y.S.2d 422, 423 (1992), is inapposite. MOL at 19. Rather than disclaim ownership as here, the debtor in that case materially misrepresented his net worth on a personal

net worth statement by including property he had fraudulently conveyed to his wife—for nominal

consideration and for which he intentionally did not record the deed for eight years—to induce the

creditor to extend credit.  *AMEV Cap. Corp,*, N.Y.S.2d 422 at 423-24.

### B.  Citibank Has Not Demonstrated the Requisite Domination or Control

Citibank has failed to offer competent evidence substantiating its allegations that Lebois

dominates or controls One57 or Aralpa Miami, or that he is an "equitable owner" of either entity

for purposes of this analysis.  *See Freeman*, 119 F.3d at 1051 (holding that an equitable owner

"exercise[s] considerable authority over [the corporation] ... to the point of completely

disregarding the corporate form and acting as though [its] assets [are] his alone to manage and

distribute."); *Highland CDO Opportunity Master Fund, L.P. v. Citibank, N.A.*, 270 F. Supp. 3d

716, 733 (S.D.N.Y. 2017) (noting that equitable ownership "is not an alternative to veil piercing,

but rather a recognition that veil piercing can apply to someone who is not a legal owner of a

corporation if he exercises sufficient control and uses that control to commit a fraud or wrong.").

Citibank's conclusory statements fall far short of the "heavy burden" required to make a showing

of domination or control.  MOL at 14-18; *Goldman*, 844 N.Y.S.2d at 127; *Metro. Transp. Auth.*,

497 N.Y.S.2d at 675 ("Mere conclusory allegations that the corporate structure is a sham are

insufficient to warrant piercing the corporate veil.").

Citibank makes the same deficient allegations as to One57 that it makes as to Aralpa

Miami.  Taking up the points again: first, Citibank establishes nothing with its unsupported

contention that Lebois' daughter was "complicit" in his control.  *Cf. In re Maghazeh*, 310 B.R. 5,

18 (Bankr. E.D.N.Y. 2004) (finding father controlled trust on basis that he made all decisions about

trust, funded all its assets, commingled its books and records with his own, children knew little to

nothing about trust, and trust never made distribution to children).  Second, the measure of

capitalization and funding of an affiliate, especially where Citibank negotiated for Lebois as guarantor, is not improper, as confirmed in the case Citibank itself cites. *See* MOL at 16, citing *138-77 Queens Blvd LLC v. Silver*, No. 22-CV-5155 (KAM) (MMH), 2023 WL 4564796, at *6 (E.D.N.Y. July 17, 2023) ("undercapitalization alone is generally insufficient to warrant piercing of the corporate veil") (citing *Tycoons Worldwide Grp. (Thailand) Pub. Co. v. JBL Supply Inc.*, 721 F. Supp. 2d 194, 206–07 (S.D.N.Y. 2010)).

To the extent New York law is applied, the Court should deny Citibank's request to reverse pierce the corporate veils of both Third Parties.

### VI.    Citibank Is Not Entitled to Prejudgment Attachment

If the Court denies the request for writ of execution and turnover, which is predicated on a finding of alter ego liability, it must also deny the motion for prejudgment attachment, as Citibank necessarily cannot satisfy the requisite likelihood of success on the merits of its alter ego claims.

To obtain a prejudgment attachment, Citibank must show "that there is a cause of action, that it is probable that [Citibank] will succeed on the merits, that one or more grounds for attachment provided in section 6201 exist, and that the amount demanded from [the Defendants] exceeds all counterclaims known to [Citibank]." CPLR § 6212(a). Further, Citibank must establish that the debtors have "assigned, disposed of, encumbered or secreted property, or removed it from the state or is about to do any of these acts." CPLR § 6201(3). For the reasons stated above, Citibank cannot succeed on the merits of its veil piercing claim, nor has it established that Lebois has disposed of or secreted any assets. Thus, the "harsh remedy" of prejudgment attachment must be denied. *See Sylmark Holdings Ltd. v. Silicone Zone Int'l Ltd.*, 783 N.Y.S.2d 758, 772-773 (Sup. Ct. 2004).

## VII.   Lebois Should Not Be Compelled to Provide Further Information

Finally, Lebois has complied with the information subpoena served on October 23, 2023, and should not be compelled to provide further information.

 Citibank complains that Lebois failed to provide information regarding third-party assets that do not belong to him.  Citibank asserts that Lebois is an "equitable owner" of not just Aralpa Miami and One57, but of at least 14 listed assets.  MOL at 24.  But Citibank has not established that Lebois is the equitable owner of Aralpa Miami and One57 and offers no evidence and no argument as to these additional assets.  Lebois is therefore under no obligation to respond further to the subpoena.

In any event, Citibank has not conferred with Defendants regarding this request, as it was required to do.  Pursuant to Local Civil Rule 37.2 and this Court's Individual Rule of Practice 2E, this Court "will not consider any discovery dispute where the moving party has not satisfied the good-faith conference requirement."  Rule 2E.  The Court should require Citibank to confer with Defendants before considering this request.

*   *   *

Citibank is limited to the evidence and argument it offered in its motion, which it had two months to prepare following the Judgment and to which it attached hundreds of pages of exhibits. It cannot offer additional evidence or argument for the first time on reply.[7]  Citibank has proceeded on the record it has, and based on its clear deficiencies the motion should be denied in full.

---

[7] Defendants and the Third Parties reserve the right to request leave to file a sur-reply without a delay to the hearing date to address any such attempt.

24

## <u>CONCLUSION</u>

For the foregoing reasons, the Court should deny Citibank's Motion for the Issuance of a

Writ Of Execution and Turnover Order to Enforce Judgment Against One57 36B, LLC and Aralpa

Miami Investments, LLC, for Prejudgment Attachment, and to Compel Responses to Information

Subpoena.

Dated January 12, 2024

                                                    Respectfully submitted,


                                                    /s/  Daniel J. Saval
                                                    Daniel J. Saval

                                                    **KOBRE & KIM LLP**
                                                    Daniel J. Saval
                                                    800 Third Avenue
                                                    New York, New York 10022
                                                    Tel: +1 212 488 1200
                                                    Fax: +1 212 488 1220
                                                    Daniel.Saval@kobrekim.com

                                                    *Attorneys for Defendants*
                                                    *Aralpa Holdings Limited*
                                                    *Partnership and Rodrigo*
                                                    *Lebois Mateos and Third Party*
                                                    *One57 36B, LLC*


                                                    *Special appearance for Third*
                                                    *Party Aralpa Miami*
                                                    *Investments, LLC for the*
                                                    *limited purpose of contesting*
                                                    *personal jurisdiction*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on January 12, 2024, a true and correct copy of the foregoing

Opposition was electronically filed with the Clerk of the Court using the CM/ECF system which

will send a notice of electronic filing to all counsel or parties of record on the service list.

<u>/s/ Daniel J. Saval</u>
Daniel J. Saval

**KOBRE & KIM LLP**
800 Third Avenue
New York, New York 10022
Tel: +1 212 488 1200
Fax: +1 212 488 1220
Daniel.Saval@kobrekim.com