UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CITIBANK, N.A.,<br><br>                          Plaintiff,<br><br>-against-<br><br>ARALPA HOLDINGS LIMITED PARTNERSHIP and RODRIGO LEBOIS MATEOS,<br><br>                          Defendants. | Case No. 1:22-cv-08842 (JLR)<br><br>**MEMORANDUM ORDER AND OPINION** |

JENNIFER L. ROCHON, United States District Judge:

This case arises out of a loan agreement executed by Citibank, N.A. ("Citibank" or "Plaintiff") and Aralpa Holdings Limited Partnership ("Aralpa Holdings"), and a personal guaranty of that loan agreement executed by Plaintiff and Rodrigo Lebois Mateos ("Lebois"). ECF No. 1 ("Compl."). The Court generally assumes the parties' familiarity with the underlying facts, the procedural history, and the legal issues at play, which the Court refers to only as necessary to explain its decision here. Further context is sufficiently set forth in three of the Court's prior opinions and orders. *See Citibank, N.A. v. Aralpa Holdings Ltd. P'ship*, No. 22-cv-08842 (JLR), 2023 WL 5971144 (S.D.N.Y. Sept. 14, 2023) ("*Citibank I*"); *Citibank, N.A. v. Aralpa Holdings Ltd. P'ship*, No. 22-cv-08842 (JLR), 2023 WL 8810142 (S.D.N.Y. Dec. 19, 2023) ("*Citibank II*"); *Citibank, N.A. v. Aralpa Holdings Ltd. P'ship*, No. 22-cv-08842 (JLR), 2024 WL 398094 (S.D.N.Y. Feb. 2, 2024) ("*Citibank III*").

Aralpa Holdings, Lebois, One57 36B, LLC ("One57"), and Aralpa Miami Investments LLC ("Aralpa Miami" and, collectively, "Nonmovants") move for an order staying *Citibank III* pending appeal. ECF No. 106 ("Mot."). Plaintiff opposes the motion. ECF No. 109 ("Opp."). For the following reasons, the Court GRANTS Nonmovants' request to stay pending appeal the portion of *Citibank III* granting Plaintiff's motion for a writ of execution

1

and turnover order as to the assets of One57 and Aralpa Miami on the condition that Nonmovants continue to comply with the restraints imposed in *Citibank II*. But the Court DENIES the request to stay the portion of *Citibank III* ordering the parties to meet and confer regarding discovery.

## BACKGROUND

Plaintiff sued Aralpa Holdings and Lebois (together, "Defendants") for breach of the loan agreement and the personal guaranty on October 17, 2022. Compl. In *Citibank I*, Court granted Plaintiff's motion for judgment on the pleadings on September 14, 2023. *See* 2023 WL 5971144, at *1. Defendants appealed *Citibank I*, *see* ECF No. 62, but have since voluntarily dismissed their appeal, *see* ECF No. 99.

On December 14, 2023, Plaintiff moved *ex parte* for the Court to order Nonmovants to show cause why the Court should not (1) issue a writ of execution and turnover order to enforce the *Citibank I* judgment against One57 and Aralpa Miami, (2) attach the assets of One57 and Aralpa Miami, and (3) compel Lebois to respond more fully to information subpoenas regarding his assets. ECF No. 76 (the "OSC") at 1-2. Plaintiff also sought a temporary restraining order (a "TRO") to restrain the assets of One57 and Aralpa Miami during the pendency of the application. *Id.* at 2-3. The Court ultimately held a hearing with the parties regarding the TRO request and entered a more extensive TRO and OSC on December 19, 2023. *See Citibank II*, 2023 WL 8810142.

After receiving briefing from both parties, as well as extensive affidavits and exhibits, the Court held the OSC hearing on January 26, 2024. ECF No. 102. At the start of the OSC hearing, the Court asked Plaintiffs and Nonmovants if they intended to introduce live testimony to supplement the documentary evidence already submitted; both sides declined. *Id.* at 5:8-6:7. At the end of the OSC hearing, the Court asked Plaintiffs and Nonmovants if

there was anything further that they wished to put before the Court for purposes of the Court's decision on the OSC; both parties stated that they had nothing further to present. *Id.* at 74:1-6. The parties also agreed to extend the TRO by seven days – until February 2, 2024 – to allow the Court to give the parties' arguments further consideration. *Id.* at 74:11-19; ECF No. 100. The parties submitted no additional materials to the Court between the OSC hearing and the issuance of *Citibank III*.

On February 2, 2024, the Court granted Plaintiff's motion for the issuance of a writ of execution and turnover order as to the assets of One57, granted Plaintiff's motion for a turnover order as to the assets of Aralpa Miami, denied as moot Plaintiff's motion for an attachment, denied without prejudice Plaintiff's motion to compel, and ordered the parties to meet and confer about the responses to Plaintiff's post-judgment discovery requests within two weeks. *See Citibank III*, 2024 WL 398094, at *24.[1]

In the evening of February 14, 2024, Nonmovants filed the present motion. Mot. Nonmovants requested that the Court stay *Citibank III* pending appeal. *Id.* at 1. In the alternative, Nonmovants requested that the Court enter a brief interim stay to enable Nonmovants to seek a stay from the Second Circuit. *Id.* In the motion, Nonmovants stated that they "do not object to abiding by the terms in the TRO during the period of a stay." *Id.* at 2. In support of the motion, Lebois submitted a declaration. ECF No. 107 ("Lebois Decl."). On February 15, 2024, the Court ordered temporarily stayed *Citibank III* to maintain the status quo while Citibank provided its response to the motion. ECF No. 108. Plaintiff submitted its Opposition on February 16, 2024. Opp.

---

[1] In *Citibank III*, the Court also ordered that most of the documents that were under seal during the pendency of the TRO be unsealed. *See* 2024 WL 398094, at *20-23.

## BACKGROUND

It "has always been held" that "as part of its traditional equipment for the administration of justice, a federal court can stay the enforcement of a judgment pending the outcome of an appeal." *Nken v. Holder*, 556 U.S. 418, 421 (2009) (citation omitted). The "traditional standard for a stay" is "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Id.* at 425-26 (quotation marks and citation omitted). "A stay is not a matter of right, even if irreparable injury might otherwise result. It is instead an exercise of judicial discretion, and the propriety of its issue is dependent upon the circumstances of the particular case." *Id.* at 433 (brackets, quotation marks, and citation omitted). "The party requesting a stay bears the burden of showing that the circumstances justify an exercise of that discretion." *Id.* at 433-34.

On the first stay factor, Nonmovants argue that "there is a likelihood of success on appeal." Mot. at 3; *see Nken*, 556 U.S. at 426. In support, Nonmovants reiterate their view that Plaintiff cannot pierce the veils of One57 and Aralpa Miami. *See* Mot. at 3. The Court respectfully disagrees for the reasons already stated in *Citibank III*, but of course the final word will come from the Second Circuit. Nonmovants also allude to potential challenges to procedural and evidentiary aspects of the post-judgment proceedings. *See id.* The Court notes that Nonmovants never previously challenged any procedural or evidentiary aspects of the OSC hearing. To succeed on appeal, they will therefore have to overcome several hurdles, including the general requirement of issue preservation. *See, e.g.*, *Badar v. Swissport USA, Inc.*, 53 F.4th 739, 749 (2d Cir. 2022) (failure to object in district court results in plain-error review); *Yukos Cap. S.A.R.L. v. Feldman*, 977 F.3d 216, 237 (2d Cir. 2020) ("On plain error

4

review, the Second Circuit typically will not find plain error where the operative legal question is unsettled." (brackets, quotation marks, and citation omitted)). Thus, the Court does not find that Nonmovants are likely to succeed on the merits of their appeal, let alone that Nonmovants have made a strong showing of this likelihood. However, the Court recognizes that there are significant and complicated legal issues at play here.

With respect to the second factor, the Court finds that Nonmovants will be irreparably harmed absent a stay. *See Nken*, 556 U.S. at 426. In particular, declining to stay *Citibank III* could lead to the sale of the condominium owned by One57 (the "Condominium"). Lebois testifies that "[v]arious family members and [Lebois] previously stayed in the Condominium as [their] home when in New York City on business and for personal occasions, including [his] daughter's wedding anniversary." Lebois Decl. ¶ 3. Lebois also "used the Condominium as a personal residence during extended periods while conducting business and handling personal matters in New York City." *Id.* Also, "[t]he Condominium is decorated with [his] family's personal belongings and according to [their] styles, and it houses many of [their] personal effects." *Id.* ¶ 4. Lebois states that, "[a]s of January 1, 2024, the Condominium has been rented to a third-party tenant for a period of one year." *Id.* ¶ 5. Lebois further testifies, though, that "[i]f One57 retains ownership, [Lebois's] family and [Lebois] plan to use the property as a home again during future stays in New York City after the third-party tenant's lease has ended." *Id.* ¶ 6.

Based on this testimony – and the lack of evidence in the record to the contrary – the Court agrees with Nonmovants that the loss of the Condominium would qualify as irreparable injury for purposes of the stay inquiry. *See* Mot. at 2-3. If the Condominium is foreclosed upon and sold during the pendency of the appeal, it will likely be difficult (if not impossible) for Nonmovants to recover the specific apartment in question. And the loss of a unique piece

of property may, under appropriate circumstances, constitute irreparable harm.  *See, e.g.*, *Lost Lake Holdings LLC v. Town of Forestburgh*, No. 22-cv-10656 (VB), 2023 WL 8947154, at *8 (S.D.N.Y. Dec. 28, 2023) (contrasting situations where "a [p]laintiff's interest in the real estate is commercial," such that any "damages to property rights generally do not amount to irreparable harm," with situations where the plaintiff is faced with the "loss of its home or a unique piece of property in which it has an unquantifiable interest" (citation omitted)).  That the Condominium is currently being rented to a third-party tenant does not necessarily make it a commercial property, as Plaintiff suggests.  *See* Opp. at 2.  To the contrary, Lebois's testimony suggests that the Condominium is a property with respect to which Lebois has "sentimental or personal attachment."  *Medgar Evers Houses Assocs. v. Carro*, No. 01-cv-06107, 2001 WL 1456190, at *5 (E.D.N.Y. Nov. 6, 2001).  Thus, the Court finds that the loss of the Condominium would potentially inflict irreparable harm.

As to the third stay factor, the Court finds that any injury to Plaintiff would be relatively minor.  *See Nken*, 556 U.S. at 426.  Nonmovants represent that they "do not object to abiding by the terms in the TRO during the period of a stay."  Mot. at 2.  The Court agrees with Nonmovants that the TRO entered in *Citibank II* would eliminate the risk of asset dissipation.  To the extent that Plaintiff's satisfaction of the judgment is delayed by the appeal, post-judgment interest would address this.  *See* ECF No. 55 (judgment in *Citibank I* includes "post-judgment interest at the federal statutory rate").

As to the fourth stay factor, the Court finds that the public interest is served by staying *Citibank III* pending appeal.  *See Nken*, 556 U.S. at 426.  Both sides identify plausible public interests served by their respective positions.  *Compare* Mot. at 3, *with* Opp. at 3.  Ultimately, the Court believes that maintaining the status quo – and thus enabling the Second Circuit to

address the issues involved in this case – best serves the public interest, especially given the involvement of non-parties in this post-judgment action.

On balance, the Court finds that these factors weigh in favor of a stay. Therefore, the Court stays pending appeal the portion of *Citibank III* granting Plaintiff's motion for a writ of execution and turnover order as to the assets of One57 and Aralpa Miami.[2] While the stay is in place, Nonmovants shall, as agreed, abide by the terms of the TRO (as entered in *Citibank II*) during the pendency of the appeal of *Citibank III*.

Defendants' discovery obligations, however, are another matter. Those obligations are not a result of the Court's decision in *Citibank III*. Rather, Defendants' discovery obligations are a consequence of *Citibank I*, a final decision that is no longer on appeal. As a courtesy to Defendants, the Court extends the deadline for the parties to meet and confer about the responses to Plaintiff's post-judgment discovery requests until February 23, 2024. Absent agreement by the parties, the Court does not anticipate extending that deadline further and discovery shall proceed.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** the Motion's request to stay pending appeal the portion of *Citibank III* granting Plaintiff's motion for a writ of execution and turnover order as to the assets of One57 and Aralpa Miami, provided that Nonmovants abide by the terms of the TRO set forth in *Citibank II*. The Court **DENIES** the Motion's request to stay the portion of *Citibank III* ordering the parties to meet and confer about discovery. The

---

[2] The Court's analysis of irreparable harm focuses on the Condominium, which is uncontestedly the most valuable asset owned by One57 or Aralpa Miami. In its discretion – and in the interest of maintaining the status quo – the Court will also stay the order in *Citibank III* as to the bank accounts of One57 and Aralpa Miami, although it acknowledges Plaintiff's argument that monetary injury ordinarily is not irreparable harm. *See* Opp. at 2.

parties shall meet and confer about the responses to Plaintiff's post-judgment discovery requests by **February 23, 2024**, and proceed with discovery.

Dated: February 16, 2024
      New York, New York

                                        SO ORDERED.

                                        *Jennifer Rochon*
                                        JENNIFER L. ROCHON
                                        United States District Judge