UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CITIBANK, N.A., <br><br>                           Plaintiff, <br><br>-against- <br><br>ARALPA HOLDINGS LIMITED PARTNERSHIP and RODRIGO LEBOIS MATEOS, <br><br>                           Defendants. | Case No. 1:22-cv-08842 (JLR) <br><br>**OPINION AND ORDER** |

JENNIFER L. ROCHON, United States District Judge:

Citibank, N.A. ("Plaintiff") successfully moved for judgment on the pleadings against Aralpa Holdings Limited Partnership ("Aralpa Holdings") and Rodrigo Lebois Mateos ("Lebois" and, together with Aralpa Holdings, "Defendants"). *See generally Citibank, N.A. v. Aralpa Holdings Ltd. P'ship*, No. 22-cv-08842 (JLR), 2023 WL 5971144 (S.D.N.Y. Sept. 14, 2023) ("*Citibank I*"). Plaintiff now moves for an award of attorneys' fees in the amount of $2,121,831.67. ECF Nos. 63 ("Br."), 72 ("Reply"), 117 ("4/12/24 Pl. Ltr."), 119 ("4/19/24 Pl. Ltr."), 126 ("5/10/24 Pl. Ltr."). Defendants oppose this motion. ECF Nos. 71 ("Opp."), 125 ("Defs. Ltr."). For the reasons set forth below, Plaintiff's motion is GRANTED IN PART.

## BACKGROUND

The Court assumes familiarity with the underlying events and discusses only those facts necessary to explain its decision here. Briefly stated, *Citibank I* centered on two breach-of-contract claims, one involving a promissory note executed by Plaintiff and Aralpa Holdings and the other involving a personal guaranty executed by Plaintiff and Lebois. 2023 WL 5971144, at *1-5; ECF Nos. 1-1 (the "Note"), 1-2 (the "Guaranty"). Both the Note and the Guaranty include New York choice-of-law clauses. Note § 26; Guaranty § 24. Both contracts also include provisions addressing attorneys' fees. The Note states:

> [Aralpa Holdings] hereby agrees to pay on demand: (i) all fees, costs and expenses (to include, without limitation, any fees, charges and disbursements of legal counsel) in connection with the (A) administration, modification, amendment or enforcement (whether through negotiations, legal proceedings or otherwise) of the Credit Documents; [and] (B) protection of [Plaintiff's] rights hereunder and thereunder, including in connection with any workout, restructuring or negotiations in respect thereof . . . .

Note § 15(a); *see id.* § 2 (defining "Credit Documents" as including the Note and the Guaranty). Meanwhile, the Guaranty states that "[n]otwithstanding anything contained herein to the contrary, [Lebois's] liability with respect to the payment of the Guaranteed Obligations shall include all Expenses." Guaranty § 2(b). The Guaranty elsewhere defines "Expenses" as:

> [A]ll fees, costs and expenses (including, without limitation, all court costs and all fees, costs and expenses of legal counsel) paid or incurred by [Plaintiff] in: (a) endeavoring to collect all or any part of the Obligations from, or in prosecuting any action against, [Lebois]; (b) taking any action with respect to any security or Collateral securing the obligations of [Lebois] under this Agreement; (c) preserving, protecting or defending the enforceability of this Agreement or any other Credit Document or its rights hereunder or thereunder; and (d) enforcing any rights under this Agreement or other Credit Document, contract causes of action and indemnities, whether primary, secondary, direct or indirect, absolute or contingent, fixed or otherwise (including monetary obligations incurred during the pendency of any bankruptcy, insolvency, receivership or other similar proceeding, regardless of whether allowed or allowable in such proceeding).

*Id.* § 1.

On December 27, 2022, Plaintiff moved for judgment on the pleadings. ECF No. 22. On July 17, 2023, after that motion had been fully briefed, Plaintiff moved for prejudgment attachment of Defendants' assets. ECF No. 34. On September 14, 2023, the Court granted Plaintiff's motion for judgment on the pleadings and consequently denied the motion for prejudgment attachment as moot. *Citibank I*, 2023 WL 5971144, at *18. In the months

2

following *Citibank I*, the parties and certain nonparties have litigated a series of disputes arising out of Plaintiff's efforts to enforce that judgment. *See, e.g.*, *Citibank, N.A. v. Aralpa Holding Ltd. P'ship*, No. 22-cv-08842 (JLR), 2024 WL 1555231 (S.D.N.Y. Apr. 10, 2024) ("*Citibank V*").

On October 16, 2023, Plaintiff moved for an award of attorneys' fees in the amount of $1,504,755.58. Br. at 9. This request included $901,236.13 paid to Goodwin Proctor LLP ("Goodwin") through September 2023 for preparing and filing the complaint and obtaining judgment on the pleadings. *Id.* at 6 n.4, 9.

Plaintiff also sought fees for actions taken in other jurisdictions during the pendency of the motion for judgment on the pleadings. In January 2023, Plaintiff – represented by Linklaters LLP ("Linklaters") – "commenced a foreign *ex parte* proceeding seeking preliminary relief to protect against the dissipation of assets located in Spain." *Id.* at 2 n.1, 4. The application for relief "was denied by the Spanish court of first instance on January 24, 2023, and that denial was affirmed by the Spanish appellate court on July 14, 2023." *Id.* at 2 n.1. Meanwhile, in July 2023, Plaintiff – represented by McMillan LLP ("McMillan") – "commenced a foreign proceeding before the Canadian courts seeking an order . . . appointing a receiver with limited powers to investigate and monitor the assets of Lebois and his related entities within Ontario, and to grant orders regarding the production and maintenance of corporate records concerning a Canadian limited partnership . . . through which Defendants maintain assets that may be necessary to satisfy the Judgment." *Id.* at 2 n.1, 4. The Canadian proceeding "was temporarily stayed pending the Court's adjudication of this action." *Id.* at 2 n.1.

Attorneys at Goodwin, Linklaters, and McMillan submitted affidavits in support of Plaintiff's fee application. ECF Nos. 66-68. Attached to each affidavit were billing records

with heavily redacted time entries. *Id.* In an accompanying letter, Plaintiff asserted that the redactions covered "privileged and confidential information protected under the attorney-client privilege and work product protection." ECF No. 64. Plaintiff offered to "make the unredacted versions of these invoices available for the Court's inspection *in camera* at the Court's request." *Id.*

Defendants opposed Plaintiff's fee application on October 30, 2023. Opp. Defendants argued that, among other things, the heavy redactions to Plaintiff's billing records did not "allow for a proper assessment." *Id.* at 2. Defendants insisted that Plaintiff "provide some breakdown of its fees to support its request, or submit unredacted copies *in camera* to permit the Court to make a proper assessment and disallow any unreasonable entries." *Id.* Plaintiff filed its reply brief on November 6, 2023. Reply.

On April 9, 2024, the Court ordered Plaintiff to submit its billing records for the Court's *in camera* review. ECF No. 115. Plaintiff timely complied. 4/12/24 Pl. Ltr. Plaintiff also "request[ed] the opportunity to supplement its submission with additional legal invoices reflecting attorneys' fees expended from October 2023 to the present in connection with [Plaintiff's] enforcement of the [*Citibank I*] Judgment." *Id.* Plaintiff offered "to file redacted versions of those supplemental legal invoices on the public docket and to simultaneously submit unredacted versions of the invoices for the Court's *in camera* review." *Id.* The Court granted Plaintiff's request to submit additional invoices *in camera* and set a schedule for supplemental letter briefing. ECF No. 118.[1]

---

[1] Defendants have not challenged Plaintiff's assertion of privilege over the records in question. Also, as Defendants have implicitly recognized, "courts often review invoices and billing records *in camera* when calculating awards of attorneys' fees and costs." *Major League Baseball Props., Inc. v. Corporación de Televisión y Microonda Rafa, S.A.*, No. 19-cv-08669 (MKV), 2020 WL 5518361, at *4 (S.D.N.Y. Sept. 14, 2020) (collecting cases).

Plaintiff submitted the additional invoices (attached to attorney affidavits) on April 19, 2024. ECF Nos. 120-124. In its letter brief, Plaintiff explained that – in addition to further work performed by Goodwin, Linklaters, and McMillan – Plaintiff had enlisted Kauff Laton Miller LLP ("KLM") and Martinez Algaba de Haro y Curiel ("Martinez") to assist Plaintiff in enforcing the *Citibank I* judgment. 4/19/24 Pl. Ltr. at 3. Altogether, Plaintiff requested that the Court award Plaintiff $617,076.09 in attorneys' fees in addition to the $1,504,755.58 already requested in the original fee application. *Id.*

Defendants filed a letter brief in opposition to Plaintiff's supplemental fee request on May 3, 2024. Defs. Ltr. Plaintiff filed a reply letter brief on May 10, 2024. 5/10/24 Pl. Ltr.

## LEGAL STANDARD

Under "the bedrock principle known as the American Rule," "[e]ach litigant pays his own attorney's fees, win or lose, unless a statute or contract provides otherwise." *Peter v. Nantkwest, Inc.*, 589 U.S. 23, 28 (2019) (quotation marks and citation omitted). Thus, "parties may agree by contract to permit recovery of attorneys' fees, and a federal court will enforce contractual rights to attorneys' fees if the contract is valid under applicable state law." *McGuire v. Russell Miller, Inc.*, 1 F.3d 1306, 1313 (2d Cir. 1993).

A fee applicant must "submit appropriate documentation to meet the burden of establishing entitlement to an award." *Fox v. Vice*, 563 U.S. 826, 838 (2011) (quotation marks and citation omitted). "But trial courts need not, and indeed should not, become green-eyeshade accountants." *Id.* "The essential goal" in calculating fee awards "is to do rough justice, not to achieve auditing perfection. So trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time." *Id.*; *see U.S. Fid. & Guar. Co. v. Braspetro Oil Servs. Co.*, 369 F.3d 34, 74 (2d Cir. 2004) (district

courts have "broad discretion" in "award[ing] attorneys' fees under a valid contractual authorization").

## DISCUSSION

By virtue of the choice-of-law clauses in the Note and the Guaranty, New York law applies.  Note § 26; Guaranty § 24; *see Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp.*, 418 F.3d 168, 177 (2d Cir. 2005) (Sotomayor, J.) ("We apply New York substantive law to resolve the dispute regarding plaintiff's entitlement to attorney's fees [under a contract governed by New York law].").  "Although New York follows the American Rule, it permits parties to recover attorney's fees in a contract if the intention to provide for such fees 'is unmistakably clear from the language of the contract.'"  *Gupta v. Headstrong, Inc.*, No. 20-3657, 2021 WL 4851396, at *2 (2d Cir. Oct. 19, 2021) (summary order) (brackets omitted) (quoting *Hooper Assocs., Ltd. v. AGS Computs., Inc.*, 548 N.E.2d 903, 905 (N.Y. 1989)).  Also, "an award of attorneys' fees pursuant to a contractual provision may only be enforced" under New York law "to the extent that the amount is reasonable and warranted for the services actually rendered."  *Exec. Risk Indem., Inc. v. Fieldbridge Assocs. LLC*, 642 F. App'x 25, 25 (2d Cir. 2016) (summary order) (brackets omitted) (quoting *Kamco Supply Corp v. Annex Contracting Inc.*, 689 N.Y.S.2d 189, 190 (2d Dep't 1999)).  Relevant factors include "the difficulty of the questions involved; the skill required to handle the problem; the time and labor required; the lawyer's experience, ability[,] and reputation; the customary fee charged by the Bar for similar services; and the amount involved."  *Id.* at 26 (citation omitted); *accord JK Two LLC v. Garber*, 98 N.Y.S.3d 37, 38 (1st Dep't 2019) (listing similar factors); *Vigo v. 501 Second St. Holding Corp.*, 994 N.Y.S.2d 354, 356 (2d Dep't 2014) (same).  A fee applicant bears the burden of establishing that a fee request is reasonable. *EVUNP Holdings LLC v. Frydman*, 62 N.Y.S.3d 263, 264 (1st Dep't 2017); *Blue Citi, LLC v.*

*5Barz Int'l Inc.*, 338 F. Supp. 3d 326, 341 (S.D.N.Y. 2018), *aff'd*, 802 F. App'x 28 (2d Cir. 2020) (summary order).

Defendants do not dispute that, under the Note and the Guaranty, Plaintiff may recover at least some of the attorneys' fees spent litigating *Citibank I*. *See* Reply at 1 (so noting). In other words, Defendants effectively concede that the Note and the Guaranty contain "unmistakably clear" language authorizing recovery of some fees. *Hooper*, 548 N.E.2d at 905; *see Curry Mgmt. Corp. v. JPMorgan Chase Bank, N.A.*, 643 F. Supp. 3d 421, 426 (S.D.N.Y. 2022) ("A party may be deemed to concede an argument by failing to address it in an opposition brief."). Defendants also do not dispute that "the hourly rates incurred [by Plaintiff's attorneys] and paid [by Plaintiff] (which reflected discounts) were within the rates that courts award in this District." Reply at 1 (so noting). Nor do Defendants deny that they must reimburse some amount of the fees expended by Plaintiff in its judgment-enforcement efforts after *Citibank I*. *See generally* Opp.; Defs. Ltr. Instead, Defendants make three main arguments that the Court addresses in turn: (1) Plaintiff cannot recover the fees that it incurred in seeking prejudgment remedies because the proceedings were frivolous, *see* Opp. at 2-4; (2) the simultaneous employment of Goodwin and KLM was unreasonable, *see* Defs. Ltr. at 2; and (3) Plaintiff's fees spent enforcing the judgment after *Citibank I* were unreasonable, *see id.* at 2-4.

I. **Fees Expended in Pursuit of Prejudgment Remedies**

Defendants argue that they should not have to reimburse the fees that Plaintiff spent seeking provisional remedies in this Court, Canada, and Spain prior to *Citibank I*. *See* Opp. at 2-4. Starting with Plaintiff's motion in this Court for prejudgment attachment, Defendants assert that the motion "was based on an incorrect premise – the supposed recent sale of a yacht. In fact, the yacht had been sold a year earlier and did not even belong to Defendants."

7

*Id.* at 3 (citation omitted). Defendants insist that Plaintiff "should not be rewarded for prematurely racing to Court with inaccurate information, on a motion ultimately denied as moot." *Id.* According to Defendants, "the Court should deduct the time relating to [this] motion," *id.* at 2, or alternatively "reduce the fees requested by a percentage across the board to account for the motion," *id.* at 3.

Regarding the Canadian proceedings, Defendants note that Plaintiff "seeks Goodwin Procter fees in an unspecified amount for work relating to Canada and $552,027.92 for [McMillan] . . . beginning on October 1, 2022, nine months *before* [Plaintiff] commenced proceedings in Canada." *Id.* at 4 (further emphasis omitted). Defendants accuse Plaintiff of "provid[ing] no basis to determine these proceedings were non-frivolous, and no explanation why it is reasonable to award fees, especially [for fees before] July 18, 2023," when Plaintiff filed the Canadian proceedings. *Id.* Defendants likewise argue that Plaintiff "has provided no basis to determine that [the Spanish] proceedings were non-frivolous, or that these fees are reasonable." *Id.*

To resolve this issue, the Court examines the language of the Note and the Guaranty. *See Hooper*, 548 N.E.2d at 904-05. "In keeping with New York's status as the preeminent commercial center in the United States, if not the world, [New York] courts have long deemed the enforcement of commercial contracts according to the terms adopted by the parties to be a pillar of the common law." *159 MP Corp. v. Redbridge Bedford, LLC*, 128 N.E.3d 128, 132 (N.Y. 2019). Thus, "freedom of contract prevails in an arm's length transaction between sophisticated parties," *id.* (brackets and citation omitted), and "[a]bsent some violation of law or transgression of a strong public policy," a court may not "relieve [the parties] of the consequences of their bargain," *U.S. Bank Nat'l Ass'n v. DLJ Mortg. Cap., Inc.*, 191 N.E.3d 355, 360 (N.Y. 2022) (citations omitted). If a party is dissatisfied with a contractual

8

provision, "the time to say so is at the bargaining table." *Eujoy Realty Corp. v. Van Wagner Commc'ns, LLC*, 4 N.E.3d 336, 343 (N.Y. 2013) (brackets and citation omitted).

As discussed above, the Note allows Plaintiff to recover "any fees, charges and disbursements of legal counsel" incurred "in connection with" the "enforcement (whether through negotiations, legal proceedings or otherwise) of the [Note and the Guaranty]" and the "protection of [Plaintiff's] rights hereunder and thereunder." Note § 15(a)(i). This provision encompasses Plaintiff's actions seeking provisional remedies in this Court, Canada, and Spain. "New York courts read the phrase[] 'in connection with' . . . expansively, requiring that there only be some form of causal relationship." *Vigilant Ins. Co. v. MF Glob. Fin. USA Inc.*, 187 N.Y.S.3d 617, 619 (1st Dep't 2023). Similarly, the Second Circuit has explained that "in connection with" is equivalent to "relating to" and "associated with." *Coregis Ins. Co. v. Am. Health Found., Inc.*, 241 F.3d 123, 128-29 (2d Cir. 2001) (Sotomayor, J.). Such "open-ended" phrases, *RSD Leasing, Inc. v. Navistar Int'l Corp.*, 81 F.4th 153, 163 (2d Cir. 2023), require only that something is "connected by reason of an established or discoverable relation" with something else, *Coregis*, 241 F.3d at 128 (citation omitted). On this understanding, Plaintiff's efforts to obtain provisional remedies were "in connection with" the "enforcement . . . of the [Note and the Guaranty]" and the "protection of [Plaintiff's] rights" under those agreements because such efforts, if successful, would ensure that Plaintiff could satisfy any judgment that it might obtain in its action for breach of contract. Note § 15(a)(i)(A)-(B). Thus, it is "unmistakably clear from the language" of the Note that Plaintiff can recover the fees that it spent seeking prejudgment remedies in connection with the Note in this Court, Canada, and Spain. *Hooper*, 548 N.E.2d at 905.

Additional "unmistakably clear" language is in the Guaranty. *Id.* The Guaranty allows Plaintiff to recover all fees "paid or incurred" in "endeavoring to collect all or any part

9

of the Obligations from, or in prosecuting any action against, [Lebois]" and "preserving, protecting or defending the enforceability of this Agreement or any other Credit Document or its rights hereunder or thereunder." Guaranty § 1. For the reasons just stated regarding similar language in the Note, Plaintiff's efforts to obtain provisional remedies prior to *Citibank I* were actions taken to "collect all or any part of the Obligations from" or "prosecut[e] any action against" Lebois and to "preserv[e], protect[,] or defend[]" Plaintiff's "rights []under" the Note and the Guaranty. *Id.*

The Court finds – and Defendants have not contested – that Plaintiff's fee expenditures in seeking provisional remedies were reasonable considering "the difficulty of the questions involved; the skill required to handle the problem; the time and labor required; the lawyer's experience, ability[,] and reputation; the customary fee charged by the Bar for similar services; and the amount involved." *Exec. Risk Indem.*, 642 F. App'x at 26 (citation omitted). The Court also finds that Plaintiff's efforts to seek provisional remedies regarding assets located in the United States, Canada, and Spain were reasonable to the extent that, "at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures." *Grant v. Martinez*, 973 F.2d 96, 99 (2d Cir. 1992); *accord Katalyst Sec., LLC v. Marker Therapeutics, Inc.*, No. 21-cv-08005 (LTS), 2023 WL 22610, at *5 (S.D.N.Y. Jan. 3, 2023). On the facts of this case, whether (for example) Lebois personally owned certain real-estate properties in New York and Miami or "a 137 foot Custom Line (Navetta 42) 2020 luxury yacht called 'Botti'" is not dispositive. ECF No. 35 ("Prejudg. Attach. Br.") at 8-9; *cf.* ECF No. 44 at 5 (Defendants denying that Lebois personally owned these properties). As Plaintiff explained in its brief supporting its motion for prejudgment attachment, the "specific assets" that Lebois "sold or rented during the pendency" of *Citibank I*, including the real-estate properties and the yacht, were "the same assets Lebois relied upon in personally

certifying to [Plaintiff] that Defendants were in compliance with numerous applicable covenants under the [N]ote and [G]uaranty requiring Lebois to maintain at least a $400 million net worth and to maintain unencumbered liquid assets in excess of 40% of the outstanding loan balance," requirements that were meant to "ensure [Plaintiff's] ability to collect on any judgment." Prejudg. Attach. Br. at 2; *see* Note § 11(r), (u); Guaranty § 9(c). Thus, the Court concludes that "a reasonable attorney [seeking to prevent dissipation of assets listed on personal financial statements that the Note and the Guaranty required Lebois to regularly submit] would have engaged in similar time expenditures." *Grant*, 973 F.2d at 99.

Defendants argue that these fees should be denied as unreasonable because the Plaintiff has not shown that these provisional remedy proceedings were non-frivolous given Plaintiff's lack of success. *See* Opp. at 3-4. The only decision that Defendants cite for this proposition is *Li Rong Gao v. Perfect Team Corp.*, No. 10-cv-01637 (ENV) (CLP), 2017 WL 9481011 (E.D.N.Y. Jan. 11, 2017), *report and recommendation adopted*, 2017 WL 1857234 (E.D.N.Y. May 8, 2017), *aff'd sub nom. Xiao Hong Zheng v. Perfect Team Corp.*, 739 F. App'x 658 (2d Cir. 2018) (summary order). Not only did that case involve prevailing-party fee-shifting provisions under the Fair Labor Standards Act and the New York Labor Law, *see id.* at *3, whereas the Note and the Guaranty lack any such prevailing-party limitation, *see* Note § 15(a); Guaranty §§ 1, 2(b), but the *Li Rong Gao* court *denied* the defendants' request to exclude fees expended on a prejudgment-attachment motion simply because the plaintiff was "unsuccessful on the motion" because, as the court explained, the motion was "not frivolous." 2017 WL 9481011, at *10. The court acknowledged that even under prevailing-party fee-shifting provisions, "there is no rule that [a plaintiff must] achieve total victory on every motion in pursuit of a successful claim in order to be compensated for the full number of hours spent litigant that claim. Rather, unsuccessful legal efforts are compensable as long

11

as they are not frivolous." *Id.* (original brackets, quotation marks, and citations omitted). So too here. Plaintiff prevailed in the underlying action by obtaining judgment on the pleadings in *Citibank I*, and there is no basis to conclude that its associated prejudgment enforcement efforts to ensure that assets enumerated in the personal financial statements required by the Note and Guaranty were not dissipated, while unsuccessful, were frivolous.

In sum, the Note and the Guaranty provide independently sufficient bases for Plaintiff to recover the attorneys' fees that it expended in seeking prejudgment remedies, and those expenditures were reasonable. Therefore, the Court rejects Defendants' argument that Plaintiff cannot recover fees expended in pursuit of provisional prejudgment remedies merely because those non-frivolous efforts were unsuccessful.

## II.   Simultaneous Employment of Goodwin and KLM After *Citibank I*

As noted above, Defendants do not contest that the Note and the Guaranty allow Plaintiff to recover reasonable attorneys' fees expended on judgment-enforcement efforts after *Citibank I*. *See generally* Opp.; Defs. Ltr. Rightly so, as Plaintiff may recover "all fees, costs and expenses of legal counsel . . . paid or incurred by [Plaintiff] in . . . endeavoring to collect all or any part of the [o]bligations from, or in prosecuting any action against [Lebois]." Guaranty §§ 1, 2(b); *see also* Note § 15(a) (allowing Plaintiff to recover fees spent "in connection with the . . . enforcement . . . of the Credit Documents").

Instead, Defendants object to Plaintiff's simultaneous employment of two U.S.-based firms, Goodwin and KLM, during the period after *Citibank I*. *See* Defs. Ltr. at 2. Defendants acknowledge that "parties may at times have more than one counsel," but they complain that they "cannot discern whether the firms were unnecessarily and unreasonably duplicating work, which is suggested by the overlapping entries during this period." *Id.* Plaintiff responds that it hired KLM after *Citibank I* "to pursue further post-Judgment collection and

12

enforcement efforts that resulted in a reduction in the hourly rates associated with collection and enforcement efforts on an ongoing basis." 5/10/24 Pl. Ltr. at 2. Plaintiff also notes that "some of Goodwin's post-Judgment fees were incurred prior to KLM's engagement during an initial appeal of [*Citibank I*] and participation in a mandatory mediation prior to Defendants' voluntary dismissal of the appeal of [*Citibank I*]." *Id.*

The Court recognizes that it must account for "duplicative or repetitive work" to ensure that the use of co-counsel was "cost efficient." *Simmonds v. N.Y.C. Dep't of Corr.*, No. 06-cv-05298 (NRB), 2008 WL 4303474, at *6 (S.D.N.Y. Sept. 16, 2008) (citation omitted). Plaintiff's decision to hire less expensive counsel for its post-judgment efforts was reasonable, and the Court – having examined the relevant billing records – confirms that the work performed by Goodwin and KLM was not duplicative or repetitive. Therefore, the Court declines to reduce Plaintiff's fee award on duplication grounds. *Compare, e.g., Rubenstein v. Advanced Equities, Inc.*, No. 13-cv-01502 (PGG), 2015 WL 585561, at *8 (S.D.N.Y. Feb. 10, 2015) (declining to reduce fees, despite the number of attorneys that billed time to the case, where "the work appear[ed] to have been performed in an efficient manner and duplication of effort [wa]s not apparent"), *with PNL Phx., LLC v. Janton Indus. Inc.*, 16 N.Y.S.3d 794, 2015 WL 1632449, at *6 (Sup. Ct. 2015) (unpublished table decision) (reducing fees to account for tasks that "could have been performed by less expensive lawyers in this matter without a significant loss to efficiency").

### III. Post-*Citibank I* Foreign Judgment-Enforcement Efforts

Finally, Defendants contend that the Court should reduce and/or deny Plaintiff's fee requests for its post-*Citibank I* efforts to enforce the judgment in Canada, Spain, and Mexico. *See* Defs. Ltr. at 2-4. Defendants raise several issues that the Court proceeds to analyze.

### A. Martinez's Spanish-Language Time Sheets

The Court first addresses Plaintiff's request for fees expended after *Citibank I* to enforce the judgment in Mexico. Initially, Plaintiff submitted the billing records for Martinez exclusively in Spanish. *See* ECF Nos. 124-1 through 124-4. Asserting that translating these billing records could cost over $1,000, Plaintiff requested that the Court – "in lieu of requiring [an] official translation" – permit Plaintiff to "submit an informal/unofficial translation of such invoices," "rely upon the summary of the invoices set forth" in the accompanying attorney declaration, and/or "deduct the approximately $36,000 in Mexican enforcement legal expense incurred but consider that deduction to the total fee application in further support of any reasonableness reduction or discounting the Court applies to any resulting fee award determination." 4/19/24 Pl. Ltr. at 3 n.1. Defendants objected to this proposal, arguing that Plaintiff "cannot simply rely on foreign language invoices. It should submit English language invoices or this amount should be denied in full, and not as the only reasonableness deduction." Defs. Ltr. at 4. Subsequently, in connection with their reply letter, Plaintiff submitted "an unofficial translation from Spanish to English of the legal invoices" prepared by one of Martinez's attorneys. ECF No. 127 ¶ 1; *see* ECF No. 127-1.

The Court declines to award Plaintiff any attorneys' fees for the work performed by Martinez. To begin with, none of the Martinez invoices have been officially translated; at most, the Court has counsel's unofficial translation. More importantly, though, Plaintiff did not submit the translated Martinez billing records until its reply letter, leaving Defendants no opportunity to respond with any potential objections. *See Unlimited Cellular, Inc. v. Red Points Sols. SL*, 677 F. Supp. 3d 186, 205 (S.D.N.Y. 2023) ("Generally, a court does not consider issues raised in a reply brief for the first time because if a party raises a new argument in a reply brief the opposing party may not have an adequate opportunity to respond

14

to it." (brackets, quotation marks, and citation omitted)).  The Court also notes that Plaintiff proposed such a deduction as a remedy for its initial failure to provide translated billing records.  *See* 4/19/24 Pl. Ltr. at 3 n.1.  Therefore, the Court denies Plaintiff's request for attorneys' fees for the work performed by Martinez.

### B. Reasonableness of Fees

As for the work performed in Canada and Spain, Defendants claim that "many of the billable hours expended . . . do not appear to relate to proceedings that have been initiated, much less proceedings that have been successful."  Defs. Ltr. at 2.  They reiterate their argument that "[u]nsuccessful legal efforts may not be compensable in certain circumstances," again citing only to *Li Rong Gao* and the standard for denial of fees for efforts undertaken on frivolous motions.  *Id.* ("Any further proceedings that these firms may have been preparing during these hours may be unsuccessful.  Thus, [Plaintiff's] request for fees for this category of work is premature and should be denied at this time.").  Defendants also represent that they have not received any notice of enforcement proceedings in either country during the relevant period.  *See id.* ("[T]he proceedings [Plaintiff] initiated in Canada on July 18, 2023, were stayed pending a decision from this Court and concluded on October 3, 2023 – shortly after the Court issued [*Citibank I*] and without the prejudgment relief [Plaintiff] had originally sought.  Counsel has not received notice of Canadian enforcement proceedings since that date, and the redacted time sheets from October 3, 2023 forward do not indicate what Canadian counsel was doing after that."); *id.* at 3 ("[Plaintiff] lost its bid for prejudgment attachment in Spain . . . at the trial court on January 24, 2023 and then at the appellate court on July 19, 2023.  Spanish counsel is seeking fees for the six months after that . . . yet counsel has not received notice of proceedings initiated since July 19, 2023.").

15

To the extent that Defendants seek a reduction in fees based on a lack of ultimate success by Plaintiff in enforcing the judgment in Canada and Spain, the Court rejects this argument on the same basis stated above regarding prejudgment-enforcement efforts – namely, there is no basis to conclude that those efforts were frivolous.

Defendants also state that "Lebois has disclosed to [Plaintiff] that certain assets are owned by entities in Spain and Mexico, and that [Defendants] understand those jurisdictions do not have alter ego theories that would support execution in satisfaction of the Judgment." Defs. Ltr. at 3. According to Defendants, they "offered to consider any authorities that say otherwise," but that Plaintiff "has thus far not provided any" such authority. *Id.* Defendants add: "If [Plaintiff] has Spanish counsel incurring fees for 'analysis' and 'legal research,' it should be willing to engage with Defendants on these issues of Spanish law, which would be efficient and to both parties' benefit." *Id.*

That Plaintiff chose to work with its Spanish counsel on enforcement efforts regarding assets that Lebois states are owned by Spanish entities, rather than "engage with Defendants" on issues of foreign law, is not unreasonable. The Court further rejects Defendants' roundabout attempt to preemptively litigate the issue of alter-ego liability under Spanish law, *cf. Citibank V*, 2024 WL 1555231, at *3-4 (declining to decide whether Mexico or Spain has alter-ego theory supporting Plaintiff's recovery of certain assets), and, as the Court has previously noted, alter-ego liability "is not the only means by which Plaintiff can execute against these assets," *id.* at *3 (brackets omitted). Given that there are potentially recoverable assets in Spain, the Court sees no basis to find it frivolous for Plaintiff to work with legal counsel in Spain to endeavor to enforce the judgment it successfully obtained in *Citibank I*.

To the extent that Defendants seek a reduction in fees based on an uncertainty about whether the particular fees sought for Canadian or Spanish counsel were reasonably

expended, however, the point is well taken. Having reviewed *in camera* the unredacted billing records for Linklaters and McMillan, the Court cannot discern how some of the entries reasonably relate to enforcing the *Citibank I* judgment.[2] And although the supporting declarations contain relevant information such as attorneys' names, positions, years of experience, and billing rates, *see* ECF No. 121 ¶¶ 2-4 (Linklaters); ECF No. 123 ¶¶ 1, 3-4 (McMillan), some entries shed little light on what exactly the attorneys were doing, let alone whether their work was reasonably related to enforcing the *Citibank I* judgment (and thus covered by the fee-shifting provisions in the Note and the Guaranty).

To be clear, for many of Plaintiff's foreign counsel's billing entries, the Court can discern their reasonable connection to enforcing the *Citibank I* judgment. And as a general matter, the Court does not expect longwinded billing narratives and attorney declarations. But especially where, as here, the fees relate to ancillary legal efforts abroad, and the fee-seeking party significantly redacts its billing records (thus undermining the fee-opposing party's ability to comb through the records and potentially provide additional context), it is not enough for a billing entry to state, for example, that an attorney "[l]iaise[d] with [Plaintiff's] US lawyers." ECF No. 121-1 at 5. Plaintiff's briefing also did not provide sufficient further explanatory details to evaluate the entries. More context is needed for the Court to confirm that the fees requested are "reasonable and warranted for the services actually rendered." *Exec. Risk Indem.*, 642 F. App'x at 25 (citation omitted); *accord Indep. Project, Inc. v. Ventresca Bros. Constr. Co.*, 397 F. Supp. 3d 482, 499 (S.D.N.Y. 2019) ("[S]ome specificity

---

[2] To give just one example noted by Defendants, McMillan paid two disbursements (totaling 32,555 Canadian dollars) to someone named Stewart McKelvey, "without any explanation on the invoice or supporting [declaration] as to who the person is and what work was performed." Defs. Ltr. at 3; *see* ECF No. 123-2 at 6; ECF No. 123-5 at 4. Even after Defendants flagged this issue in their letter brief, Plaintiff did not address the issue in its reply letter (despite having sufficient space to do so). *See generally* 5/10/24 Pl. Ltr.

17

is required in time entries to enable the court to determine whether a reasonable amount of time was spent on each activity.").

"A court may reduce the attorneys' fees requested for billing entries that are vague and do not sufficiently demonstrate what counsel did." *Grottano v. City of New York*, No. 15-cv-09242 (RMB), 2022 WL 2763815, at *7 (S.D.N.Y. July 15, 2022) (brackets, quotation marks, and citation omitted); *accord Montefiore Med. Ctr. v. Loc. 272 Welfare Fund*, Nos. 09-cv-03096 (RA), 14-cv-10229 (RA), 2019 WL 4565099, at *9 (S.D.N.Y. Sept. 19, 2019). Of course, "a district court need not conduct an item-by-item analysis of a fee application," *Rossbach v. Montefiore Med. Ctr.*, 81 F.4th 124, 144 (2d Cir. 2023) (quotation marks and citation omitted), and "the court has discretion simply to deduct a reasonable percentage of the number of hours claimed," *Raja v. Burns*, 43 F.4th 80, 87 (2d Cir. 2022) (citation omitted). Here, the Court finds it appropriate to reduce the post-*Citibank I* fees awarded to Linklaters and McMillan by 20 percent across the board. *See, e.g.*, *Kirsch v. Fleet St., Ltd.*, 148 F.3d 149, 172 (2d Cir. 1998) (affirming reduction of fees by 20 percent to account for "vague or otherwise inconsistent time sheet entries, as well as other unrecoverable hours" (brackets omitted)); *Hines v. City of Albany*, 613 F. App'x 52, 55 (2d Cir. 2015) (summary order) (affirming reduction of fees by 30 percent to account for billing practices that "frustrated meaningful review of the reasonableness of the claimed hours"); *Olaechea v. City of New York*, No. 17-cv-04797 (RA), 2022 WL 3211424, at *16-17 (S.D.N.Y. Aug. 9, 2022) (reducing fee award by 20 percent to account for, among other issues, "excessive, duplicative, or impermissibly vague" billing entries); *Congregation Rabbinical Coll. of Tartikov, Inc. v. Village of Pomona*, 188 F. Supp. 3d 333, 344-45 (S.D.N.Y. 2016) (reducing fees by 30 percent to account for "excessive hours and vague entries"); *Trinidad v. Pret a Manger (USA) Ltd.*, No. 12-cv-06094 (PAE), 2014 WL 4670870, at *10 (S.D.N.Y. Sept. 19, 2014) (reducing

fee award by 25 percent because, among other reasons, "many of [counsel's] time entries [we]re thinly worded and non-specific," which prevented the court from "meaningfully assess[ing] whether it was reasonable, or excessive, to work the number of hours reported on the task or tasks described").

## CONCLUSION

For the reasons set forth above, the Court GRANTS IN PART Plaintiff's motion for attorneys' fees.  Specifically:

- Plaintiff's initial request for fees in the amount of $1,504,755.58 (Br. at 9) is GRANTED in full;

- Plaintiff's supplemental request for fees paid to Goodwin Proctor LLP in the amount of $165,448.37 (4/19/24 Pl. Ltr. at 2) is GRANTED in full;

- Plaintiff's supplemental request for fees paid to Kauff Laton Miller LLP in the amount of $226,125.97 (*id.* at 3) is GRANTED in full;

- Plaintiff's supplemental request for fees paid to Linklaters in the amount of $56,957.24 (*id.* at 2) is reduced by 20 percent to $45,565.79 and, as reduced, is GRANTED;

- Plaintiff's supplemental request for fees paid to McMillan LLP in the amount of $93,643.21 (*id.*) is reduced by 20 percent to $74,914.57 and, as reduced, is GRANTED; and

- Plaintiff's supplemental request for fees paid to Martinez Algaba de Haro y Curiel in the amount of $36,442.84 (*id.* at 3) is DENIED in full.

The Clerk of Court is respectfully directed to enter judgment in the total amount of $2,016,810.28 and terminate the motion at ECF No. 61.

Dated: June 4, 2024
New York, New York

SO ORDERED.

_____
JENNIFER L. ROCHON
United States District Judge

19