UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CITIBANK, N.A.,

                                    Plaintiff,

              -against-                                    Case No. 1:22-cv-08842 (JLR)

ARALPA HOLDINGS LIMITED                          **OPINION AND ORDER**
PARTNERSHIP and RODRIGO LEBOIS
MATEOS,

                                    Defendants.

JENNIFER L. ROCHON, United States District Judge:

Before the Court are two motions: (1) Non-party Luis Barroso González's ("Barroso" or "Putative Intervenor") motion to intervene pursuant to Federal Rule of Civil Procedure ("Rule") 24 and (2) Plaintiff Citibank, N.A.'s ("Citibank" or "Plaintiff") motion to seal. For the following reasons, the Court GRANTS the motion to intervene and GRANTS in part and DENIES in part the motion to seal.

## BACKGROUND

### I.    Factual Background

This motion stems from the extensive post-judgment litigation by Citibank against Defendants Rodrigo Lebois Mateos ("Lebois") and Aralpa Holdings Limited ("Aralpa," and together with Lebois, "Defendants"). Given the extensive procedural history, the Court assumes familiarity with the underlying litigation and sets out only the facts necessary to resolve the present motions. The facts relevant to Barroso's claims are drawn from Barroso's Proposed Complaint at Dkt. 266 ("Lee Decl."), Ex. O ("Proposed Compl."), and accepted as true for purposes of resolving this motion. *See, e.g.*, *1199SEIU United Healthcare Workers E. v. PSC Cmty. Servs.*, 608 F. Supp. 3d 50, 64 n.6 (S.D.N.Y. 2022) ("[A]ll well-pleaded allegations in a

proposed intervenor's pleading are accepted as true when resolving a motion to intervene."); *see* Fed. R. Civ. P. 24(c) ("A motion to intervene must . . . state the grounds for intervention and be accompanied by a pleading that sets out the claim or defense for which intervention is sought."). The Court also draws from declarations filed by the parties to provide additional factual context where those filings do not contradict Barroso's allegations.

### A.    Barroso's Contract with Lebois

Barroso is a Mexican citizen and former Chief Executive Officer of Unifin Financiera, S.A.B. de C.V. ("Unifin").  Dkt. 270 ("Barroso Decl.") ¶ 5.  On October 30, 2019, Barroso and Lebois (through Proxemcap, a Lebois-controlled entity) entered into an agreement in which Lebois would pay Barroso $41.95 million in exchange for 26,059,527 Series A shares of Unifin. Proposed Compl. ¶ 2, 20; Barroso Decl. ¶ 8.  The terms of this agreement were modified on December 17, 2020, when Barroso and Lebois entered into a "Letter of Amendment Agreement."  Proposed Compl. ¶ 22.  Under this agreement, the remaining monies owed would be paid through "the transfer and payment in kind" of "apartments numbered 1400, 1809, 2006, 2302, and 2306" in the Bond condominium, located in Miami, Florida (the "Miami Condos"). *Id.*  Then, on February 2, 2021, the parties signed another agreement wherein Proxemcap assigned to Lebois "the express and unconditional obligation to pay Mr. Barroso . . . by transferring and giving in payment to Barroso the [Miami Condos]."  *Id.* ¶¶ 23-24 (omission in original); *see also* Lee Decl., Ex. A.  In that same month, tenants occupying the Miami Condos were instructed to make rent payments to Barroso's bank accounts.  Proposed Compl. ¶ 25.  In 2023, Barroso also paid approximately $42,875.62 toward the 2022 property taxes on the Miami Condos, *id.* ¶ 27, and "recently" in January 2026 paid approximately $115,072.65 toward overdue 2023 and 2024 property taxes on the Miami Condos, *id.* ¶ 35; *see also* Barroso Decl. ¶¶ 14-15; Lee Decl., Ex. N.

**B.      Citibank's Judgment Against Lebois**

On October 17, 2022 — several years after the arrangement between Barroso and Lebois — Citibank initiated this action against Lebois and Aralpa, seeking to recover the amounts owed on defaulted loans.  Dkt. 1.  On September 15, 2023, the Court entered a judgment in the amount of $38,578,670.43 in favor of Citibank.  Dkt. 55.  Post-judgment, Citibank began the enforcement process, including initiating post-judgment discovery.

During discovery, Citibank uncovered Lebois's ownership interests in the Miami Condos. Citibank then recorded its judgment in Miami-Dade County on November 14, 2023.  Dkt. 274 ("Perrelle Decl.") ¶ 4; *see also id.*, Ex. 2.  On January 11, 2024, Citibank moved for post-judgment execution in Miami-Dade Circuit Court against the Miami Condos.  Perrelle Decl. ¶ 5. Lebois opposed the motion, and the Miami court has yet to issue its decision.  *Id.* ¶¶ 6-8.

In June 2025, Citibank began discussions with Lebois about selling the Miami Condos privately, and during these discussions, Citibank learned that the Miami Condos were being rented.  *Id.* ¶ 9.  Following the breakdown in these negotiations, Citibank moved in this Court for a turnover and installment order, directing Lebois to pay past and future rent collected from the Miami Condos to Citibank.  Dkt. 195.  Lebois opposed the motion, claiming that he had entered into a contract to sell the Miami Condos to Barroso and had arranged for rent payments to be paid to Barroso, not to him.  Dkt. 228 at 9.  The Court was not persuaded, finding that Lebois did not present any evidence showing Barroso was entitled to the rent payments, nor had Lebois transferred legal title of the Miami Condos to Barroso.  *Citibank, N.A. v. Aralpa Holdings Ltd. P'ship*, No. 22-cv-08842 (JLR), 2025 WL 2813765, at *16 (S.D.N.Y. Oct. 3, 2025).  Such evidentiary deficiencies also led the Court to conclude that Barroso was not a necessary party under Rule 19.  *Id.* at *11 n.5.  Thus, the Court issued the turnover and installment orders.  *Id.* at *18-19.

Shortly thereafter, on October 24, 2025, Citibank moved to place the Miami Condos into receivership.  Dkt. 247, 251.  Lebois did not oppose this motion or otherwise respond.  Accordingly, on December 9, 2025, the Court granted the motion, appointed Kauff Laton LLP as Receiver, and placed the Miami Condos into Receivership.  Dkt. 255 (the "Receivership Order").  Among other things, the Receivership Order granted the Receiver the power to "[t]ake possession, ownership, and control of the Miami Condos," "[a]dminister, collect, improve, lease or repair the Miami Condos," and "[e]ffectuate a transfer, assignment or sale of the Miami Condos."  *Id.* at 2.

Then, on December 12, 2025, Barroso learned of the Receivership Order when the Miami Condos' property manager, Claudia Moya, informed him of recent communications from the Receiver.  Barroso Decl. ¶¶ 9, 17.

## II.    Procedural Background

On January 29, 2026, Barroso moved to intervene pursuant to Rule 24.  Dkt. 264; Dkt. 265 ("Br."); Lee Decl.; Dkt. 267 ("Zorilla Decl."); Dkt. 268 ("Osorio Decl."); Dkt. 269 ("Moya Decl."); Barroso Decl.  Barroso seeks to intervene to file a complaint for a declaratory judgment, asking the Court to declare his ownership rights in the Miami Condos and to prevent the Receiver from selling the properties.  Proposed Compl. ¶¶ 41-51.  Citibank opposed the motion on February 12, 2026, Dkt. 273 ("Opp."); Perrelle Decl., and Barroso replied on February 19, 2026, Dkt. 277 ("Reply").[1]

Citibank also filed a motion to seal on February 12, 2026, Dkt. 275, which Barroso did not oppose or otherwise address.  Both motions are fully briefed.

---

[1] On March 25, 2026, Barroso informed the Court that he had moved to intervene in the Florida Court proceedings on February 18, 2026, and that a hearing on that motion is scheduled for July 9, 2026.  Dkt. 278.

**LEGAL STANDARD**

Rule 24 permits a non-party to intervene in an ongoing litigation as of right or by permission of the Court. Fed. R. Civ. P. 24(a), (b). A non-party may intervene as of right under Rule 24(a)(2) when the non-party "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2). The Court may also allow a non-party to intervene under Rule 24(b)(1)(B) when the non-party "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). When considering permissive intervention, "the [C]ourt must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3).

"In seeking intervention under [Rule 24], the proposed intervenor bears the burden of demonstrating that it meets the requirements for intervention." *Kamdem-Ouaffo v. Pepsico, Inc.*, 314 F.R.D. 130, 134 (S.D.N.Y. 2016); *accord Baliga ex rel. Link Motion Inc. v. Link Motion Inc.*, No. 18-cv-11642 (VM) (DF), 2020 WL 5350271, at *17 (S.D.N.Y. Sept. 4, 2020). For purposes of a motion to intervene, the Court "accept[s] as true the non-conclusory allegations of the motion." *Kehagias v. Philadelphia Indem. Ins. Co.*, 345 F.R.D. 46, 51 (S.D.N.Y. 2023) (quoting *Aristocrat Leisure Ltd. v. Deutsche Bank Tr. Co. Ams.*, 262 F.R.D. 348, 352 (S.D.N.Y. 2009)). Notably, "the particular facts of each case are important," and thus decisions are committed to the discretion of the Court. *Floyd v. City of New York*, 770 F.3d 1051, 1057 (2d Cir. 2014) (quoting *United States v. Pitney Bowes, Inc.*, 25 F.3d 66, 69 (2d Cir. 1994)).

The Second Circuit has advised that, "except for allegations frivolous on their face, an application to intervene cannot be resolved by reference to the ultimate merits of the claims which the intervenor wishes to assert following intervention." *In re N.Y.C. Policing During*

*Summer 2020 Demonstrations*, 27 F.4th 792, 800 (2d Cir. 2022) (quoting *Oneida Indian Nation v. New York*, 732 F.2d 261, 265 (2d Cir. 1984)); *accord Brennan v. N.Y.C. Bd. of Educ.*, 260 F.3d 123, 129-30 (2d Cir. 2001) (finding that district court abused its discretion by denying intervention because putative intervenors were unlikely to succeed on their claimed interests). At the motion to intervene stage, "[t]he sufficiency of an interest entitles the intervenor to contest the merits of his/her claim based on that interest." *Brennan*, 260 F.3d at 130. In assessing the sufficiency of the interest, "the Court employs the same standards as it would apply in considering a motion to dismiss for failure to state a valid claim." *Dynamic Sys., Inc. v. Skanska USA Bldg. Inc.*, No. 19-cv-10237 (NSR), 2021 WL 6063609, at *2 (S.D.N.Y. Dec. 21, 2021) (quotation omitted); *accord In re Merrill Lynch & Co., Inc. Rsch. Reps. Sec. Litig.*, No. 02-cv-8472 (JFK), 2008 WL 2594819, at *5 (S.D.N.Y. June 26, 2008). Thus, the Court must decide "whether those pleadings allege a legally sufficient claim or defense and not whether the applicant is likely to prevail on the merits." *Dynamic Sys.*, 2021 WL 6063609, at *2 (quoting *Hill v. Cnty. of Montgomery*, No. 14-cv-00093, 2018 WL 2417839, at *5 (N.D.N.Y. May 29, 2018)).

## DISCUSSION

Barroso argues that he is entitled to intervene as of right under Rule 24(a)(2), Br. at 9-18, and, in the alternative, Barroso asks the Court to permit him to intervene under Rule 24(b)(1)(B), *id.* at 19-21. Citibank opposes intervention on both grounds. Opp. at 11-17. The Court concludes that Barroso is entitled to intervene pursuant to Rule 24(a)(2), and thus need not address the arguments under Rule 24(b)(1)(B).

### I.    Rule 24(a)(2)

Under Rule 24(a)(2), "a putative intervenor as of right must meet four criteria: the applicant must (1) file a timely motion; (2) claim an interest relating to the property or

transaction that is the subject of the action; (3) be so situated that without intervention the disposition of the action may impair that interest; and (4) show that the interest is not already adequately represented by existing parties." *Butler, Fitzgerald & Potter v. Sequa Corp.*, 250 F.3d 171, 176 (2d Cir. 2001). An intervenor must also establish Article III standing where he "seeks additional relief beyond that which the plaintiff requests." *Town of Chester v. Laroe Ests., Inc.*, 581 U.S. 433, 339 (2017). Applying this framework, Barroso has met his burden for intervention. The parties agree that Barroso meets the requirements for both standing and timeliness. *See* Br. at 8-13; Opp. at 10.

Moving to the second element, "[f]or an interest to be cognizable by Rule 24(a)(2), it must be 'direct, substantial, and legally protectable.'" *In re N.Y.C. Policing*, 27 F.4th at 799 (quoting *Bridgeport Guardians, Inc. v. Delmonte*, 602 F.3d 469, 473 (2d Cir. 2010)). "An interest that is remote from the subject matter of the proceeding, or that is contingent upon the occurrence of a sequence of events before it becomes colorable, will not satisfy the rule." *Washington Elec. Co-op., Inc. v. Mass. Mun. Wholesale Elec. Co.*, 922 F.2d 92, 97 (2d Cir. 1990) (denying intervention when the putative intervenor's interest was contingent on two other events occurring). Typically, an interest in the real property at issue is sufficient to satisfy this element. *See, e.g.*, *JPMorgan Chase Bank, Nat. Ass'n v. Nell*, No. 10-cv-01656 (RRM), 2012 WL 1030904, at *3 (E.D.N.Y. Mar. 27, 2012) ("An owner of property underlying an action has a direct interest in the action for Rule 24(a) purposes."); *see also Long Island Trucking, Inc. v. Brooks Pharmacy*, 219 F.R.D. 53, 56 (E.D.N.Y. 2003) (finding direct interest when putative intervenor "claims to be the proper owner and/or secured creditor of the bills and invoices which are the subject matter of this action").

Here, Barroso argues that he has a direct, substantial, and legally protectable interest in the Miami Condos because his contract with Lebois conferred on him equitable title to the

7

property, even though he never received legal title.  Br. at 13-17.  Under Florida law, "a contract to sell real property establishes the vendee 'as the beneficial owner of the property, with the vendor retaining only naked legal title in trust for the vendee.'"  *Demosthenes v. Girard*, 955 So. 2d 1189, 1191 (Fla. Dist. Ct. App. 2007) (quoting *B.W.B. Corp. v. Muscare,* 349 So. 2d 183, 184 (Fla. Dist. Ct. App. 1977)); *see also In re Estate of Sweet,* 254 So. 2d 562, 563 (Fla. Dist. Ct. App. 1971) ("[W]hen an owner makes a specifically enforceable contract to sell his real property, the vendee becomes the beneficial owner and the vendor retains only naked legal title in trust for the vendee as security for the vendee's performance.").  Even if the seller does not deliver legal title, the purchaser still acquires a legal interest in the property.  *Cain & Bultman, Inc. v. Miss Sam, Inc.*, 409 So. 2d 114, 119 (Fla. Dist. Ct. App. 1982) ("[T]he purchaser holds a contractual right under which, if the purchase price is paid and the seller fails to voluntarily convey the legal title, the purchaser is entitled to apply to a court of equity to specifically enforce the contract and to have the court require the seller, or his successors in interest with notice, to convey the legal title to the buyer.").  According to the Proposed Complaint, Barroso entered into a written contract with Lebois, wherein Lebois agreed to transfer the Miami Condos to Barroso as payment for shares in the company Unifin.  Proposed Compl. ¶ 24.  Barroso further asserts that he collected rent payments, was listed as the owner on a particular sale document, and paid property taxes for the Miami Condos.  *Id.* ¶¶ 25-28.  Accepting all his allegations as true, Barroso has plausibly claimed an interest relating to the property or transaction that is directly implicated by the Court's Receivership Order.

In response, Citibank argues that equitable title does not apply because Barroso is not a counterparty to a real estate contract in a transaction for real property, the written agreement transferring the Miami Condos lacked the requisite specificity, and his subsequent actions such as paying some tax arrears do not establish an equitable interest.  Opp. at 11-17.  Citibank also

asserts that intervention should be denied because Citibank's claim is superior under Florida's recording statute. *Id.* at 17-21.

These arguments may well be successful when the Court considers the merits of whether Barroso has an equitable interest in the real estate or the superiority of Citibank's claim under the Florida recording statute, but these merits questions do not show at this stage that Barroso does not claim an interest relating to the property as required for intervention. *See Brennan*, 260 F.3d at 130 (at the motion to intervene stage, "[t]he sufficiency of an interest entitles the intervenor to contest the merits of his/her claim based on that interest" even if "the court deems the claim to be legally or factually weak"). Thus, the second element has been met.

Turning to the third element, Barroso asserts that his ownership interest in the Miami Condos will be impaired absent intervention because the Receiver has the authority to collect rent and sell the property. Br. at 17-18. Given that the Receivership Order grants the Receiver the authority to "[t]ake possession, ownership, and control of the Miami Condos," "[a]dminister, collect, improve, lease or repair the Miami Condos," and "[e]ffectuate a transfer, assignment or sale of the Miami Condos," Dkt. 255 at 2, the Court agrees with Barroso. Absent intervention, his potential property interest in the Miami Condos will be impaired.

Finally, Barroso argues, and the Court agrees, that his interests are not adequately represented by any of the current parties to the litigation. Br. at 18. Under Rule 24(a)(2), the putative intervenor's burden of demonstrating "inadequacy of representation is generally speaking 'minimal.'" *Sequa Corp.*, 250 F.3d at 179 (quoting *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n.10 (1972)). "The requirement of [Rule 24(a)(2)] is satisfied if the applicant shows that representation of his interest 'may be' inadequate[.]" *Trbovich*, 404 U.S. at 538 n.10. Here, neither Citibank nor Lebois nor Aralpa has an adequate incentive to protect Barroso's interests in the Miami Condos. Citibank seeks to recover on its judgment by disposing of the

9

Miami Condos.  Defendants Lebois and Aralpa have also insufficiently sought to protect Barroso's interests: they neglected to produce documentary evidence of rent payments being delivered to Barroso in the context of the prior turnover proceeding, *see Citibank*, 2025 WL 2813765, at \*16, and further failed to even appear to oppose Citibank's motion to place the Miami Condos into receivership, *see* Dkt. 255 at 1.

In sum, Barroso has made a sufficient showing that he is entitled to intervene under Rule 24(a)(2).  Whether his complaint will ultimately succeed, given the significant arguments raised by Citibank, is another matter.

At the end of his Reply, Barroso requests that the Court either grant him declaratory judgment affirming his priority over the Miami Condos or amend the Receivership Order to prohibit the Receiver from engaging in the "marketing, sale, transfer, encumbrance, or change in the collection of rents relating to the Miami Condos pending the outcome of the Florida state court proceedings."  Reply at 10.  Given that the only motion presented to the Court is the motion to intervene, and Barroso has neither filed a motion for declaratory or injunctive relief nor even requested this relief until his Reply brief, the Court will reserve any decision on those requests until Barroso makes a motion for such relief and Citibank has an opportunity to respond.

## II.    Motion to Seal

The last outstanding issue is Citibank's motion to seal Exhibits 10 and 11 to the Perrelle Declaration.  Dkt. 275.  Citibank does not take a position on whether these documents should remain sealed but rather filed them under seal at Lebois's request.  *Id.*  According to Citibank, Lebois produced these documents during post-judgment discovery and requested that they be sealed because they contain confidential financial information.  Lebois has not responded to Citibank's present motion to seal.  Accordingly, the Court analyzes this motion without being guided by the parties' arguments.

"Judicial documents are subject . . . to a potent and fundamental presumptive right of public access[.]" *Olson v. Major League Baseball*, 29 F.4th 59, 87 (2d Cir. 2022) (quoting *Mirlis v. Greer*, 952 F.3d 51, 58 (2d Cir. 2020)). In *Lugosch v. Pyramid Co. of Onondaga*, the Second Circuit articulated a three-step test for district courts to decide whether a filing can remain under seal. 435 F.3d 110, 119 (2d Cir. 2006). First, the court must "conclude that the documents at issue are indeed 'judicial documents,'" meaning that the item is "relevant to the performance of the judicial function and useful in the judicial process." *Id.* (quoting *United States v. Amodeo*, 71 F.3d 1044, 1048 (2d Cir. 1995)). Second, the court assesses "the weight of that presumption," which is "governed by the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts." *Id.* (quoting *Amodeo*, 71 F.3d at 1049). Lastly, the court is directed to weigh the presumption of public access attached to the document against the countervailing factors. *Id.* at 120.

Here, Citibank asks the Court to seal Dkt. 276-10 and Dkt. 276-11, both of which are exhibits to the Perrelle Declaration. These documents, filed in opposition to the motion to intervene, are judicial records that carry a strong presumption of public access. Citibank asserts that Lebois is maintaining that both documents contain confidential financial information. Dkt. 275. Upon reviewing the documents, however, the Court does not find that sealing the documents is fully justified. Dkt. 276-10 contains a budget presentation for the Miami Condos but does not include financial information that is so sensitive as to outweigh the presumption of public access. In contrast, Dkt. 276-11 contains personal confidential financial information, such as Lebois's bank account numbers, and warrants sealing at least in part. Citibank must therefore refile Dkt. 276-10 publicly with no redactions and refile Dkt. 276-11 with Lebois's bank account numbers and any other personally identifiable information redacted. *See, e.g., Lively v. Wayfarer*

11

*Studios LLC*, No. 24-cv-10049 (LJL), 2025 WL 2351013, at *2 (S.D.N.Y. Aug. 13, 2025) (directing party to "publicly refile all exhibits . . . containing [personally identifying information] with narrow redactions removing that personal information").

## CONCLUSION

For the aforementioned reasons, the Motion to Intervene is GRANTED. Barroso shall file his proposed complaint by April 28, 2026, and the Receiver shall respond.

The Motion to Seal is also GRANTED in part and DENIED in part. The motion to seal Dkt. 276-10 is DENIED and Citibank is directed to refile a public version on the docket. The motion to seal Dkt. 276-11 is GRANTED in part and Citibank is directed to file a redacted version of the document to protect bank account numbers and personally identifiable information by April 28, 2026.

The Clerk of the Court is respectfully directed to terminate the open motions at Dkt. 264 and Dkt. 275.

Dated:  April 21, 2026
         New York, New York

SO ORDERED.

JENNIFER L. ROCHON
United States District Judge

12