UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CITIBANK, N.A.,

                            Plaintiff,

            -against-

ARALPA HOLDINGS LIMITED
PARTNERSHIP and RODRIGO LEBOIS
MATEOS,

                            Defendant.

Case No. 1:22-cv-08842 (JLR)

**OPINION AND ORDER**

JENNIFER L. ROCHON, United States District Judge:

Before the Court is Plaintiff Citibank, N.A.'s ("Plaintiff" or "Citibank") motion to:

(1) hold Aralpa Investments, LLC ("Aralpa Investments") and Rodrigo Lebois Mateos

("Lebois") in contempt for disobeying the Court's October 10, 2025 Receivership Order;

(2) hold nonparty Almudena Lebois Ocejo ("Ocejo" and collectively with Aralpa Investments

and Lebois, the "Alleged Contemnors") in contempt for aiding and abetting Aralpa Investments'

and Lebois's noncompliance with the Court's October 10, 2025 Receivership Order; and (3)

impose sanctions against the Alleged Contemnors.

For the following reasons, the motion is GRANTED in part and DENIED in part.

**BACKGROUND**

The following facts are undisputed unless otherwise noted, and are drawn from the

declarations of Adam Kauff and Ocejo, *see* Dkt. 282 ("Kauff Decl."); Dkt. 299-1 ("Ocejo

Decl."), the exhibits attached thereto, and the Court's previous findings in *Citibank, N.A. v.

Aralpa Holdings Ltd. Partnership* (*Citibank I*), No. 22-cv-08842 (JLR), 2023 WL 5971144

(S.D.N.Y. Sept. 14, 2023), *appeal dismissed*, No. 23-7451, 2024 WL 1714598 (2d Cir. Jan. 25,

2024); *Citibank, N.A. v. Aralpa Holdings Ltd. Partnership* (*Citibank II*), 714 F. Supp. 3d 416

(S.D.N.Y. 2024), *aff'd*, (*Citibank III*), No. 24-423, 2025 WL 289499 (2d Cir. Jan. 24, 2025) (summary order); and *Citibank, N.A. v. Aralpa Holdings Ltd. Partnership* (*Citibank IV*), No. 22-cv-08842 (JLR), 2025 WL 2813765 (S.D.N.Y. Oct. 3, 2025).

## I.    Factual Background

The instant motion is yet another installment in Citibank's quest to recover its judgment against Defendants Lebois and Aralpa Holdings Limited Partnership ("Aralpa" and collectively with Lebois, "Defendants").

On October 17, 2022, Citibank filed the instant lawsuit, bringing claims against Defendants for breach of a Note and Guaranty. Dkt. 1; *see also Citibank IV*, 2025 WL 2813765, at *2-3. Defendants answered the Complaint on December 9, 2022. Dkt. 21. On September 14, 2023, the Court granted Citibank's motion for judgment on the pleadings. *See Citibank I*, 2023 WL 5971144, at *1. On September 15, 2023, the Court entered judgment in Citibank's favor of "thirty-five million dollars ($35,000,000.00), plus interest on the principal in the amount of $3,578,670.43 at the contractual default rate of interest from the date of the default (August 11, 2022) through the entry of th[e] judgment, plus post-judgment interest at the federal statutory rate set forth in 28 U.S.C. § 1961, and, if and when the Court orders, an amount of attorneys' fees to be determined." Dkt. 55.

Citibank then began its efforts to enforce the judgment against Defendants. Under the terms of the Note and Guaranty, Lebois was required to, and did, provide Citibank with personal financial statements. *Citibank IV*, 2025 WL 2813765, at *2. Each of the personal financial statements that Lebois submitted from March 31, 2020, to June 30, 2022, listed specific assets, and included, among many other things, almost $20 million worth of artwork. *See, e.g.*, Dkt. 200-5 (March 31, 2020 personal financial statement). During post-judgment discovery, Lebois was ordered to provide, and thereafter provided, information regarding the location and value of

2

the assets listed on his personal statements.  *Citibank IV*, 2025 WL 2813765, at *3.  He claimed

that the artwork listed on his personal statement consisted of forty-three pieces, which Lebois

estimated to be worth $27,700,000 (the "Art"), whose "[t]itle [wa]s held by Lebois family

members."  Dkt. 202-3 ¶ 3(l).  While attempting to complete service via the Hague Convention

on various Lebois family members, Citibank obtained documents from Lebois showing that the

Lebois family did not in fact own the Art.  *Citibank IV*, 2025 WL 2813765, at *4.  Instead, these

documents showed that the Art was owned by Aralpa Investments, a Delaware LLC, whose sole

member is Aralpa Capital S.A. DE C.V. ("Aralpa Capital"), a Mexican corporation.  *Id.*; *see also*

Ocejo Decl. ¶¶ 3-4; *see generally id.*, Ex. A.  At that time, Lebois's daughter, Ocejo, was the sole

manager of Aralpa Investments.  *Citibank IV*, 2025 WL 2813765, at *1.  Citibank also learned

that Aralpa Investments had sold one of the forty-three pieces of Art in May 2024, was

attempting to sell more at the behest of Lebois, and had pledged other pieces to third-parties.  *Id.*

at *4.

After learning this, on August 14, 2025, Citibank moved for an order against Aralpa

Investments and Lebois, seeking, among other things, the turnover of the Art pursuant to Federal

Rule of Civil Procedure ("Rule") 69 and New York Civil Practice Law and Rules 5225(b).

Dkt. 195.  Lebois and Ocejo, in her capacity as the then-sole manager of Aralpa Investments,

opposed.  Dkts. 226-228.

Following a hearing on the motion, the Court found that Citibank was "entitled to a

turnover order as to the Art in Aralpa Investments' possession."  *Citibank IV*, 2025 WL 2813765,

at *12.  The Court found that Lebois "exercised domination over Aralpa Investments such that [it

was] 'a mere instrumentality' of Lebois."  *Id.* at *7 (quotation omitted).  Therefore, the Court

"conclude[d] that it ha[d] personal jurisdiction over Aralpa Investments, because it [was]

Lebois's alter ego and Citibank may seek to satisfy its judgment against Lebois through the assets of Aralpa Investments." *Id.* at \*10.

On October 10, 2025, the Court appointed Kauff Laton Miller LLP (the "Receiver"), a New York law firm, as receiver over the Art.  Dkt. 246 (the "Receivership Order") at 1.  Among other things, the Receivership Order specified that the Receiver had "the power to . . . [t]ake possession, ownership, and control of the Art." *Id.* at 2.  The Receivership Order further provided that:

> Aralpa Investments, LLC, and its agents, employees, representatives, and all those acting on its behalf or in concert with it shall (1) immediately deliver physical possession of the Art to the Receiver in accordance with the Receiver's instructions; [(2)] surrender and deliver title to the Art to the Receiver; (3) execute and deliver any document necessary to effectuate delivery of the Art and its title to the Receiver; and (4) comply with such directives of the Receiver issued pursuant to this Order and execute and deliver any documents the Receiver requests hereunder.

*Id.* at 4.

After the Receivership Order was entered, the Receiver began to collect the Art from Aralpa Investments, which was ostensibly under Ocejo's management.  On October 14, 2025, the Receiver emailed Aralpa Investments requesting the location of the Art.  *See* Kauff Decl., Ex. 2 at 1.  After several back-and-forth emails, on December 15, 2025, Aralpa Investments provided location information for only fourteen of the remaining forty-two pieces.  Kauff Decl., Ex. 4 at 2-3.  On January 1, 2026, counsel for Aralpa Investments provided the location information for an additional twenty-two pieces of Art, but failed to provide information for the remaining six pieces.  *Id.*, Ex. 5 at 2-3; Kauff Decl. ¶ 14.  As of today, the location of those six pieces has not been disclosed.  Kauff Decl. ¶ 14.

The Receiver then attempted to obtain possession of the thirty-six pieces of the Art from the disclosed locations.  On January 22, 2026, the Receiver told Aralpa Investments that it was engaging vendors to collect the Art at the two locations provided — one in Madrid, Spain, and

one in Mexico City, Mexico — and requested that Aralpa Investments arrange a time to collect the Art. *Id.*, Ex. 6 at 2. Upon Aralpa Investments' request, on February 23, 2026, the Receiver provided the names of the two vendors that it had engaged to collect the Art. *Id.*, Ex. 8 at 2. However, Aralpa Investments did not respond to that email or the Receiver's several follow-up emails on March 4, 2026, and March 11, 2026. *Id.*, Ex. 9 at 2. On April 8, 2026, the Receiver informed Aralpa Investments by email that if the Receiver's vendors were unable to access the properties and collect the Art in the coming weeks, it would file a contempt motion with the Court. *Id.*, Ex. 10 at 2. Counsel for Aralpa Investments responded that he had "passed along" the information, and further informed the Receiver that Lebois had replaced Ocejo as the manager of Aralpa Investments. *Id.*, Ex. 11 at 2; *see also* Ocejo Decl. ¶ 13. "To date, none of the Art has been turned over or delivered to the Receiver." Kauff Decl. ¶ 15.

## II. Procedural History

On April 24, 2026, Citibank moved the Court to order Aralpa Investments, Lebois, and Ocejo to show cause why the Court should not hold them in contempt and impose sanctions for failing to comply with the Receivership Order. *See* Dkt. 280; Dkt. 281 ("Br."); Kauff Decl. It further requested leave to serve Ocejo, who lives in Mexico, by email, as previous attempts to serve her under the Hague Convention had failed. Br. at 12 n.4.

On April 27, 2026, the Court issued an Order to Show Cause and granted leave to serve Ocejo by email. Dkt. 283. Of the three Alleged Contemnors, only Ocejo filed an opposition brief. Dkt. 299 ("Opp."); Ocejo Decl. Aralpa Investments and Lebois did not oppose or otherwise respond to the order. Citibank replied on May 22, 2026. Dkt. 304 ("Reply"). The motion is fully briefed, and the Court held a hearing on June 15, 2026.

5

## DISCUSSION

Citibank seeks to hold Lebois, Aralpa Investments, and Ocejo in contempt for noncompliance with the Receivership Order.  Br. at 7-12.  Unlike Lebois and Aralpa Investments, Ocejo is not a party to the Receivership Order, so the Court will first analyze Lebois's and Aralpa Investments' actions before turning to Ocejo.

### I.    Contempt Against Aralpa Investments and Lebois

The Court agrees that Aralpa Investments and Lebois should be held in contempt for violating the Receivership Order by failing to turn over the Art and not cooperating with the Receiver's directives.  Neither Lebois nor Aralpa Investments has filed any opposition to Citibank's motion or a response to the Order to Show Cause.  Counsel for Lebois and Aralpa Investments also appeared at the June 15, 2026 hearing and did not present any opposition to the motion on their behalf.

There is "no question that courts have inherent power to enforce compliance with their lawful order through civil contempt." *Shillitani v. United States*, 384 U.S. 364, 370 (1966); *accord Armstrong v. Guccione*, 470 F.3d 89, 102 (2d Cir. 2006).  "Unlike criminal contempt, civil contempt is remedial in nature, and 'seeks only to coerce the defendant to do what a court had previously ordered him to do.'" *Sec. & Exch. Comm'n v. Bronson*, No. 12-cv-06421 (KMK), 2023 WL 6238818, at *4 (S.D.N.Y. Sept. 26, 2023) (quoting *Turner v. Rogers*, 564 U.S. 431, 441 (2011)).  "A contempt order is warranted only where the moving party establishes by clear and convincing evidence that the alleged contemnor violated the district court's edict." *Latino Officers Ass'n City of New York, Inc. v. City of New York*, 558 F.3d 159, 164 (2d Cir. 2009) (emphasis omitted) (quoting *King v. Allied Vision, Ltd.*, 65 F.3d 1051, 1058 (2d Cir. 1995)).  Thus, to hold a party in contempt, the moving party must establish three elements: "(1) the order the party failed to comply with is clear and unambiguous, (2) the proof of

noncompliance is clear and convincing, and (3) the party has not diligently attempted to comply in a reasonable manner." *CBS Broad. Inc. v. FilmOn.com, Inc.*, 814 F.3d 91, 98 (2d Cir. 2016); *accord Paramedics Electromedicina Comercial, Ltda. v. GE Med. Sys. Info. Techs., Inc.*, 369 F.3d 645, 655 (2d Cir. 2004). "In the context of civil contempt, the clear and convincing standard requires a quantum of proof adequate to demonstrate a 'reasonable certainty' that a violation occurred." *Levin v. Tiber Holding Corp.*, 277 F.3d 243, 250 (2d Cir. 2002) (quoting *Callanan Indus., Inc. v. White*, 510 N.Y.S.2d 230, 231 (N.Y. App. Div. 1986)); *accord Church & Dwight Co. v. SPD Swiss Precision Diagnostics GmbH*, No. 14-cv-00585 (AJN), 2017 WL 3605583, at *3 (S.D.N.Y. July 26, 2017). Here, Citibank has demonstrated each required element and shown by clear and convincing evidence that Aralpa Investments and Lebois are in violation of this Court's Receivership Order.

First, the Receivership Order's mandates are clear and unambiguous. A court order "is sufficiently clear and unambiguous if it leaves 'no doubt in the minds of those to whom it was addressed . . . precisely what acts are forbidden.'" *CBS Broad. Inc.*, 814 F.3d at 98 (omission in original) (quoting *Drywall Tapers & Pointers v. Local 530*, 889 F.2d 389, 395 (2d Cir. 1989)); *see also Telenor Mobile Commc'ns AS v. Storm LLC*, 587 F. Supp. 2d 594, 615 (S.D.N.Y. 2008) ("[A]n order is 'clear and unambiguous' where it is 'specific and definite enough to apprise those within its scope of the conduct that is being proscribed' or required." (quoting *N.Y. State Nat'l Org. for Women v. Terry*, 886 F.2d 1339, 1352 (2d Cir. 1989))). Here, the Receivership Order requires, among other things, that "Aralpa Investments, LLC, and its agents, employees, representatives, and all those acting on its behalf or in concert with it . . . immediately deliver physical possession of the Art to the Receiver in accordance with the Receiver's instructions." Receivership Order at 4. That is to say, the Court clearly and unambiguously ordered Aralpa Investments to deliver physical possession of the Art to the Receiver and cooperate with the

7

Receiver's directions in that regard.  Lebois, the individual dominating Aralpa Investments and its current sole manager, plainly falls within the category of Aralpa Investments' "agents, employees, representatives, and all those acting on its behalf or in concert with it" and is thus required to abide by the same provisions.  *Id.*; *see also Citibank IV*, 2025 WL 2813765, at *10 (finding that Aralpa Investments was Lebois's alter ego); Kauff Decl., Ex. 11 at 2 (email from counsel for Aralpa Investments informing the Receiver that Lebois was the sole manager of Aralpa Investments).  Thus, the first element is met.

Second, Citibank has demonstrated, by clear and convincing evidence, that Aralpa Investments and Lebois have not complied with the Receivership Order.  Based on the evidence submitted to the Court, "none of the Art has been turned over or delivered to the Receiver." Kauff Decl. ¶ 15.  Furthermore, Lebois and Aralpa Investments have not complied with the Receiver's issued directives, including requests to locate all forty-two pieces of Art.  *Id.* ¶ 14 ("[T]he location information for six of the 42 pieces of Art has not been provided to the Receiver."); *see id.*, Ex. 5 at 2-3.  Moreover, Aralpa Investments and Lebois have not coordinated with the Receiver to allow access to the properties housing the Art, which include two residences of Lebois.  Kauff Decl. ¶ 16 ("To date, the Receiver has not received any response to its requests to arrange dates for its vendors to access two of the properties at which the Art is located to collect the Art."); *see also id.*, Exs. 6-11.  Aralpa and Lebois do not dispute this noncompliance.  In sum, Citibank has demonstrated the second requirement for a finding of contempt.

Third, Citibank has shown that neither Aralpa Investments nor Lebois has diligently sought to comply with the Receivership Order.  "[A] defendant is 'not reasonably diligent' when he or she ignores the order or takes only superficial actions that 'strain both the language and intent of the order.'"  *Medina v. Buther*, No. 15-cv-01955 (LAP), 2019 WL 581270, at *25

(S.D.N.Y. Feb. 13, 2019) (quoting *Powell v. Ward*, 487 F. Supp. 917, 933 (S.D.N.Y. 1980)). Here, as described above, Aralpa Investments and Lebois have not cooperated with the Receiver's requests for more information and have not facilitated the vendors' collection of the Art. As such, Citibank has demonstrated the third and final requirement for a finding of contempt.

## II. Appropriate Sanctions Against Lebois and Aralpa Investments

Having determined that Lebois and Aralpa Investments are in contempt of this Court's Order, a finding that neither party opposes, the next question is the appropriate sanction to bring about compliance. "[C]ivil contempt sanctions may serve dual purposes: to secure future compliance with court orders and to compensate the party that has been wronged." *Paramedics Electromedicina Comercial, Ltda*, 369 F.3d at 657. "To the extent that a contempt sanction is coercive, the court has 'broad discretion to design a remedy that will bring about compliance.'" *Id.* (quoting *Perfect Fit Indus. v. Acme Quilting Co.*, 673 F.2d 53, 57 (2d Cir. 1982)). The power to "order coercive civil confinement" falls within the district courts' "inherent power" to "enforce compliance with their lawful order[s]." *Armstrong*, 470 F.3d at 102 (quoting *Shillitani*, 384 U.S. at 370); *accord Fox Corp. v. Media Deportes Mexico, S. de R.L. de C.V.*, No. 25-cv-06703 (JSR), 2026 WL 810431, at *2 (S.D.N.Y. Mar. 23, 2026). In addition to this inherent authority, Congress also granted federal courts the "power to punish by fine or imprisonment, or both, at its discretion, such contempt of its authority, and none other, as . . . [d]isobedience or resistance to its lawful writ, process, order, rule, decree, or command." 18 U.S.C. § 401(3). "Arresting and confining a contemnor is, however, a severe sanction, and 'courts must judiciously exercise their authority in imposing the least restrictive and intrusive sanctions.'" *Fox Corp.*, 2026 WL 810431, at *2 (quoting *Waterkeeper All. Inc. v. Spirit of Utah Wilderness, Inc.*, No. 10-cv-01136 (NSR), 2020 WL 377951, at *4 (S.D.N.Y. Jan. 22, 2020)). "In

determining . . . an appropriate sanction, the Court 'must consider (1) the character and magnitude of the harm threatened by the continued contumacy, (2) the probable effectiveness of the sanction in bringing about compliance, and (3) the contemnor's financial resources and the consequent seriousness of the sanction's burden.'" *Id.* (quoting *Benthos Master Fund, Ltd. v. Etra*, 20-cv-03384 (VEC), 2022 WL 17819592, at *17 (S.D.N.Y. Dec. 20, 2022), *remanded for further consideration*, No. 22-3078, 2023 WL 9111205 (2d Cir. Nov. 20, 2023) (summary order)).  Yet, even where each factor is met, "the decision to impose any sanction for civil contempt [] ultimately turns on 'whether the coercive sanction is reasonable in relation to the facts, which is a matter in the Court's discretion.'" *Id.* (quoting *Benthos Master Fund, Ltd.*, 2022 WL 17819592, at *17).

Here, Citibank asks the Court to impose coercive sanctions against Lebois and Aralpa Investments.  Br. at 13-16.  For Lebois, Citibank proposes an order of civil confinement and for Aralpa Investments, Citibank seeks a civil fine of $1,000 per day.  Both sanctions would continue until Lebois and Aralpa Investments comply with the Receivership Order.  *Id.* at 13-14.  Considering the three aforementioned factors, the Court finds the requested sanctions to be reasonable.  Neither party has contested or opposed the imposition of these sanctions.

First, the magnitude of noncompliance by Aralpa Investments and Lebois is substantial.  By Lebois's own estimation, the Art is collectively worth over $27 million, Dkt. 202-3 ¶ 3(l), and a third party has provided a "low estimate" of $5,080,000 for eighteen of the forty-two pieces, Dkt. 200-25 at 9.  Civil confinement has been found appropriate in situations where a contemnor has failed to transfer similar amounts.  *See, e.g.*, *Armstrong*, 470 F.3d at 93-94 (affirming civil confinement sanction when contemnor failed to turnover "approximately $15 million in corporate assets" such as "102 gold bars, 699 gold bullion coins, a bust of Julius Caesar, and the remaining rare coins valued at $12.9 million"); *Schwarz v. ThinkStrategy Cap.*

*Mgmt. LLC*, No. 09-cv-09346 (PAE), 2015 WL 4040558, at *21 (S.D.N.Y. July 1, 2015) (ordering civil confinement until contemnor paid "$3,988,196.59 in disgorgement and prejudgment interest" or "provid[es] documentation . . . that concretely and unambiguously establishes his inability to pay any greater amount than the portion (if any) he eventually pays").

Second, sanctioning Lebois with civil confinement and imposing a fine against Aralpa Investments are both reasonably calculated to bring the contemnors into compliance. Anything short of civil confinement is unlikely to bring Lebois into compliance with the Receivership Order. He already owes over $40 million and is accruing approximately $6,000 in post-judgment interest per day. The judgment against him has been outstanding since 2023; he has not taken any steps to satisfy it; and he has taken numerous steps to avoid payment. Under these circumstances, an additional fine will almost certainly have no effect, making a more significant sanction necessary to gain compliance. *See, e.g.*, *Benthos Master Fund, Ltd.*, 2022 WL 17819592, at *18 (finding civil confinement an appropriate sanction when "financial sanctions, including ever-increasing ones, will not compel [contemnor] to comply"); *U.S. S.E.C. v. Universal Express, Inc.*, 546 F. Supp. 2d 132, 142 (S.D.N.Y. 2008) ("Imposing escalating fines on a defendant who has brazenly refused to pay an already large judgment would be an empty gesture. Only the most powerful coercive sanction offers any prospect of producing compliance.").

Lastly, while civil confinement is certainly a significant burden, the sanction can be lifted once Lebois comes into compliance by turning over the Art and cooperating with the Receiver's directives. Given that Lebois is a foreign national living abroad, the sanction amounts, in effect, to the threat of civil confinement upon entry into the United States. Such a sanction is appropriate under these circumstances. *See, e.g.*, *Shaoxing Bon Textiles Co., Ltd. v. 4-U Performance Grp. LLC*, No. 16-cv-06805 (JSR), 2018 WL 11389637, at *3 (S.D.N.Y. Aug 20,

11

2018) (ordering foreign-national contemnors to be "immediately arrested and held in confinement" "if found within the jurisdiction of the United States").

As for Aralpa Investments, a monetary fine of $1,000 per day, payable to the Court, is an appropriate sanction to bring Aralpa Investments into compliance. Aralpa Investments holds title to the Art and has made no representations that it lacks the financial capacity to pay the fine until it turns over the Art. *See Paramedics Electromedicina Comercial, Ltda*, 369 F.3d at 658 ("A contemnor may be excused from the burden of a civil contempt sanction if it lacks the financial capacity to comply; but the contemnor bears the burden of production in raising such a defense.").

In sum, the Court holds Lebois and Aralpa Investments in contempt for non-compliance with the Receivership Order. If Lebois and Aralpa Investments do not purge their contempt by turning over the Art in accordance with the Receiver's directives by **July 28, 2026**, Lebois shall be arrested if found in the United States and Aralpa shall be ordered to pay a $1,000 per day fine from that date forward.

## III.    Contempt Against Ocejo

In addition to Lebois and Aralpa Investments, Citibank seeks to hold Ocejo, a nonparty, in contempt. Br. at 9-12. The Second Circuit has "long recognized that 'no court can make a decree which will bind any one but a party' because a court's 'jurisdiction is limited to those over whom it gets personal service, and who therefore can have their day in court.'" *Havens v. James*, 76 F.4th 103, 111 (2d Cir. 2023) (quoting *Alemite Mfg. Corp. v. Staff*, 42 F.2d 832, 832-33 (2d Cir. 1930)). "'[T]he only occasion when a person not a party may be punished' for contempt is when 'he has helped to bring about . . . an act of a party.'" *Id.* (omission in original) (quoting *Alemite*, 42 F.2d at 833); *Regal Knitwear Co. v. NLRB*, 324 U.S. 9, 14 (1945) ("[D]efendants may not nullify a decree by carrying out prohibited acts through aiders and

abettors, although they were not parties to the original proceeding."). Therefore, "[t]he nonparty must either be 'legally identified' with the enjoined party or 'abet' the enjoined party's violation of the injunction." *Havens*, 76 F.4th at 111 (quoting *Alemite*, 42 F.2d at 833). "[L]egal identity requires a legal relationship, not simply some mutual assistance and shared goals." *Id.* at 121 n.20. As for "aiding and abetting civil contempt, the court must find: (1) that the party subject to the court's mandate committed contempt; and (2) that another party assisted the enjoined party." *Levin*, 277 F.3d at 250.

Here, Citibank argues that Ocejo, while not a party to the Receivership Order, can be held in contempt because (1) she "aided and abetted, and is still aiding and abetting, Aralpa Investments' and Lebois's noncompliance with the Receivership Order," Br. at 10, and (2) she is "legally identified" with Lebois, *id.* at 9. Ocejo opposes, arguing that the Court lacks personal jurisdiction over her, Opp. at 7-17, and even if it did, Citibank has not shown by clear and convincing evidence that she is in contempt of the Receivership Order, *id.* at 17-19. For the following reasons, the Court finds that it has personal jurisdiction over Ocejo, but that contempt sanctions are not warranted at this juncture because she is not currently aiding and abetting the contempt by Aralpa Investments or Lebois.

### A.    The Court has Personal Jurisdiction over Ocejo

As a preliminary matter, the Court finds that it has personal jurisdiction over Ocejo. "[A] district court can enforce an injunction against a nonparty . . . only if it has personal jurisdiction over that nonparty." *Gucci Am., Inc. v. Weixing Li*, 768 F.3d 122, 134 (2d Cir. 2014). "To assert specific personal jurisdiction over civil defendants, the Supreme Court requires a two-step analysis." *Id.* at 136. "First, the court must decide if the defendant has 'purposefully directed' his activities at . . . the forum and the litigation . . . 'arise[s] out of or relate[s] to' those activities." *Id.* (alterations in original) (quoting *Burger King Corp. v.*

13

*Rudzewicz*, 471 U.S. 462, 472 (1985)).  "Second, once the court has established these minimum contacts, it 'determine[s] whether the assertion of personal jurisdiction would comport with fair play and substantial justice.'"  *Id.* (quoting *Burger King Corp.*, 471 U.S. at 476).

Ocejo contends that the Court lacks personal jurisdiction over her because she lacks the requisite minimum contacts with New York.[1]  Opp. at 7-17.  Citibank opposes, arguing, among other things, that Ocejo has the requisite minimum contacts because she knew, when she aided and abetted Lebois and Aralpa Investments' non-compliance, that the effects of that non-compliance would be felt in New York.  The Court agrees with Citibank.

Courts have repeatedly found that "[n]onparties who reside outside the territorial jurisdiction of a district court may be subject to that court's jurisdiction if, with actual notice of the court's order, they actively aid and abet a party in violating that order."  *Eli Lilly & Co. v. Gottstein*, 617 F.3d 186, 195 (2d Cir. 2010) (quoting *Waffenschmidt v. MacKay*, 763 F.2d 711, 714 (5th Cir. 1985)); *accord Shaoxing Bon Textiles Co., Ltd.*, 2018 WL 11389637, at *3.  "Such recalcitrant non-parties have established minimum contacts because the intentional violation of a court order is often 'designed to have purpose and effect in the forum.'"  *Shaoxing Bon Textiles*

---

[1] In a brief footnote in her opposition brief, Ocejo contends that she was not properly served with the Order to Show Cause and accompanying papers.  Opp. at 8 n.2.  That is not the case.  Citibank previously attempted to serve documents on Ocejo via the Hague Convention, but the Mexican Central Authority could not serve those documents because Citibank's last known address for Ocejo is incorrect, and Citibank does not know Ocejo's current address (or even her current country of residence).  Kauff Decl. ¶¶ 18, 19; Br. at 12 n.4.  In its moving papers, Citibank requested leave to serve via email, Br. at 12 n.4, which the Court granted pursuant to Rule 4(f)(3), Dkt. 283 at 2.  Courts have found email service permissible in similar circumstances.  *See, e.g.*, *Fox Corp. v. Media Deportes Mexico, S. de R.L. de C.V.*, 820 F. Supp. 3d 299, 308-11 (S.D.N.Y. 2026) (collecting cases and finding email service of nonparty contemnor located in Mexico permissible under Rule 4(f)(3) and the Hague Convention when the order is not a final judgment and Hague service had previously failed); *see also Khan Funds Mgmt. Am., Inc. v. Nations Techs. Inc.*, No. 22-cv-05055 (ER), 2024 WL 3013759, at *5 (S.D.N.Y. June 13, 2024) ("Courts have regularly ordered alternative service where, as here, a plaintiff has attempted to serve a defendant pursuant to the Hague Convention, but a country's central authority has been unable or unwilling to effect service.").

*Co.*, 2018 WL 11389637, at *3 (quoting *S.E.C. v. Homa*, 514 F.3d 661, 675 (7th Cir. 2008)). However, when the nonparty is foreign, "the Second Circuit has instructed lower courts to engage in a more searching examination," *id.*, that focuses "on the nature of the foreign nonparty's contacts with the forum" and the "order at issue," *Gucci Am., Inc.*, 768 F.3d at 138, 141; *Telecom Bus. Sol., LLC v. Terra Towers Corp.*, No. 22-cv-01761 (LAK), 2025 WL 1866075, at *3 (S.D.N.Y. July 7, 2025).

Here, Ocejo had actual notice of the Receivership Order, and she aided and abetted Lebois and Aralpa Investments' contempt, knowing that her actions would have effects in New York. Regarding actual notice, when the Receivership Order was entered, Ocejo was still the nominal manager of Aralpa Investments and submitted declarations in the turnover proceeding. *Citibank IV*, 2025 WL 2813765, at *3; *see, e.g.*, Dkt. 227 (declaration of Ocejo in opposition to Citibank's request for a turnover order of the Art). She even admits in her declaration that she "made efforts to comply with" the Receivership Order after it was issued. Ocejo Decl. ¶ 13. As such, she had actual knowledge of the Receivership Order.

Furthermore, she previously took actions that aided and abetted Aralpa Investments and Lebois in their non-compliance with the Receivership Order. As stated above, to find that a nonparty aided and abetted civil contempt, "the Court must find: (1) that the party subject to the court's mandate committed contempt; and (2) that another party assisted the enjoined party." *Levin*, 277 F.3d at 250. The first element is already satisfied since the Court has held both Aralpa Investments and Lebois in contempt. *See supra* Part I.

For the Court to find that Ocejo aided and abetted Lebois and Aralpa Investments' non-compliance with the Receivership Order, Citibank must demonstrate that Ocejo's challenged actions were "taken for the benefit of, or to assist, a party subject to the decree in violating the [Receivership Order]." *Havens*, 76 F.4th at 112 (internal quotation marks omitted) (quoting

15

*Arista Records, LLC v. Tkach*, 122 F. Supp. 3d 32, 36 (S.D.N.Y. 2015)).  In other words, the party subject to the Court's order must "be the principal or the intended beneficiary of the nonparty's conduct."  *Id.* at 113.  Here, Ocejo, while sole manager of Aralpa Investments, took several months to disclose the location of only some pieces of the Art and did not facilitate the production of the Art to the Receiver, notwithstanding the Court's Receivership Order.  *See* Kauff Decl., Exs. 3-5.  On November 26, 2025, Ocejo and other members of Lebois's family who were shareholders of Aralpa Capital, appointed Lebois as Aralpa Capital's sole administrator.  Ocejo Decl., Ex. A at 4; *see also* Ocejo Decl. ¶ 6.  Since Aralpa Capital was Aralpa Investments' sole member, Lebois then had the authority to remove Ocejo from her position as sole manager, which he did on December 24, 2025.  Ocejo Decl., Ex. B; *see also* Ocejo Decl. ¶¶ 7-8.  This change in leadership was only revealed to the Receiver months later, in an April 13, 2026 email from Aralpa Investments' counsel.  Kauff Decl., Ex. 11 at 2.  The Court finds that Ocejo's actions while manager of Aralpa Investments in failing to cooperate with the Receiver and produce the Art, and later actions to place Lebois in control of Aralpa Investments, were taken to support Lebois and Aralpa Investments in their continued refusal to turn over the Art or comply with the Receiver's directives.  These actions were designed to have an effect in New York since the Receiver is a New York law firm and the actions would aid and abet violations of the Receivership Order entered by a New York court.  *See Fox Corp. v. Media Deportes Mexico, S. de R.L. de C.V.*, 801 F. Supp. 3d 217, 230 (S.D.N.Y. 2025) (finding minimum contacts "even though [nonparty]'s conduct occurred in Mexico, [because] that conduct was aimed at the circumvention of the Court's TRO and, thus, was intended to have an effect in New York").  In sum, Ocejo had minimum contacts with New York in the context of the contemnors' violations of the Receivership Order.

Ocejo's reliance on *In re Ampal-Am. Israel Corp.*, No. 12-13689 (SMB), 2017 WL 5158627 (Bankr. S.D.N.Y. Nov. 6, 2017) is misplaced.  There, unlike here, the injured party was an Israeli corporation, and thus the effects of a nonparty's aiding and abetting of contemptuous acts was not purposefully directed at New York.  *Id.* at *4.  Where, as here, the nonparty is aware that their actions to aid and abet contempt will cause an injury in New York or otherwise circumvent an order issued by a New York court, courts will find the nonparty has purposefully directed its activities at New York.  *See, e.g.*, *Fox Corp.*, 801 F. Supp. 3d at 230 (finding a nonparty's actions in Mexico to aid and abet contempt of a New York court's order established minimum contacts because "that conduct was aimed at the circumvention of the [c]ourt's [order] and, thus, was intended to have an effect in New York"); *Telecom Bus. Sol., LLC*, 2025 WL 1866075, at *4 (holding that the court had personal jurisdiction over foreign nonparty contemnors when they were "aware that the [shareholder agreement] govern[ed] the companies they control, contain[ed] an arbitration clause [that] sets New York as the seat of the arbitration" and took "actions to help frustrate both the arbitration awards and th[e] [c]ourt's judgments"); *Shaoxing Bon Textiles Co.*, 2018 WL 11389637, at *3 (finding that the court had personal jurisdiction over nonparties that aided and abetted non-compliance when "[t]he evidence adduced . . . show[ed] that [the nonparty defendants] are, at least in effect, the controlling agents of [corporate defendant] and the only identified individuals who know the location of these missing assets").

The Court further finds, and the parties do not dispute, that asserting personal jurisdiction here would comport with the traditional notions of fair play and substantial justice.  "Once it has been decided that a defendant purposefully established minimum contacts within the forum State, these contacts may be considered in light of other factors to determine whether the assertion of personal jurisdiction would comport with fair play and substantial justice."  *Burger*

*King Corp.*, 471 U.S. at 476 (internal quotation marks omitted).  In the Second Circuit, courts consider five factors: "(1) the burden that the exercise of jurisdiction will impose on the [party]; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering substantive social policies."  *In re Platinum & Palladium Antitrust Litig.*, 61 F.4th 242, 273 (2d Cir. 2023) (quoting *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 568 (2d Cir. 1996)); *accord Fox Corp.*, 801 F. Supp. 3d at 230.

Here, these factors weigh in favor of exercising personal jurisdiction over Ocejo. Litigating in New York will not overly burden Ocejo given that she has previously participated in this action.  New York has strong interest in the exercise of personal jurisdiction since the action concerns the collection of a judgment issued in New York.  Citibank's interest in obtaining convenient and effective relief is furthered by the exercise of personal jurisdiction because this New York court issued the Receivership Order it seeks to enforce.  For much the same reason, the exercise of personal jurisdiction in New York provides the most efficient resolution of the dispute, given the prior litigation in this forum.  Finally, there is "an exceedingly strong [policy] interest in ensuring that court orders are carried out rather than violated."  *Fox Corp.*, 801 F. Supp. 3d at 231; *see also Shaoxing Bon Textiles Co.*, 2018 WL 11389637, at *3 ("Exercising jurisdiction is fair and just because the authority to force compliance 'is necessary to the proper enforcement and supervision of a court's injunctive authority and offends no precept of due process.'" (quoting *Waffenschmidt*, 763 F.2d at 716)). As such, the Court has personal jurisdiction over Ocejo.

18

**B.      Holding of Contempt**

Turning to the merits, notwithstanding Ocejo's past aiding and abetting, the Court will not hold Ocejo in contempt and sanction her at this time.  Citibank argues that Ocejo should be held in contempt and sanctioned with civil confinement because (1) she "aided and abetted, and is still aiding and abetting, Aralpa Investments' and Lebois's noncompliance with the Receivership Order," Br. at 10, and (2) she is "legally identified" with Lebois, *id.* at 9.  "It is basic law that a civil contempt sanction must only be compensatory or coercive, and may not be punitive."  *Gucci Am., Inc.*, 768 F.3d at 144.  Thus, contempt sanctions are used "to coerce compliance with the Court's judgments where a contemnor is in ongoing violation of a clear and unambiguous order," not to punish past contempt or prevent future noncompliance.  *Telecom Bus. Sol., LLC v. Terra Towers Corp.*, No. 22-cv-01761 (LAK), 2025 WL 2030166, at *6 (S.D.N.Y. July 21, 2025).

Although the Court finds that Ocejo aided and abetted Lebois and Aralpa Investments' past contumacy, there is no evidence that these actions are ongoing.  She is currently only a 15% shareholder in Aralpa Capital, which is Aralpa Investments' sole member.   Lebois is now Aralpa Capital's sole administrator and Aralpa Investments' manager.  Ocejo Decl. ¶¶ 4, 8; *id.*, Exs. A, B.  Thus, Ocejo cannot unilaterally remove Lebois from his position at Aralpa Investments or otherwise control Aralpa Investments' actions.  Nor has Citibank shown that Ocejo has the Art, or is in a unique position to turn it over.  According to Ocejo's Declaration, she relied on Lebois to learn the location of the Art; the locations of the identified pieces of the Art are Lebois's residences; and Ocejo does not have the authority to allow the Receiver's vendors to enter Lebois's property.  *See id.* ¶¶ 11-13.  Citibank therefore does not point to any ongoing actions by Ocejo to aid and abet Aralpa Investments and Lebois's contumacy such that

19

she could purge her contempt by complying with the Court's Order.[2]  Without countenancing Osejo's prior actions in enabling and assisting Lebois in his ongoing violations of this Court's orders and refusal to satisfy the judgment against him, contempt and coercive sanctions are not appropriate to address her past actions.  *See, e.g.*, *Gucci Am., Inc.*, 768 F.3d at 144 (reversing a civil contempt fine "$75,000 sanction for past noncompliance" because it "provided no compensatory relief" and was thus "punitive and therefore impermissible"); *Telecom Bus. Sol., LLC*, 2025 WL 2030166, at *6 (refusing to impose contempt sanctions when it "would punish [a nonparty] for their previous non-compliance").

The Court is also not persuaded by Citibank's claim that Ocejo is legally identified with Lebois.  *See* Br. at 9; Reply at 5.  "[L]egal identity requires a legal relationship, not simply some mutual assistance and shared goals."  *Havens*, 76 F.4th at 121 n.20; *accord Fox Corp.*, 801 F. Supp. 3d at 227.  While Ocejo was nominally the manager of Aralpa Investments when the Receivership Order was issued, and would thus be an agent, she has since left that position.  *See* Ocejo Decl. ¶¶ 7, 13.  Moreover, Citibank has not presented evidence that she continues to act as Lebois's agent; she was replaced as the sole manager of Aralpa Investments, and Lebois was appointed the administrator of Aralpa Capital.  *Id.* ¶¶ 6, 8.  Thus, the Court will not treat Ocejo as legally identified with Lebois.

---

[2] Citibank's Reply briefly raises the possibility of compensatory contempt sanctions. Reply at 10 n.7.  But, to seek compensatory sanctions, Citibank would need to provide some evidence of the damages it incurred as a result of the contempt.  *See Weitzman v. Stein*, 98 F.3d 717, 719 (2d Cir. 1996) ("The compensatory goal [of civil contempt] . . . can only be met by awarding to the plaintiff any *proven* damages." (emphasis added)).  "If the fine is compensatory in purpose . . . , 'the sanction should correspond at least to some degree with the amount of damages.'"  *Paramedics Electromedicina Comercial*, 369 F.3d at 658 (quoting *King*, 65 F.3d at 1062).  Here, Citibank does not provide any evidence substantiating particularized damages.  Accordingly, this application is treated as solely seeking coercive sanctions.

**CONCLUSION**

For the aforementioned reasons, the motion to hold Aralpa Investments, Lebois, and Ocejo is GRANTED in part and DENIED in part.  The motion is granted as it pertains to Aralpa Investments and Lebois and denied as it pertains to Ocejo.  Accordingly, it is hereby ORDERED:

1. That Citibank serve a copy of this Opinion and Order upon Defendants Aralpa Investments and Lebois, by regular mail and certified mail, and additionally upon Lebois by personal service, within thirty (30) days hereof;

2. That, if Aralpa Investments has not complied with the Receivership Order by **July 28, 2026**, then, beginning on July 28, 2026, Aralpa Investments shall be fined in the amount of $1,000 per day to be paid to the Court until Aralpa Investments complies with the Receivership Order; and

3. That, if Lebois has not complied with the Receivership Order by **July 28, 2026**, then, after July 28, 2026, Lebois, if found within the jurisdiction of the United States, shall be arrested immediately and held in confinement until such time as he complies with the Receivership Order.

Dated: June 18, 2026
      New York, New York

SO ORDERED.

JENNIFER L. ROCHON
United States District Judge